IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

H. KEVIN KNUSSMAN,                        :

        Plaintiff,                    :

v.                                        :    Civil Action No. AMD-95-1255

STATE OF MARYLAND, *et al.*,              :

        Defendants.                   :

\*   \*   \*   \*   ooo0ooo   \*   \*   \*   \*

## PLAINTIFF'S FEE PETITION (ON REMAND)

I. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. Attorneys' Time Spent on Each Phase of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     1. Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     2. Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     3. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         A. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         B. Discovery Disputes on Which Plaintiff Prevailed . . . . . . . . . . . . . . . . . . . . 8
     4. Trial Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     5. Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     6. Opposition to Defendants' Motion for JNOV . . . . . . . . . . . . . . . . . . . . . . . . . 13
     7. Enforcement of Judgment Against Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . 14
     8. Appeal – Successful Opposition to Appeal of Liability . . . . . . . . . . . . . . . . . . . 15
     9. Damages on Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     10. Post-Judgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     11. Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     12. Petitions for Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     13. No Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
III. Appropriate Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
IV. Totals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
V. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## I. Background

This case was about gender discrimination in allowing parental leave. Because former Trooper Knussman is a man, the Maryland State Police ("MSP") refused to allow him parental leave for the birth of his daughter Riley until ordered to do so after lengthy litigation and an 11-day trial. The lengthy discovery, motions, trial, and post-trial proceedings were largely necessitated by defendants' obstructionist defense (which required seven motions to compel or for sanctions granted against the defendants, responses to lengthy motions to dismiss and for summary judgment, and two motions to enforce judgment, for all of which plaintiff seeks compensation only when he was successful) and because numerous witnesses were required to establish liability and to prove Mr. Knussman's emotional distress. The trial court (Judge Black) awarded Mr. Knussman all of the declaratory and injunctive relief he requested against five defendants, together with $40,000 in damages for his emotional distress against Jill Mullineaux, plus $7,600 in post-judgment interest.

In light of the Fourth Circuit's ruling that "Knussman's success [was] limited and not overly significant as a legal manner," Mr. Knussman now seeks attorneys' fees only for time spent on claims on which he prevailed and that related to him, personally. Those claims were: (1) Mr. Knussman's claim for monetary damages against Ms. Mullineaux, and (2) his claim for injunctions against the State of Maryland, Col. David Mitchell as Superintendent of the Maryland State Police, David Czorapinski as Deputy Superintendent, and personnel official Jill Mullineaux (a) to require them to provide him with nine-and-a-half weeks of leave and (b) to forbid them from retaliating against him.

In *City of Riverside v. Rivera*, the Supreme Court emphasized that "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by

plaintiff in response."  477 U.S. 561, 580 n.11 (1986), quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)(en banc).  That principle emphatically applies here.

Substantial amounts of time spent by counsel were necessitated by the defendants' tenacious defense, which has lasted from the beginning of this litigation in April 1995 – when defendants made an ineffective offer of judgment (requiring plaintiff to file a successful motion to strike), followed by a lengthy motion to dismiss (requiring extensive briefing, on most of which plaintiff prevailed) – through to the April 2003, when the court had to order defendant Mullineaux to pay post-judgment interest.  In between, defendants' uncooperative approach to discovery required Mr. Knussman to file (and win) seven separate motions to compel or for sanctions.

Even had the case been limited to just the claims on which Mr. Knussman prevailed that related only to him, personally (*i.e.* only claims for substantial monetary damages for emotional distress against Ms. Mullineaux and for injunctions against the State of Maryland and Col. Mitchell, Lt. Col. Czorapinski, and Ms. Mullineaux to require them to provide Trooper Knussman with nine-and-a-half weeks of paid leave and to forbid them from retaliating against him), investigation and drafting of pleadings, discovery, trial preparation, and trial would still have been extensive.  Add to that the defendants' hard-fought defense, their many motions, discovery abuses, appeal of liability, and refusal to pay post-judgment interest, and plaintiff's attorneys' fees, which were already necessarily substantial, became far larger.

The Fourth Circuit's attorneys' fees opinion in this case holds that, contrary to Judge Black's approach, Mr. Knussman is not entitled to a fully compensatory fee simply because he was a prevailing plaintiff who obtained substantial relief.  Under *Hensley v. Eckerhart*, "if . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended

on the litigation as a whole times a reasonable hourly rate may be an excessive amount." 461

U.S. 424, 436 (1983). In such cases (and the Fourth Circuit found this to be one), time spent on

claims that were unrelated to the claims on which plaintiff succeeded must be deleted (*id.* at

434), and "the most critical factor is the degree of success obtained." 461 U.S. at 436. *See*

Mem. Op. at 10. The Supreme Court instructed that, in such circumstances:

> The district court may attempt to identify specific hours that should be eliminated,
> or it may simply reduce the award to account for the limited success. The court
> necessarily has discretion in making this equitable judgment. This discretion,
> however, must be exercised in light of the considerations we have identified.

*Id.*, 461 U.S. at 436-37.

The Fourth Circuit held that Mr. Knussman achieved only limited success on his claim

for damages for his emotional distress in that he obtained monetary damages against only one

defendant. Mem. Op. at 12. It also held, while Mr. Knussman obtained all of the injunctive and

declaratory relief he sought, that relief "was not so significant that the result he obtained could

be described in any respect as 'excellent.'" Mem. Op. at 14.

Mr. Knussman did succeed in obtaining "substantial" monetary damages of $40,000

(Judge Black's characterization, with which the Fourth Circuit did not disagree), together with

injunctive relief that provided him with nine-and-a-half weeks of paid leave (which the MSP had

refused to provide to him until after the judgment) and protection against retaliation from three

different defendants (which he was required to invoke immediately after trial), together with a

declaration that all five defendants had violated his civil rights.

Accordingly, under the considerations identified in *Hensley*, this court should award

attorneys' fees commensurate with Mr. Knussman's success in obtaining $40,000 in damages for

the emotional distress he suffered as a result of Ms. Mullineaux's discrimination and in obtaining

the leave that had previously been refused him, protection from retaliation, and declaratory

3

relief. In addition, to the extent that defendants' tenacious defense required plaintiff's attorneys to spend additional time on the case, under *City of Riverside*, that time should be compensated without regard to plaintiff's degree of success.

## II. Attorneys' Time Spent on Each Phase of the Case.

Plaintiff now seeks compensation just for time spent directly related to claims on which he prevailed and/or time necessitated by defendants' tenacious defense. That time is summarized below, in categories based on those required by Appendix B to the Local Rules (modified slightly based on the history of this case, and presented roughly chronologically). The "motions" and "trial" sections include brief descriptions of the relevant motions on which Mr. Knussman prevailed and of the witnesses at trial, to give a fuller sense of the work involved. Exhibits 1-4 are the declarations and underlying fee records of Mr. Knussman's four principal counsel: Ms. Jeon, Ms. Mandelbaum, Mr. Cockey, and Mr. Freeman, together with the records of expenses.

Before reviewing each of these categories of time, an overview is in order, best provided by Ms. Jeon's declaration:

> This is a case that has gone on for far too long, and entailed far too much attorney time. This is, however, undeniably the fault of the defendants. From the outset of this case nearly nine years ago, up to and including their refusal last month to participate in the Court's proposed mediation of the remaining issues, defendants and their counsel have unnecessarily complicated and prolonged this litigation. By this, I do not mean merely that the defendants and their counsel vigorously defended against Mr. Knussman's claims. Rather, I mean that every step of the case was needlessly made complicated and contentious by defendants' approach to the litigation. Deadlines for filings were routinely ignored and missed by defendants. Objections were raised by defense counsel to the most mundane of plaintiff's requests, so that almost nothing could be accomplished by agreement of counsel. Anything that could be challenged by defendants was

4

challenged. If there was an opportunity to be uncooperative or difficult, they took it. Defendants failed or refused to respond to normal discovery, requiring plaintiff to file motion after motion -- *nine* in all -- to compel cooperation in the discovery process. (*See* Docket Entries 22, 25, 26, 45, 48, 60, 65, 79, 140.) Defendants even appealed the district court's denial of Jill Mullineaux's immunity defense -- an appeal the Fourth Circuit rejected on grounds that the law was so clear that no reasonable official in her position could possibly have believed the "categorical denial of employment benefits based upon gender stereotypes" was constitutionally permissible. 272 F.3d at 635-39. Following remand, they refused to pay post-judgment interest until plaintiff filed a motion and the court ordered it. Mem. Op. of Apr. 3, 2003. In short, virtually no aspect of the case has not been acrimoniously fought by the defendants. Consequently, the attorneys' fees incurred by the plaintiff are far higher they needed to be and far higher than they would have been had defense counsel handled the case differently.

Jeon Decl'n, Ex. 1, ¶ 10.

## 1. Pleadings

Ms. Jeon spent 20.8 hours investigating and drafting the complaint (filed April 28, 1995) and amended complaint (filed September 25, 1995). Jeon Decl'n, Ex. 1, ¶ 12. She does not seek any compensation for time spent on the second amended complaint. Mr. Cockey spent 13.2 hours on those same tasks. Cockey Decl'n, Ex. 3, ¶ 8. This chart summarizes the time spent in this category of task (similar charts follow each succeeding category):

| D. Jeon | 20.8 hrs. |
|---------|-----------|
| R. Cockey | 13.2 hrs. |
| Total | 34.0 |

Expenses for these tasks were $152.41, including the filing fee and long-distance phone calls. Ex. 1B.

## 2. Motions

Motions practice in the case was extensive. The following are motions on which Mr. Knussman prevailed (usually completely, occasionally in part). The date of filing of each motion is listed, as given in the Docket, Ex. 5. With only rare exception, all of these motions were fully briefed, including reply briefs, and most required oral argument:

06/26/95    Motion to strike offer of judgment, which was improper because it was contingent on approval by the Board of Public Works. Judge Black told MSP he thought plaintiff was right, defendants withdrew the offer.

10/16/95    MSP motion to dismiss for failure to state a claim. For the most part, Mr. Knussman prevailed. Hearing held in Feb. 1996, decision in Aug. 1996.

02/16/96    Motion to compel interrogatory responses from Mullineaux, where responses were inadequate. Granted 12/2/96, but fee request held sub curia until close of discovery and never acted on.

02/16/96    Motion to compel interrogatory responses from Creel, where responses were inadequate. Granted 12/2/96, but fee request held sub curia until close of discovery and never acted on.

10/18/96    Motion to compel discovery responses. Granted 12/4/96. Fee request held.

10/25/96    Motion to file supplemental complaint (to add retaliation claim related to transfer) – MSP vigorously opposed this, it was fully briefed, J. Black held a hearing, then granted the motion from the bench at the hearing on 1/31/97.

12/18/96    Motion to compel discovery responses. Granted in part 2/7/97.

12/19/96    Joint motion for protective order on various personnel records.

02/03/97    Motion for discovery sanctions against Mullineaux for non-compliance with order compelling discovery responses. Granted in part 3/13/97, and Mullineaux ordered to pay certain discovery costs, including fees.

02/24/97    Second joint motion for protective order re certain records.

03/17/97    Motion to compel discovery responses, which newly named defendant Donald Lewis refused to answer (because he claimed the requests were untimely.) Granted 3/21/97.

6

04/02/97    Cross-motions for summary judgment.  Plaintiff prevailed on most important issues though he lost on qualified immunity under the FMLA and on the retaliatory transfer claim.  SJ decision issued 8/13/98.

01/08/99    MSP motion to amend Answer (to remove a damaging omission).  Plaintiff opposed on grounds of reliance, and the Court denied the motion the same day (during the pretrial conference).

01/22/99    Just before trial, both sides filed omnibus motions in limine.  Judge Black ruled for plaintiff on 1/26/99.

10/14/99 Mullineaux/MSP motion to stay judgment pending appeal.  Denied 11/3/99

10/16/02 MSP motion for stay pending appeal.  Denied 12/6/02.

10/23/02 KK motion to enforce judgment to recover interest on damages. Granted 4/3/03.

As described in Ms. Jeon's Declaration, Ex. 1 at paragraph 13 and the accompanying

time records, Ex. 1B, she spent 204.3 hours of work on these motions.  Ms. Mandelbaum spent

30.15

hours, and Mr. Cockey spent 54.6 hours.  Mandelbaum Decl'n, Ex. 2, ¶ 14; Cockey Decl'n, Ex.

3, ¶ 9.  Pursuant to Judge Black's finding that Ms. Mandelbaum's time should be reduced by half

(Mem. Op. of Aug. 26, 2002, at 12), plaintiff seeks compensation for only 15.1 hours of her time

spent on motions.

| D. Jeon | 204.3 hrs. |
|---|---|
| S. Mandelbaum | 15.1 hrs. |
| R. Cockey | 54.6 hrs. |
| Subtotal | 274.0 |

### 3.  Discovery

#### A.  Discovery

Pre-trial discovery in this case included lengthy interrogatories, document requests, and over fifteen depositions, stretched over three years.  As described in Jeon Decl'n ¶ 14, Mandelbaum Decl'n ¶ 14, and Cockey Decl'n ¶ 10, Plaintiff's attorneys expended and sought, and Judge Black awarded (after cutting Ms. Mandelbaum's time in half), attorneys' fees as follows:

| | |
|---|---|
| D. Jeon | 111.5 hrs. |
| S. Mandelbaum | 40.2 hrs. |
| R. Cockey | 110.0 hrs. |
| Subtotal | 261.7 |

#### B.  Discovery Disputes on Which Plaintiff Prevailed

As noted above, in addition to the already extensive discovery, defendants' obstructionist tactics required nine separate motions to compel or for sanctions that were granted by the court. See Docket Entries 22, 25, 26, 45, 60, 65, 79, 140.   As described in Jeon Decl'n ¶ 14 and Cockey Decl'n ¶ 10, those discovery disputes required over 90 hours of Ms. Jeon's time and over 37 hours of Mr. Cockey's time.

| | |
|---|---|
| D. Jeon | 90.5 hrs. |
| R. Cockey | 37.3 hrs. |
| Subtotal | 127.8 |

8

**4.  Trial Preparation**

In addition to time spent on discovery, Mr. Cockey spent 282.3 hours preparing for trial, Ms. Mandelbaum spent 207.1 hours, and Ms. Jeon spent 146.2 hours.  Cockey Decl'n ¶ 11, Mandelbaum Decl'n ¶ 14; Jeon Decl'n ¶ 15.  Although Ms. Jeon would have had to spend much of the time Ms. Mandelbaum did if Ms. Jeon had been trial counsel, plaintiff nonetheless reduces Ms. Mandelbaum's time in half, from 207.1 to 103.6 hours.  All of this preparation related to issues on which Mr. Knussman prevailed.  As can be seen from the description of the trial witnesses below, every witness put on at trial went to the issue of liability, damages for emotional distress, and/or Mr. Knussman's entitlement to leave.  Pursuant to Appendix B, plaintiff has also included the post-trial briefing on the form of the Order of Judgment in this phase.

| D. Jeon | 146.2 hrs. |
|---|---|
| S. Mandelbaum | 103.6 hrs. |
| R. Cockey | 223.6 hrs. |
| Subtotal | 473.4 |

**5. Trial**

Trial lasted for 11 days, from January 19 to February 2, 1999. The following is a list of witnesses who testified at trial, together with a brief description of their testimony; as noted above, all of this testimony went to issues on which Mr. Knussman prevailed and which benefitted him personally:

Kevin Knussman - testified to all aspects of his case – his background, his employment history with the Maryland State Police, his relationship with his wife, his wife's difficult pregnancy, his application for leave, the MSP's repeated denials of to his leave application, and how those denials affected him.

Kim Knussman (wife) - discussed her difficulties getting pregnant, during pregnancy, after pregnancy, what hardships MSP leave denials caused, how Kevin was affected, what a great dad he is.

Frances Knussman (brother) - talked about how devoted Mr. Knussman is to his family, how he wanted to have children, and how happy he was when Kim finally got pregnant.

Penny Trice (sister-in-law) - some about Mr. Knussman's devotion to family, but more about what Kim went through during and after the pregnancy and how difficult the MSP leave denial made things for the Knussmans.

Chris Jensen (best friend since boyhood and Caroline Co. State's Atty) - a critically important witness. Told the whole story very eloquently about how central family is in Kevin's life, what it meant to him to have a child, how much Mr. Knussman loved his job and how he had always wanted to be a state trooper, how he witnessed Mr. Knussman unravel as a result of MSP's denial of his leave requests, how betrayed Mr. Knussman felt, and how his career was destroyed.

Rich Colburn (friend and a state senator) - a short witness dealing with Mr. Knussman's love of family and reputation for honesty.

H.P. Ketterman (colleague) - a short but very helpful witness (given the he-said, she-said nature of testimony) on Mr. Knussman's impeccable credentials for truthfulness.

Tfc. Steve Elliott (colleague who also had a leave problem) - testified about his own leave denial about a year after Trooper Knussman's troubles.

Sgt. J.C. Collins (Knussman's immediate supervisor) - testified that he forwarded Trooper Knussman's leave requests through the chain of command and informed the higher-ups about the extent of Mrs. Knussman's health problems. Went to liability.

10

Rev. William Glass - the Knussmans' pastor and counselor. Talked about the emotional trauma of the Knussmans' fertility problems, how important family was to them, how sick Kim was during her pregnancy, and how thrilling the birth of their daughter was for them.

Becky Dennis (Mrs. Knussman's personnel officer) - testified about Ms. Mullineaux's improper contact to Kim's employer regarding Kim's leave status. Ms. Dennis said she told Mullineaux unequivocally that Kim was on sick leave, not nurturing leave, that Kim had been extremely sick and "had almost died." (Mullineaux tried to catch Mr. Knussman in a lie, but when his representation was confirmed, she suppressed that information rather than forwarding it on to MSP commanders. Helped to make Mullineaux seem malicious, which helped with the damage claim against her.)

John Irick (state personnel director) - testified that he had warned Mullineaux that she was interpreting the nurturing leave law wrong, that her interpretation was illegal and discriminatory.

Lt. Namon Brown (MSP Fair Practices Officer) - Hugely important witness. He testified that "management was wrong" in denying Trooper Knussman's leave requests and that he had investigated Knussman's personnel complaint against Mullineaux and ruled that Mullineaux had violated Knussman's rights. (This ruling was suppressed and overruled by MSP officials. Col. Mitchell testified that Brown was transferred because of his ruling for Mr. Knussman in this case, as "he was not doing the job management put him there to do.")

Dr. Michael Crowley (Mr. Knussman's treating physician) - helpful medical testimony going to damages and explaining the lag time between the leave denials and Mr. Knussman's psychological difficulties.

Dr. Sallie Rixey (Mrs. Knussman's family physician) - a wonderful witness who talked about Kim's medical difficulties before, during and after her pregnancy and delivery, helping to show how hard the leave denials made things for the Knussmans. She also knows Mr. Knussman fairly well, so testified about him.

Dr. Harold Elberfeld (fertility specialist and Kim's OB)

Dr. Susan Toler (Kevin's treating psychologist) -- Lengthy and detailed testimont going to damages, specifically focused on the harm caused by Mullineaux and the seriousness of the medical difficulties suffered by Mr. Knussman as a result of Ms. Mullineaux's denial of his leave requests.

Defendants' witnesses:

Jill Mullineaux
First Sgt. (Ret.) Ronnie Creel
Lt. Col. David Czorapinski
Col. David Mitchell

11

Lt. Carl Lee (Kevin's section commander)
First Sgt. (Ret.) Lee Fitzgerald (Kevin's former supervisor)
Cpl. Stan Finch (former colleague)
Sgt. Graham Simpson (former supervisor)

Plaintiff's rebuttal witnesses:

Esther Danner  -- John Irick's secy.  Called to testify to refute Mullineaux's claim that Danner
was a policymaking official who advised her that the state leave law permitted only mothers to
take nurturing leave.  Ms. Danner had been identified as a defense witness, but was not called by
the defendants.
Kevin Knussman
Kim Knussman
J.C. Collins
Jill Mullineaux

Plaintiff and his counsel believe that all of these witnesses would have been called and

been examined essentially as they were at trial, even if Mr. Knussman had been seeking only the

relief he received against the defendants against whom judgments were entered.  Cockey Decl'n

¶ 12.  In extensive briefing on plaintiff's fee petitions, defendants never identified a single

witness or line of questioning that was not related to the judgment awarded to Mr. Knussman.

Perhaps if he had not been seeking monetary damages against the other individual defendants, he

could have slightly shortened the evidence as to their acts.

Mr. Cockey spent 144 hours in trial (and in preparation on the days he was in

trial).  Ms. Mandelbaum spent 146.9 hours on those same days.  Cockey Decl'n ¶ 12,

Mandelbaum Decl'n ¶ 14.  Although Ms. Jeon spent 62 hours attending the trial and contributed

to strategy throughout, plaintiff chose to have only two lawyers at counsel table (Mr. Cockey and

Ms. Mandelbaum), with Ms. Jeon sitting in the gallery, and so does not seek compensation for

her time.  Jeon Decl'n ¶ 25.  Because Ms. Jeon would have had to spend all the time that Ms.

Mandelbaum did on this phase had Ms. Jeon been trial counsel, this is the one category in which

12

plaintiff does not cut Ms. Mandelbaum's time.  In light of the Fourth Circuit's view that

"Knussman's attorneys could have developed the facts supporting his claims [for monetary relief

against Mullineaux] without also developing the facts to support his unsuccessful claims against

the remaining defendants," (Mem. Op. at 12), plaintiff will voluntarily reduce his counsel's trial

time by ten percent in addition to his voluntary write-off of Ms. Jeon's hours. (Plaintiff would

note that the Fourth Circuit makes this statement in the course of its analysis of the time spent on

his claim for monetary damages.  It makes no such statement with respect to the time spent on

his claim for injunctive relief, which was awarded against the State of Maryland, Mitchell,

Czorapinski, and Mullineaux.)  Reducing the trial time spent by Ms. Mandelbaum and Mr.

Cockey by ten percent makes their time for this phase 132.2 and 129.6 hours, respectively:

| D. Jeon | 0.0 hrs. |
|---|---|
| S. Mandelbaum | 132.2 hrs. |
| R. Cockey | 129.6 hrs. |
| Subtotal | 261.8 |

**6.  Opposition to Defendants' Post-Trial Motion for JNOV**

Rather than accept the jury's verdict, defendants filed a post-trial Motion for JNOV or

New Trial on March 22, 1999.  Drafting the successful response to this motion required 25 hours

of Ms. Jeon's time, 23.6 hours of Ms. Mandelbaum's time, and 7 hours of Mr. Cockey's time,

along with $2,422.53 in expenses.  Jeon Decl'n ¶ 16, Mandelbaum Decl'n ¶ 14, and Cockey

Decl'n ¶ 113.  Again, plaintiff cuts Ms. Mandelbaum's time in half.

| D. Jeon | 21.4 hrs. |
|---|---|
| S. Mandelbaum | 11.8 hrs. |
| R. Cockey | 7.0 hrs. |
| Subtotal | 40.2 |

Argument on the motion was heard on July 1, 1999, and Judge Black ruled for Mr. Knussman on

September 3, 1999.  Docket No. 159.

### 7.  Enforcement of Judgment Against Retaliation

Part of the March 1999 judgment in this case was an injunction against defendants'

retaliating against Trooper Knussman.  Nonetheless, defendants initially refused to reinstate him

to his position as a paramedic on the Medevac helicopter.  Mr. Knussman therefore had to file a

motion to enforce injunction against retaliation on March 23, 1999.  Substantial discovery

related to this issue was required, including a motion to compel complete discovery response in

enforcement proceeding filed on April 20 and granted in part on May 4, 1999.  In ruling on

plaintiff's supplemental fee petition, Judge Black found that "the defendants' insistence that the

plaintiff undergo a psychiatric examination spurred the plaintiff to file this motion [for

enforcement of judgment] and Knussman's attorneys should be compensated for their efforts."

Mem. Op. at 11 (Aug. 26, 2002).  After considering defendants' objections and reviewing the

time spent on this issue (set forth in Ex. 11 to Defs.' Resp. to Pl.'s Pet. for Award of Att'ys' Fees

and Expenses and Supp'l Fee Pet.), Judge Black considered the 234.67 hours for which plaintiff

sought compensation for this issue and found that half of the 97.05 hours sought by Ms. Jeon and

14

of the 92.6 hours sought by Mr. Cockey, and none of the 48.02 hours by Ms. Mandelbaum, (*i.e.* 48.5 hours by Ms. Jeon and 46.3 hours by Mr. Cockey) were reasonably spent, and so awarded just $23,221 in fees for this portion of the case. (Mem. Op. of Aug. 26, 2002 at 10-12). Judge Black explicitly found that plaintiffs should receive the full $9,993.32 in expenses related to this issue. *Id.* at 11-12. Nothing in the Fourth Circuit's opinion criticizes this portion of the award.

| D. Jeon | 48.5 hrs. |
|---------|-----------|
| R. Cockey | 46.3 hrs. |
| Subtotal | 94.8 |

**8. Appeal – Successful Opposition to Mullineaux's Appeal of Liability**

Defendants appealed the judgment on liability, necessitating 175.1 hours of work by Ms. Jeon, 112.7 by Mr. Cockey, and 11 hours by Ms. Mandelbaum that Judge Black found were reasonably spent on the successful defense of that judgment. (Plaintiff did not seek in his last fee petition, and does not seek now, any compensation for the unsuccessful defense of the amount of his damages. Ms. Jeon, who did the lion's share of drafting Mr. Knussman's appellate brief, voluntarily discounted 25% (43.8 hours) of her 175.1 hours of appellate time as attributable to the damages issue. Mr. Cockey, who argued the appeal, would have spent almost as much time preparing even if only liability had been challenged. Defendants did not object to any portion of this time on the previous fee petition, and the Fourth Circuit did not criticize the award for the defense of liability against Ms. Mullineaux. Nonetheless, in light of the further reductions required by the Fourth Circuit, Mr. Cockey, too, voluntarily reduces his time by 25%, and plaintiff voluntarily waives compensation for all time spent by Ms. Mandelbaum on the appeal.

15

Thus, he seeks compensation for 131.3 hours spent by Ms. Jeon, 84.5 hours spent by Mr. Cockey successfully opposing Ms. Mullineaux's appeal of the liability verdict against her.

| D. Jeon | 131.3 hrs. |
|---|---|
| R. Cockey | 84.5 hrs. |
| Subtotal | 215.8 |

In addition, plaintiff sought and Judge Black awarded $646.99 in expenses related to that appeal.

## 9. Damages on Remand

Following remand from the Fourth Circuit on damages, Mr. Knussman's counsel suggested a means to minimize the expenditure of attorneys' fees by having Judge Black decide damages rather than trying them to a new jury. The time spent on briefing and re-arguing the appropriate amount of damages, (which Ms. Mullineaux continued to contend should be "minimal") was 77.4 hours by Ms. Jeon , Jeon Decl'n ¶ 19, and 44.3 hours by Mr. Cockey, Cockey Decl'n ¶ 16, as sought in Plaintiff's Second Supplemental Fee Petition (filed Sept. 9, 2002). In his opinion of April 9, 2003, Judge Black found this time (and a bit more), along with $2,422.53 in expenses, to be reasonable.

| D. Jeon | 77.4 hrs. |
|---|---|
| R. Cockey | 44.3 hrs. |
| Subtotal | 121.7 |

## 10. Post-judgment Interest

Tenacious to the end, Ms. Mullineaux's attorneys refused to pay Mr. Knussman the $7,600 in post-judgment interest to which he was entitled after Judge Black reinstated $40,000 of

16

the judgment originally entered on the jury's award in March 1999. Plaintiff's counsel requested the interest both orally and in a letter. Jeon Decl'n ¶ 20. Defense counsel refused to pay, requiring plaintiff to file a Motion to Enforce Judgment in October 2002, which defendant opposed, which in turn required plaintiff's counsel to file a reply before Judge Black granted the motion – a total of 22.3 hours of work by Ms. Jeon and 1.3 by Mr. Freeman that should have been unnecessary, and which should be fully compensated. Id. In a further exercise of billing discretion, Mr. Freeman does not seek compensation for this time.

Judge Black's Order of April 3, 2003, explicitly awards plaintiff attorneys' fees and costs entailed in prevailing on that motion, to be included in a "future motion for attorneys' fees to be filed after completion of the appellate process."

| D. Jeon | 22.3 hrs. |
|---------|-----------|
| Subtotal | 22.3 |

## 11. Settlement Negotiations

Settlement discussions over the years included preparation for and attendance at settlement conferences mediated by Magistrate Judge Blake in August 1995, by Magistrate Judge Klein in December 1998 and June 1999, by Magistrate Judge Gauvey in May 2002, and by the Fourth Circuit mediators in November 1999 and November-December 2002. These settlement discussions occupied 83.7 hours of Ms. Jeon's time, 96 hours of Mr. Cockey's time, 12.3 hours of Ms. Mandelbaum's time (of which plaintiff seeks 6.2 hours), and 11.9 hours of Mr. Freeman's time. Jeon Decl'n ¶ 21; Cockey Decl'n ¶ 17; Mandelbaum Decl'n ¶ 14; Freeman Decl'n ¶ 4:

| D. Jeon | 83.7 hrs. |
|---|---|
| S. Mandelbaum | 6.2 hrs. |
| R. Cockey | 96.0 hrs. |
| A. Freeman | 11.9 hrs. |
| Subtotal | 197.8 |

## 12. Petitions for Attorneys' Fees

In ruling on plaintiff's initial and supplemental fee petitions on August 26, 2002, Judge

Black awarded approximately 100 hours spent on preparing those petitions. In ruling on the

second supplemental fee petition, Judge Black awarded approximately 73 hours spent on

preparing the fee petitions (some of which had been spent on the previous supplemental

petition), together with $679.15 in expenses. In ruling on the Motion for Post-Judgment Interest,

Judge Black ordered that plaintiff should receive fees for that effort, too.

Much of the time spent organizing the 1999 and 2002 fee petitions was useful in editing

the time records and organizing the current presentation to the court. Nonetheless, on remand,

plaintiff seeks compensation for only half of the time spent by Ms. Jeon, Mr. Cockey, Ms.

Mandelbaum, and Mr. Freeman on the previous fee petitions, together with all of the time spent

on this one. Plaintiff seeks no compensation for the time they spent unsuccessfully defending

the first fee award in the Fourth Circuit. Thus, plaintiff seeks compensation for half of the 83

hours Mr. Freeman spent on the previous fee petitions (i.e. 41.5 hours), half of the 107 hours

spent by Ms. Jeon (53.5 hours), and half of the 19.8 hours recorded by Ms. Mandelbaum (9.9

hours). Freeman Decl'n ¶ 5; Jeon Decl'n ¶ 22; Mandelbaum Decl'n ¶ 14. Despite organizing

his time records and preparing lengthy affidavits in support of both the initial and supplemental

18

fee petitions, Mr. Cockey recorded none of the time he spent on those previous fee petitions and so seeks no compensation for that phase of the case.

Mr. Knussman seeks full compensation for the time spent on attorneys' fees since the Fourth Circuit's decision, including counsel's time preparing this letter, which is necessary for mediation but will also be necessary for a new fee petition. For this period (beginning September 2003), Mr. Freeman has spent 68.1 hours, Ms. Jeon 38.7 hours, and Mr. Cockey 3.0 hours.

Adding half of the time on previous petitions to all the time on this one produces:

| D. Jeon | 92.2 hrs. |
|---|---|
| S. Mandelbaum | 9.9 hrs. |
| R. Cockey | 3.0 hrs. |
| A. Freeman | 109.6 hrs. |
| Subtotal | 214.7 |

## 13.  No Charge – Time for Which Mr. Knussman Does Not Seek Compensation

Ms. Jeon is not seeking compensation almost 450 hours of her time, including not only the reductions described above and 200 hours of time that she coded as "no charge," but also over 60 hours of time spent on "case administration" for which Judge Black awarded compensation. Jeon Decl'n ¶¶ 25-28. Plaintiff has deleted 32 hours of Ms. Jeon's time on the first appeal, as well as over 10 of Ms. Mandelbaum's and almost 40 of Mr. Cockey's, to account for the issue of the amount of damages, on which he lost. He has also deleted all of the time spent unsuccessfully opposing defendants' second appeal (of the attorneys' fees award) – over 75 hours of Mr. Freeman's time, over 10 hours of Mr. Cockey's time, and another 14.5 hours of

Ms. Jeon's time.  Freeman Decl'n ¶ 7; Cockey Decl'n ¶ 20; Jeon Decl'n ¶ 26.  He also deleted all "case administration" time.  He has deleted hundreds of hours of time spent by lawyers, law clerks, and paralegals other than the four primary attorneys.  Jeon Decl'n ¶ 24; Freeman Decl'n ¶ 7.

The ACLU of Maryland's records reflect that it has written off 446.9 hours of Ms. Jeon's time, valued at $122,897.50, as well as 126.6 hours of others' time, valued at $13,003.50, for a total write-off of $135,901 of fees.  Jeon Decl'n ¶ 28.  The ACLU-WRP records reflect 16.2 hours written off initially, along with 181.5 hours written off based on Judge Black's finding that half of Ms. Mandelbaum's time should be cut, for a total discount of $54,367.50 of fees. Mandelbaum Decl'n ¶ 12.  Brown, Goldstein & Levy's records reflect a write-off of 83.8 hours of Mr. Freeman's time and 33.25 hours of others' time, for a total write-off of $27,111.25. Freeman Decl'n ¶ 7.  And Cockey, Brennan & Maloney have written off over 75 hours of Mr. Cockey's fees (not including the fee-petition time that he did not record), valued at over $20,735. Cockey Decl'n ¶ 20.

Altogether, plaintiff has voluntarily reduced his bill by almost 1,000 hours – approximately 30 percent.

## III.  Appropriate Rates

All four of plaintiff's counsel for whom he seeks compensation – Deborah Jeon, Sara Mandelbaum, Robin Cockey, and Andrew Freeman – are very experienced civil rights lawyers. Mr. Cockey became a member of the bar in 1980; Ms. Jeon, Ms. Mandelbaum, and Mr. Freeman all graduated from law school in 1986 and became members of the bar that year or the next. Under the guidelines adopted by this Court in Appendix B to the Local Rules several years ago, lawyers admitted to the bar more than eight years were to be compensated in the range of $200

to $275 an hour.  In the years since the adoption of those guidelines, fees have increased

substantially.  For example, Mr. Freeman, who was found by Judge Grimm and Judge Garbis to

be entitled to $250 an hour in 2001 (based on 2000 rates), currently bills $300 an hour to his fee

paying clients.  Attached as Exhibit C to Mr. Freeman's Declaration is a 2003 survey by the

Baltimore Business Journal that shows that the hourly fees for partners at Baltimore firms is

generally in the range of $225 to $400.  Plaintiff submits that a reasonable hourly rate for all four

of his very experienced lead attorneys is $275 an hour.

## IV.    Totals

In all, plaintiff's attorneys spent well over 3,000 hours of time on this case over almost

nine years.  In his initial and supplemental fee petitions, plaintiff sought 2,778 hours from Judge

Black, who deleted an additional 458 hours and compensated Mr. Knussman for 2,320 hours of

time, plus $59,152 in expenses.  In his second supplemental fee petition, Mr. Knussman sought

fees for 277 hours, together with $3,102 in expenses, which Judge Black awarded in full on April

9, 2003.  Finally, Judge Black held on April 30, 2003, that Mr. Knussman should also receive

attorneys' fees for time expended on his motion to enforce judgment regarding post-judgment

interest.  Thus, in total, Judge Black awarded Mr. Knussman attorneys' fees for 2,597 hours of

time and expenses of $62,253, as well as ruling that he should receive additional fees for his

motion regarding post-judgment interest.  On August 27, 2003, the Fourth Circuit found the

initial award to be excessive, and also vacated the second award; it did not address the time

regarding post-judgment interest.

On remand from the Fourth Circuit, plaintiff has deducted approximately 400 additional

hours, while adding in the 23.4 hours required to obtain post-judgment interest.  (Consistent with

his approach of not seeking compensation for any aspects of the litigation on which he did not

prevail, Mr. Knussman seeks no fees or expenses for his unsuccessful opposition to defendants'

appeal of the attorneys' fees awards.)

| Litigation Phase | Attorney' Time (hrs.) |
|---|---|
| 1. Pleadings | 34.0 |
| 2. Motions | 274.0 |
| 3a. Discovery | 261.7 |
| 3b. Discovery Disputes | 127.8 |
| 4. Trial Prep | 473.4 |
| 5. Trial | 261.8 |
| 6. Defs.' Mot. JNOV | 40.2 |
| 7. Enforce Injxn vs. Retal'n | 94.8 |
| 8. Def's Appeal on Liability | 215.8 |
| 9. Damages on Remand | 121.7 |
| 10. Post-Jgt Interest | 22.3 |
| 11. ADR | 197.8 |
| 12. Attorneys' Fees | 214.7 |
| Total | 2,340.0 |

Categories 3b (discovery disputes on which plaintiff prevailed), 6 (defendants' motion

for JNOV), 7 (enforcing the injunction against retaliation), 8 (successfully opposing defendant

Mullineaux's appeal on liability for monetary damages), and 10 (obtaining post-judgment

interest), which together total over 500 hours, were necessitated entirely by defendants'

unnecessarily tenacious tactics.  Some portion of the time spent on motions should also be added

to this category of unnecessary time added by defendants' tactics.

Once the 500 hours necessitated by defendants' tactics are set to the side, the remaining 1,840 of attorneys' time, spent over nine years of litigation, is commensurate with the degree of success achieved by Mr. Knussman in winning $47,600 in monetary damages plus nine-and-a-half-weeks of paid leave (part paid by sick leave, part by vacation), an injunction barring retaliation by three defendants, and declaratory judgments against five defendants. Accordingly, 2,340 hours at $275 an hour, for a total of $643,500, is a reasonable fee

Having reached that figure by a careful review of what time has been reasonably and necessarily spent by plaintiff's attorneys on aspects of the case on which he prevailed, plaintiff submits that, alternatively, it would be reasonable to award fees for all of the 500 hours (at minimum) necessitated by the defendants' tactics, together with half of the remaining 2,500 hours spent by plaintiff's counsel, for a total of 1,750 hours, at $275 an hour, for a total of $481,250.

## IV. Expenses

After reviewing defendants' objections and reducing plaintiff's request by $100, Judge Black awarded Mr. Knussman $59,151.99 in expenses on August 26, 2002, and an additional $3,101.68 in expenses in his order of April 9, 2003, for a total of $62,253.67. These expenses are itemized in Jeon Decl'n ¶ 29; Mandelbaum Decl'n ¶ 17; Cockey ¶ 22; Freeman Decl'n ¶ 10. Defendants did not mention expenses in their appeal, and the Fourth Circuit did not criticize this award in any way. Since that award, plaintiff has incurred an additional $405.95 in expenses incurred by Brown, Goldstein & Levy (primarily in copying the exhibits to the fee petitions). Thus, the new total of expenses should be $62,659.62.

Respectfully submitted,

_____/s/_____

Deborah A. Jeon                    Andrew D. Freeman, Bar No. 03867
American Civil Liberties Union     Brown, Goldstein & Levy, LLP
Foundation of Maryland             120 E. Baltimore Street, Suite1700
100 North Liberty Street           Baltimore, Maryland 21201
Centreville, Maryland 21617        (410) 962-1030
(410) 758-1975

Lenora M. Lapidus                  Robin R. Cockey
American Civil Liberties Union     Cockey, Brennan & Maloney
125 Broad Street                   313 Lemmon Hill Lane
New York, New York 10004           Salisbury, Maryland 21801
(212) 549-2668                     (410) 546-1750

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March 2004, a copy of the foregoing was served

on all counsel via the Court's electronic filing system.  Copies, including exhibits, were also

served via first-class mail.

_____/s/_____
Shelly Marie Martin