# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HOWARD KEVIN KNUSSMAN, *et al.*,          *

        Plaintiffs,          *

    v.          *          Civil Action No. AMD-95-1255

STATE OF MARYLAND, *et al.*,          *

        Defendants.          *

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## DEFENDANTS' OPPOSITION TO FEE PETITION (ON REMAND)

The State defendants, by their attorneys J. Joseph Curran, Jr., Attorney General, Maureen M. Dove, Deputy Attorney General, and Betty Stemley Sconion and William F. Brockman, Assistant Attorneys General, hereby submit this memorandum in opposition to the fee petition submitted by plaintiffs' counsel on remand.

## I.    INTRODUCTION

The Fourth Circuit has vacated the award of attorney's fees previously made by this Court on the grounds that the Court had failed to perform a comparison of the degree of overall success obtained by the plaintiffs to the award of fees and costs sought by plaintiffs' counsel. The Fourth Circuit determined that the failure to perform such a comparison had resulted in an "enormous award of attorney's fees" that the "end result of Knussman's litigation simply cannot justify." 73 Fed. Appx. 608 at 616. The Fourth Circuit remanded the matter to this Court, calling for a "significant reduction" in the award of attorney's fees and costs. *Id.* The task for this Court, then, is to implement that directive, and the obligation

1

of counsel for the parties is to provide guidance to the Court by providing the Court with an accurate understanding of the litigation history and the controlling law, including the law of the case established by the Fourth Circuit's rulings.

The overall degree of success obtained by the plaintiffs has not changed since the Fourth Circuit examined the issue. The award of fees and costs that the Court deemed excessive in light of that degree of success was $693,531.47. Incredibly, the petition submitted by plaintiffs' counsel now seeks a total award of $706,159.62 or, alternatively, $543,909.62. *See* Petition at 23. The first alternative represents a $12,628.15 *increase*[1] in the award reviewed by the Fourth Circuit and neither option would result in the "significant reduction" that the Fourth Circuit has said is called for in this case. 73 Fed. Appx. at 616. The petition submitted to this Court by plaintiffs' counsel represents an abdication of their duty "to act responsibly when submitting [a] petition[] for attorney's fees"; rather than provide guidance to this Court on implementation of the Fourth Circuit's directive, plaintiffs' counsel have improperly "submit[ted] a fee request which is merely an opening bid in the quest for an award." *Fair Housing Council of Greater Washington v. Landow,* 999 F.2d 92, 97 (4th Cir. 1993). Part IV of this memorandum will examine some of the questionable arguments and improper billing practices that produced such a bloated "opening bid." The remainder of this memorandum will be devoted to a description of the course of this

---

[1] This figure does not include – and this memorandum will not attempt to address – the additional hours requested by Mr. Cockey in his Supplemental Declaration submitted April 2, 2004. Subsequent to the filing of the fee petition, Mr. Cockey has revised the calculation of his hours, subtracting 9.9 hours for which compensation had been sought in the petition and adding 101.4 hours, for a net addition of 91.5 hours. At the requested rate of $275 per hour, these changes result in an additional increase of $25,162.50 in the award sought by plaintiffs' counsel.

litigation, a discussion of the applicable legal principles, a description of the reasoning adopted by the Fourth Circuit, and, finally, an explanation of the defendants' position on the proper resolution of this matter.

## II.    FACTUAL BACKGROUND

### A.    History of the Case.

In 1994, Kevin Knussman, a Maryland State Police trooper, sought leave following the birth of his child. Shortly before, MSP personnel had been advised of a newly enacted state law which permitted a primary caregiver to take 30 days of sick leave to care for a newborn child and a secondary caregiver to take ten sick leave days for the same reason. The statute was silent regarding the kinds of duties or activities that would differentiate a primary from a secondary caregiver. Mr. Knussman alleged that he was denied leave as a primary caregiver, and grieved this decision through the MSP grievance process. Prior to the second of a four step process, MSP personnel advised Mr. Knussman that there was no presumption that he was the secondary caregiver and further advised him that he had only to show in the grievance procedure that he was in fact the primary caregiver in order to obtain the leave. Mr. Knussman failed to make such a showing and was denied leave as a primary caregiver. Mr. Knussman contended that he was denied this leave because of his sex.

The ensuing litigation resulted in: three published decisions of this Court (*Knussman v. State*, 935 F. Supp. 659 (D. Md. 1996) (*Knussman I*); *Knussman v. State*, 16 F. Supp. 2d 601 (D. Md. 1998) (*Knussman II*); and *Knussman v. State*, 65 F. Supp. 2d 353 (D. Md. 1999) (*Knussman III*)); one published decision of the United States Court of Appeals for the Fourth Circuit (*Knussman v. Maryland*, 272 F. 3d 625 (4th Cir. 2001) (*Knussman IV*)); and one

unpublished decision of that Court (*Knussman v. Maryland*, 73 Fed. Appx. 608, 2003 WL 22023194 (4th Cir. Aug. 27, 2003) (vacating and remanding this Court's decision regarding attorney's fees) (*Knussman V*)).[2]

On April 28, 1995, three plaintiffs, Mr. and Mrs. Knussman and their daughter, filed suit against six defendants:  the State of Maryland, the Maryland State Police, Col. David B. Mitchell (then Superintendent of MSP, who made the final decision in the grievance process), Lt. Col. David Czorapinski (who as Major presided over the second step of the grievance), Lt. Ronnie Creel (Director of Flight Operations at the MSP Aviation Division where Mr. Knussman was assigned) and Ms. Jill Mullineaux (a civilian employee at the MSP Personnel Division with whom Mr. Knussman had discussed the leave provisions).  The four individual defendants all were sued in both their official and personal capacities.   The Knussmans alleged that the defendants discriminated against Mr. Knussman in violation of the 14th Amendment (Count I); that the defendants denied him leave due him under the Family and Medical Leave Act ("FMLA") (in Count II)[3]; and that the defendants discriminated against him in violation of the Maryland Declaration of Rights (Count III).

Exhibit 1 illustrates, through a series of charts, the progressive elimination and narrowing of the claims brought by the plaintiffs at each stage in the proceedings.

The State defendants filed a motion to dismiss, and in August 1996**,** in *Knussman I*,

---

[1] The texts of these opinions have been attached as Exhibits 2 through 5 and 7, respectively. Exhibit 6 is the District Court's August 26, 2002 Memorandum Opinion and Order awarding attorney's fees.  This ruling and the Court's subsequent award of attorney's fees were the subject of the State's appeal in *Knussman V.*

[2] The complaint was later amended to seek damages on this count under § 1983, as well as under the provisions of FMLA itself.

this Court dismissed Mrs. Knussman and the couple's daughter for lack of standing, dismissed the MSP as a defendant, and granted the plaintiffs' motion to voluntarily dismiss Count III. With respect to Count I, the Court held that the plaintiffs' claims under 42 U.S.C. § 1983 for money damages against the State and the other defendants in their official capacities were barred by the Eleventh Amendment. *Knussman I*, 935 F. Supp at 663-64. With respect to Count II, the Court held that the plaintiffs' FMLA claims were not barred, and allowed those claims to proceed against the State and the individual defendants in both their official and individual capacities. *See id*. Thus, after a year of litigation, at least nine claims had been dismissed.

Following discovery and Mr. Knussman's addition of a retaliation claim against a seventh defendant, the parties filed summary judgment motions, which were decided by the court in August 1998 in *Knussman II*. The relevant issues were: first, whether an alleged FMLA violation could be redressed both by an enforcement action under the FMLA itself, with its limited scope of damages, and by an action for additional compensatory damages under § 1983; and second, whether the defendants were entitled to qualified immunity. On the first issue, the Court held that the FMLA did not foreclose a parallel enforcement action under § 1983. *See Knussman II*, 16 F. Supp. 2d at 610. On the second issue, the Court granted qualified immunity to all defendants on the FMLA claim , holding that the law was not clearly established with respect to the relation of FMLA leave to the availability of paid leave under state law. *See id*. at 611. On Count II, the Court granted summary judgement to Colonel Mitchell in his official and his personal capacities. With respect to Count I, however, the Court determined that the existence of disputed facts precluded a ruling on the

defendants' entitlement to qualified immunity on Mr. Knussman's § 1983 claim grounded in the Equal Protection Clause. *See id.* at 612 . Finally, the Court ruled that Mr. Knussman had failed to make out a *prima facie* case in his claim of retaliation for his transfer to another MSP station, and struck that claim. *See id.* at 614. The case was now one plaintiff versus five defendants, with two of four counts remaining.

At the close of Mr. Knussman's case in the jury trial, January 1999, the defendants moved for judgment as a matter of law, under Federal Rule of Civil Procedure 50(a), arguing, among other things, that Mr. Knussman had failed to prove any damages compensable under the FMLA. The Court denied the motion.

On February 2, 1999, by special verdict, the jury found with respect to Count I, that each defendant had denied Mr. Knussman leave under Maryland law because of his gender. With respect to Count II, the jury found the State and the three remaining individual defendants on that count responsible for denying Mr. Knussman leave he was entitled to, or otherwise interfering with the exercise of his rights under the FMLA. However, the jury also found that all individual defendants except Ms. Mullineaux were entitled to qualified immunity as to Count I.[4] Finally, the jury found that Mr. Knussman was entitled to $375,000 in damages, against Ms. Mullineaux in her individual capacity (Count I) and against the State of Maryland and the three individual defendants under the FMLA count in their official capacities.

---

[4] The Court submitted the issue of qualified immunity to the jury as a consequence of its ruling in *Knussman II,* 16 F. Supp. 2d at 612, denying the defendants' motion for summary judgment on that ground. This procedure prompted the Fourth Circuit to observe that "it is far better for the court, not the jury, to answer th[is] ultimate legal question. . . ." *Knussman IV,* 272 F.3d at 634.

The Court reduced the jury's verdict to a judgment and awarded Mr. Knussman damages of $375,000 for which the State, the individual defendants in their official capacities and Ms. Mullineaux in her individual capacity were to be jointly and severally liable. The Court also granted declaratory and injunctive relief against the State and the four remaining individual defendants.

The defendants again moved for judgment as a matter of law, under Rule 50(b) of the Federal Rules of Civil Procedure, or, alternatively, for a new trial, under Rule 59(a). In *Knussman III*, the Court rejected the defendants' argument that Ms. Mullineaux was entitled to qualified immunity as a matter of law and declined to reconsider its prior ruling on the exclusivity of FMLA damages. The Court also rejected the defendants' contention that the jury's damages award was excessive, finding that "Knussman [had] presented considerable evidence of [his] emotional damages." *Knussman III,* 65 F. Supp. 2d at 360. The Court, reconsidered its earlier ruling on the defendants' Rule 50(a) motion and found that Mr. Knussman had failed to prove any damages recoverable under the FMLA itself. The Court then held that the only damages Mr. Knussman had proved under the FMLA count of his complaint were barred by the Eleventh Amendment as against the State and the other defendants in their official capacities. *See id.* at 360. Accordingly, the Court entered an Amended Order of Judgment, vacating the finding of liability on Count II and leaving a judgment of $375,000 against Ms. Mullineaux alone in her personal capacity on Count I. *See id.* at 361 n.4.

The State defendants appealed to the Fourth Circuit, arguing primarily that Ms. Mullineaux was entitled to qualified immunity; that the award of $375,000 for emotional

distress was excessive; and that the trial court's error in submitting the issue of FMLA damages against the State and the other defendants in their official capacities to the jury tainted the jury's verdict.  In *Knussman IV*, the Court of Appeals held that Ms. Mullineaux was not entitled to qualified immunity, because the denial of "nurturing leave" on the basis of gender constituted a violation of clearly established law under the Equal Protection Clause.  *See id.* at 639.

The Court further held, however, that the emotional distress award of $375,000 was excessive, particularly because most of the testimony indicated that Mr. Knussman's emotional distress was related to the stress of litigation, a non-compensable element of damages.  Accordingly, the Court vacated the jury's award and remanded for a new trial on damages with respect to the only surviving monetary claim, Mr. Knussman's equal protection claim against Ms. Mullineaux in her personal capacity.  *See id.* at 642.

Mr. Knussman's subsequent petition for rehearing and rehearing en banc was unsuccessful.  On remand, the parties first engaged in settlement negotiations, including proceedings before a magistrate judge.  When these efforts proved to be unsuccessful, the parties submitted the issue of damages to the Court on the existing record.  On August 26, 2002, the Court issued its order amending the earlier judgment, reducing the damages award from $375,000 to $40,000.[5]

### B.    History of the Attorney's Fees Litigation.

Mr. Knussman filed his first petition for attorney's fees and expenses on March 26,

---

[5]The charts in Exhibit 1 depicting the results at each stage of the litigation graphically demonstrate the defendants' successes throughout the litigation and the plaintiffs' concomitant lack of overall success.

1999, while the defendants' post-trial motion was still pending; this petition sought reimbursement for 2,230.6 hours of the time of five attorneys (Robin R. Cockey, Esq., Deborah A. Jeon, Esq., Sara L. Mandelbaum, Esq., Mary Wyckoff, Esq., and Dwight H. Sullivan, Esq.) and one paralegal, totaling $453,275.30; the petition also sought reimbursement for expenses in the amount of $40,367.06. This Court held that petition in abeyance pending the outcome of post-trial motions and the first appeal to the Fourth Circuit.

Following the decision of the Fourth Circuit, on March 5, 2002, Mr. Knussman filed a supplemental petition for attorney's fees. This petition renewed the request for attorney's fees made in the first petition, but sought to have those attorney hours reimbursed at 2002 rates, and sought additional reimbursement for the period since the first petition was filed. Specifically, the supplemental petition sought reimbursement for the time of six attorneys (Mr. Cockey, Ms. Jeon, Ms. Mandelbaum, Lenora M. Lapidus, Esq., Namita Luthra, Esq.,and Andrew D. Freeman, Esq.), totaling 692.91 hours. The total amount sought at that time was $688,227.30 in fees and $59,251.99 in expenses.

In briefing and in argument on May 31, 2002, the defendants argued that a decision regarding attorney's fees should not be made until the Court had resolved the issue of damages, which would be of central importance to the question of attorney's fees. The defendants also argued that much of the time for which fees were sought was expended in furtherance of futile claims unrelated to the one monetary claim upon which one plaintiff, Mr. Knussman had ultimately prevailed against one defendant; that Mr. Knussman's attorneys had submitted requests for fees and costs that were excessive, unnecessary, duplicative, or unsubstantiated; and that, in the overall picture, Mr. Knussman had achieved

only minimal success in the litigation.

On August 26, 2002, the same day the Court issued its opinion reducing the damages award from $375,000 to $40,000, it issued a second opinion and order in which it awarded $626,049.29 of the $747,479.29 in interim attorney's fees and expenses requested by Mr. Knussman's attorneys.

The defendants appealed this decision to the Fourth Circuit, arguing that the Court failed to give sufficient consideration to Mr. Knussman's degree of success, the "most critical factor" for the court's consideration when a plaintiff has achieved only partial success, and that it had also failed to compare the amount of the award of attorney's fees to Mr. Knussman's overall success, which the Supreme Court has directed courts to do: "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained."[6] *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

## III.    THE LAW OF ATTORNEY'S FEES AND THE LAW OF THE CASE

In its decision vacating this Court's awards of attorney's fees, the Fourth Circuit first laid out the general principles that apply in making an award of reasonable attorney's fees under 42 U.S.C.§ 1988:

(1)     "The starting point . . . is the **lodestar figure**, which is 'the number

---

[6] Following the decision on remand, Mr. Knussman filed a Second Supplemental Fee Petition for $67,482.18, which this Court granted.  The Fourth Circuit consolidated the defendants' appeal of that order with their appeal of the first fee order, and directed that, "[u]pon remand, the district court should consider the entire amount awarded in light of [the Fourth Circuit's] opinion."  *See Knussman V,* n.6.

of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,'" 73 Fed. Appx. 608, 613 (4th Cir. 2003) (quoting *Hensley,* 461 U.S. at 433).

(2)    "When a civil rights plaintiff has prevailed on only some of the claims – as is the case here – the court must determine **whether 'the plaintiff fail[ed] to prevail on claims that were unrelated** to the claims on which he succeeded.'" 73 Fed. Appx. at 613 (quoting *Hensley,* 461 U.S. at 434 (alterations in original)).

(3)    "Once the time spent on unrelated, unsuccessful claims has been eliminated from consideration, the court 'then awards **some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff**,'" *Id*. at 613-614 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). When a "'plaintiff's claims for relief . . . involve a common core of facts or . . . [are] based on related legal theories,'" then "the chief consideration becomes '**the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation**.'" *Id*. at 614 (quoting *Hensley,* 461 U.S. at 435-36 (alterations in original)).

(4)    "When "the plaintiff 'has achieved only partial or limited success,' then the court may well be required to reduce the award" because, in such circumstances, "'**the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . [T]he most critical factor is the degree of success obtained**.'" *Id*. at 614 (quoting *Hensley,* 461 U.S. at 436 (alteration in original))(emphasis added).

As to this case, the Fourth Circuit agreed with the State defendants that "Knussman's lawsuit was only marginally successful when viewed in its entirety." *Id*. at 614. The Court observed that Mr. Knussman "asserted multiple claims against multiple parties, but ended up securing monetary relief against only one defendant." *Id.* And, in the Court's view, "Knussman's single successful claim for monetary relief against Mullineaux did not share a core of common facts with his claims against the other individual defendants." *Id.* at 615 (citing *Goodwin v. Metts*, 973 F. 2d 378, 383 (4th Cir. 1992)).

The Court also agreed with the defendants that the equitable relief awarded "was not

11

especially significant because it did not materially alter the relationship between the litigants," and rejected Mr. Knussman's argument that the precedential value of the relief was significant because it benefitted all MSP employees. 73 Fed. Appx. at 615. As the defendants urged, the Fourth Circuit relied on the Supreme Court's reasoning in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 605 (2001), in affirming that its focus must be "upon changes that are mandated by some form of court-ordered relief." 73 Fed. Appx. at 615. The Court noted that the heart of Mr. Knussman's claim was categorical exclusion from parenting leave based on his gender, and that such conduct violated *clearly established* law, as it had earlier found in *Knussman IV*, 272 F. 3d at 635-39. *See id.* at 615-616. The Court also emphasized that, since the MSP had recanted that policy, and had so notified Mr. Knussman during his grievance procedure, "the equitable relief that was awarded Mr. Knussman, which directed that MSP apply the leave provision equally to both genders, required nothing more than what the MSP had already done." *Id.* at 616. "In sum, we conclude that the equitable and declaratory relief won by Mr. Knussman was not so significant that the result he obtained could be described in any respect as 'excellent.'" *Id.*

Having determined that "Knussman's lawsuit was only marginally successful when viewed in its entirety," *id.* at 614, the Court proceeded to examine the relationship between the amount of fees awarded and the results obtained, as required by *Hensley*, and concluded:

> In our view, the end result of Knussman's litigation simply cannot justify such an enormous award of attorney's fees. For the reasons stated previously, we view Knussman's success as limited and not overly

> significant as a legal matter.  Accordingly, we remand for the district court
> to determine the appropriate amount of fees and costs in light of our opinion.

*Id.* at 616.

The Court also noted that "Knussman was unable to cite a case in which an award of fees analogous to the one he seeks was approved."  *Id.* at 616 n.5.  The Court rejected his analogy to *City of Riverside v. Rivera,* 477 U.S. 561 (1986), as unhelpful.  *See id.*  It is worth noting that the fees of $245,456.25 approved in that case exceeded the damages award of $33,350 by a factor of approximately 7.36; and that application of a factor of 7.36 to the monetary award in this case would result in a fee award here of $294,400.  In *City of Riverside*, however, a plurality of the Court held that the award of fees was justified because the suit "established important social benefits beyond [the plaintiffs'] own interests," whereas the Fourth Circuit determined that the precedential value of the result obtained by Knussman was "dubious" and noted the limited impact of the equitable relief ordered by the district court.  73 Fed. Appx. at 615-616.

## IV.   THE   LODESTAR   AND   ADJUSTMENT   CALCULATIONS SUBMITTED BY PLAINTIFFS' COUNSEL ARE BASED ON INCORRECT LEGAL PRINCIPLES AND IMPROPER BILLING PRACTICES.

As noted in the introduction to this memorandum, the fee petition submitted by plaintiffs' counsel utterly fails to provide an analysis that complies with the law of the case established by the Fourth Circuit.  In the year since the Fourth Circuit heard oral argument in this case, their clients have obtained no greater level of success and yet plaintiffs' counsel obstinately contend that they are entitled to an adjusted lodestar award of $643,500 in fees and $62,659.62 in expenses, for a total of $706,159.62, which is an *increase* of $12,628.15

13

over the amount that the Fourth Circuit deemed enormous and in need of "significant reduction."[7]  73 Fed. Appx. at 616 (emphasis added).  There is no avoiding the conclusion that plaintiffs' counsel have submitted an "outrageously excessive fee petition in the hope that the district court would at least award some, preferably high, percentage of the requested fees." *Fair Housing Council,* 999 F.2d at 98.[8]  The petition submitted by plaintiffs' counsel verges on the type of submission that "is so outrageously excessive [that] it 'shocks the conscience of the court,'" warranting a *total* denial of fees. *Id.* at 96 (quoting *Sun Publ'g Co. v. Mecklenburg News, Inc.,* 823 F.2d 818, 819 (4th Cir. 1987) (alterations in original)).

     Because the fee petition repeatedly claims to have made generous reductions in the amounts claimed, *see, e.g.,* Petition at 1, 7, 9, 12, 13, 15, 17, 18, 20-21, it is natural to inquire into the methods used by plaintiffs' counsel to arrive at a figure in such manifest disregard of the Fourth Circuit's directive.  Unfortunately, the billing records and affidavits submitted

---

     [7]As is also noted in the introduction to this memorandum, plaintiffs' counsel propose an alternative figure of $543,909.62.  That figure is arrived at through a mysterious series of calculations.  It ignores the lion's share of reductions noted in the rest of the petition by beginning with a round number of 3,000 hours, 500 of which are immediately exempted from adjustment because they were assertedly "necessitated by the defendants' tactics."  Petition at 23.  Half of the remaining 2500 hours are then added to the 500 hours and the sum is multiplied by the proposed billing rate of $275 per hour.  Costs of $62,659.62 are then added in.

     [8] Regrettably, this is not the first time that plaintiffs' counsel have chosen to advance an entirely unhelpful position before this Court by ignoring the clear directive of the Fourth Circuit remand.  Following the Fourth Circuit's decision in *Knussman IV,* in which the Court vacated the jury award of $375,000 as excessive and "clearly against the weight of the evidence," 272 F.3d at 642, the plaintiffs urged this Court to reinstate the award in full.  In *Knussman VI,* plaintiffs' counsel defended this decision by explaining that "it took no more time to ask for $375,000 than to ask for $175,000 or $40,000."  Brief of Appellee in *Knussman V* at 19.

with this and previous petitions do not permit a comprehensive examination of the petitioners' calculations. However, the petition does disclose a number of dubious arguments and billing practices, which are discussed below as illustrative examples only.

A. **There Is No Basis For Exempting 500 Hours From The Reduction Of The Fee Award On The Asserted Grounds That They Were Necessitated By The State's "Tenacious" Defense.**

1. **There Is No Legal Authority For The Petitioners' Position.**

Plaintiffs' counsel leave unexamined and undiminished 500 of the hours in their lodestar calculation, contending that it should be compensated "without regard to plaintiff's degree of success." Petition at 4; *see* Petition at 1-2, 4-5, 8, 23. As an initial matter, it should be noted that the only authority cited for this novel approach is *dictum* in a *footnote* in a *plurality* opinion. *See City of Riverside v. Rivera,* 477 U.S. 561, 580 n.11 (1986) (plurality opinion). Additionally, plaintiffs' counsel presented the same argument to the Fourth Circuit, repeatedly attributing their outsized legal fees to the intransigence, belligerence and tenacity of the defendants. *See* Brief of Appellee in *Knussman V* at 8-9, 10 (quoting *City of Riverside,* 477 U.S. at 580 n.11), 15-16, 19. The Fourth Circuit conducted a thorough review of the litigation history, *see* 73 Fed. Appx. at 609-13, and was not persuaded.

2. **The Petitioners' Assertions Of Undue "Tenacity" By The Defendants Are Inconsistent With The Litigation History.**

As set forth above, the history of this litigation is one of vigorous and mostly successful opposition by the defendants to the plaintiffs' claims. The defendants raised meritorious arguments, some of which were accepted the first time they were raised; others prevailed in subsequent decisions by this Court; still others were successful before the jury

15

and in post-trial motions; finally, most of the defendants' remaining arguments were ultimately successful on appeal or remand. In short, this litigation was characterized by a sequence of rulings, in both this Court and the Fourth Circuit, that narrowed or eliminated the plaintiffs' claims and limited the availability of monetary damages. The State, no less than any other defendant is entitled to vigorously defend claims against it, its officers, and its employees.

Furthermore, many of the examples given by plaintiffs' counsel of the defendants' supposed obstructionist tactics are exaggerated or misleading. Plaintiffs' counsel aver that:

> Categories 3b (discovery disputes on which plaintiff prevailed), 6 (defendants' motion for JNOV), 7 (enforcing the injunction against retaliation), 8 (successfully opposing defendant Mullineaux's appeal on liability for monetary damages), and 10 (obtaining post-judgment interest), which together total over 500 hours, were necessitated entirely by defendants' unnecessarily tenacious tactics.

Ms. Jeon fails to mention that the defendants' motion for JNOV was successful and resulted in the elimination of many claims that should not have been submitted to the jury. The jury, was undoubtedly influenced in its award of damages by the presence of defendants other than Ms. Mullineaux and of FMLA claims for which there was no proof of damages. The regrettable effect of the defendants' entirely meritorious motion for JNOV was to leave the full burden of liability on Ms. Mullineaux in her individual capacity.

Ms. Jeon also fails to mention that Judge Black refused to enter any order "enforcing the injunction against retaliation" and it is therefore non-compensable. The reason no order was entered is two-fold: first, there was nothing retaliatory in the desire of the MSP and its pilots to ensure that Mr. Knussman was fit for duty; second, the dispute was ultimately resolved not by court intervention or by discussion between the parties, but by the unilateral

efforts of counsel for the defendants to break the impasse. *See* Exhibit 8, Affidavit of Betty Stemley Sconion at ¶ 4.

Similarly, Ms. Jeon fails to note that *Knussman IV* involved an appeal on several grounds. The appeal on Ms. Mullineaux's "liability for monetary damages," as Ms. Jeon puts it, was in fact principally an appeal on qualified immunity, questioning whether an official in her position should reasonably have understood that her application of two new, overlapping federal and state leave statutes was unconstitutional. More importantly, the appeal was ultimately successful in reducing her liability for monetary damages by nearly 90%.

### 3. The Plaintiffs' "Tenacity" Has Prolonged And Unnecessarily Complicated This Litigation.

While Ms. Jeon declares that she, Mr. Cockey and other plaintiffs' counsel have expended "far too much attorney time," she states that this is "undeniably the fault of the defendants." Petition at 4; Exhibit 1 at ¶ 10. This ignores the role that plaintiffs' counsel have played in bringing non-meritorious claims, engaging in excessive motions practice, persisting in positions rejected by this Court and the Fourth Circuit and rejecting reasonable settlement offers. Plaintiffs' counsel could easily have conducted this litigation with the expenditure of fewer resources by not contesting the State's assertion of numerous meritorious defenses, such as qualified immunity and the Eleventh Amendment bar to many of their claims for damages, and by abandoning non-meritorious claims for monetary relief, such as those under the FMLA (where proof of such damages was absent) and for non-compensable litigation-related emotional distress.

Indeed, one would have expected a much more streamlined set of claims from

attorneys who, as both the defendants and the petitioners agree, "are very experienced civil rights lawyers." Petition at 20. However, the plaintiffs persisted in pressing nearly every claim, regardless of merit, and then revised their complaint to add new claims or alter old ones. For instance, Mr. Cockey's timesheets show that he conducted research on "standing" on January 4 and 5, 1996; yet he failed to recognize that two of the plaintiffs clearly lacked standing.

The docket sheet and the fee petition itself establish how readily the plaintiffs resorted to motions practice. *See also* Exhibit 8, Affidavit of Betty Stemley Sconion; *cf., e.g.,* Local Rule 104.7 (requiring counsel to make "sincere attempts to resolve differences" over discovery issues), 105.8 ("The Court expects that motions for sanctions will not be filed as a matter of course.").

An extraordinary instance of the intransigence of plaintiffs' counsel was their refusal to stay enforcement of the monetary judgment against Ms. Mullineaux pending the appeal in *Knussman IV.* Mr. Cockey's time records show more than a dozen entries between late September 1999 and early January 2000 reflecting research or discussions about "collection issues" or "execution on judgment." At this point, the judgment had been reduced to a $375,000 judgment against Ms. Mullineaux in her individual capacity. In the face of the plaintiffs' threats to impose a lien on her home, the State was forced to seek approval from the Board of Public Works to pay whatever judgment resulted after the appeal.

Finally, the plaintiffs have declined numerous settlement offers, beginning with the inception of the suit. *See* Exhibit 8, Affidavit of Betty Stemley Sconion at ¶ 2 (offer of FMLA leave declined). More importantly, while plaintiffs' counsel seek compensation for nearly 200 hours of time preparing for and participating in settlement negotiations, they seem

not to recognize how much attorney time could have been saved if the defendants' reasonable offers at several junctures had been accepted. While Federal Rule of Evidence 408 would clearly permit the settlement offers to be disclosed for the purpose, among others, of "negativing a contention of undue delay," as here, the defendants are nevertheless reluctant to reveal the content of settlement discussions between the parties. Suffice it to say that, had plaintiffs' counsel been willing to accept a Summer 2002 package deal that would cover both Mr. Knussman's damages award and their fee award, any reasonable allocation of the sum between the client and his lawyers would have resulted in a much more handsome monetary award than Mr. Knussman ultimately received on remand. That resolution, or any resolution based on an earlier settlement offer, would of course also have spared both sides numerous hours of attorney time and would not have drawn so heavily upon the Court's judicial resources.

**B.    Plaintiffs' Counsel Have Suggested Minor Reductions In The Hours Factor Of The Lodestar Calculation, While Increasing The Hourly Fee Rate By Which The Hours Are Multiplied.**

A second means by which plaintiffs' counsel have succeeded in producing a calculation that increases the proposed award instead of decreasing it is by discreetly raising the hourly rate. In effect, what they give with one hand, they take away with the other. They are careful to mention each reduction in the number of hours, but mention only once the other side of the lodestar equation, their requested hourly rate of $275. *See* Petition at 21. They entirely neglect to mention that this represents an increase over the rates that produced the August 2002 and April 2003 fee awards vacated by the Fourth Circuit. In the prior fee petitions submitted by plaintiffs' counsel, Ms. Jeon, Ms. Mandelbaum and Mr. Freeman

sought to be compensated at a rate of $240 per hour, while Mr. Cockey sought a $250 hourly rate.

Mr. Cockey acknowledges that he does not charge his paying clients this rate, much less the $275 hourly rate now being sought. *Cf. Hensley,* 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority." (emphasis in original)).) He requests the premium rate, however, on the grounds that this is his "hourly rate charged for Federal litigation pursuant to Local Lodestar provisions. . ." and attributes his lower rate charged to private paying clients to "economic realities on the Lower Eastern Shore (where, incidentally, Mr. Knussman lives). Petition Exhibit 2, Declaration of Robin R. Cockey at ¶¶ 5-6. This is an outrageous application of 42 U.S.C. § 1988 and "turns § 1988 into a relief Act for lawyers." *City of Riverside*, 477 U.S. at 588 (Rehnquist, J., dissenting).

It was unreasonable to seek premium rates "for all *four* of [the plaintiffs'] very experienced *lead* attorneys," Petition at 21, in their previous submissions to this Court. *See Finkelstein v. Bergna,* 804 F. Supp. 1235, 1246 (N.D. Cal. 1992) ("[F]ee paying clients simply would not tolerate being charged a premium rate for work done by a senior lawyer that could be done . . . by less senior and less pricey counsel.") ; *cf. Sheppard v. Riverview Nursing Centre, Inc.,* 870 F. Supp. 1369, 1378 (D. Md. 1994) ("Given that highly paid partners performed all of the legal work on this case, including elementary legal research . . . it is appropriate to strictly scrutinize the billing records to ensure that every hour charged at the partner billing rates was justified and an efficient use of time."). If it was unreasonable before, it is unconscionable now to pull a 'bait and switch' and seek premium rates at the very top of the scale set by Appendix B to the Local Rules for four "lead" attorneys.

20

**C.     The Petitioners Double- And Triple-Count Their Hours
         Reductions.**

As noted above, the fee petition submitted by plaintiffs' counsel appears to make
numerous reductions in many of the phases of the litigation.  The generosity of this supposed
exercise in reasonable billing judgment is illusory.  Of course, they begin with an
extraordinarily high number of approximately 3,300 hours for the four lead attorneys and
then note that "the plaintiff has *voluntarily* reduced his bill by almost 1,000 hours."  Petition
at 20 (emphasis added).  Many of the hours included within that sum, however, were not
sought in prior petitions (and so were not included in Judge Black's prior awards), and many
others were excluded by Judge Black in making his awards; thus, many of these "voluntarily
reduced" hours were not even included in the awards that the Fourth Circuit reviewed and
found excessive.  This is another method by which plaintiffs' counsel produce a calculation
of a proposed award that is actually larger than the award that the Fourth Circuit required by
significantly reduced.

**D.     The Petitioners' Arguments Ignore Or Distort Essential
         Elements Of The Fourth Circuit's Ruling.**

Throughout the petition, plaintiffs' counsel attempt to buttress their position by
attaching great significance to what the Fourth Circuit did *not* say.  *See* Petition at 3, 13, 15
("Nothing in the Fourth Circuit's opinion criticizes this portion of the award. . . . [T]he
Fourth Circuit did not criticize the award for the defense of liability against Ms.
Mullineaux."), 23.  This is, to say the least, a peculiar understanding of the concept of *ratio
decidendi.*  (The statement on page 23 that "Defendants did not mention expenses in their
appeal, and the Fourth Circuit did not criticize this award in any way" compounds the error;
the entirety of the awards were appealed and the amounts referred to by the Fourth Circuit

in its opinion included both fees and expenses.)  In much the same way, plaintiffs' counsel attempt to fortify their arguments by relying on the analysis that Judge Black conducted in making the fee awards, describing the monetary damages award as "substantial," for instance, even though the Fourth Circuit rejected the analysis that led to the fee awards and vacated the awards.

More fundamentally, the petition fails to recognize the central argument made by the defendants on appeal and the basis for the Fourth Circuit's holding.  The critical factor is the degree of success obtained, and the analysis must proceed from there to a comparison between the success level and the fee amount to ensure that the latter is reasonable.  The petition submitted by plaintiffs' counsel nowhere attempts to perform such a comparison. The petition reaches the absurd result it does by considering various categories and making minor reductions in them.  The petitioners suggest that this analysis alone is an adequate approach.  They note that a district court may *either* "identify specific hours that should be eliminated *or* . . . simply reduce the award to account for the limited success."  Petition at 3 (quoting *Hensley,* 461 U.S. at 436-37)).  But the import of the Fourth Circuit's ruling was that this Court's prior attempts to arrive at a reasonable award by conducting the former type of analysis alone had failed.  This petition fares no better (and indeed fares worse).

Fourth Circuit precedent establishes a sequential analysis that permits a district court to *first* identify the number of hours reasonably expended, and *then* to perform a comparison between the degree of success and the size of the award.  *See, e.g., Johnson v. City of Aiken,* 278 F.3d 333, 337 (4th Cir. 2002) (describing steps in the analysis[9]).  It was the district

_____

[9]"To determine the appropriate amount, a district court should first identify the
(continued...)

court's failure to perform the comparative inquiry that the defendants challenged on appeal and that the Fourth Circuit found to be an abuse of discretion.

Following the previous remand, this Court did not have an opportunity to conduct this comparative inquiry after full briefing by the parties because the parties were instructed to brief the issue of the recalculated damages award at the same time as the issue of the fee award. Accordingly, the 90% reduction in the damages award was not properly taken into account, contrary to the guidance provided by Fourth Circuit precedent. *See, e.g., Randall v. Prince George's County,* 302 F.3d 188, 212 (4th Cir. 2002) (instructing reduction in fee award in light of determination that damages award was excessive); *Hetzel v. County of Prince William,* 89 F.3d 169, 173-74 (4th Cir. 1996) (same). The same mistake should not be made twice as a consequence of the petitioners' disinclination to squarely address the rationale and ruling of the Fourth Circuit in its decision to vacate the fee awards and remand to this Court for recalculation.

## V.    CORRECT APPLICATION OF THE COURT'S INSTRUCTIONS TO CALCULATION OF FEES IN THIS CASE.

### A.    The Lodestar.

The Fourth Circuit termed the fees and costs of $693,513.37 previously requested and awarded in this case "enormous" in light of the end result of the litigation, and has directed this Court to determine "appropriate fees and costs in light of [its] decision."

---

[9](...continued)
number of hours reasonably expended on the litigation and multiply that number by a reasonable rate. The court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."

### 1.   Hours.

As is well known, the starting point for calculating fees is the number of hours reasonably expended on the litigation, 73 Fed. Appx. at 613, multiplied by a reasonable rate. The fee petition submitted by plaintiffs' counsel grossly inflates the number of hours necessary to litigate this case effectively, and also overreaches in some instances in the hourly rates claimed, thus reaching a bloated total that is anything but "reasonable."

The fee petition submitted on remand requests fees for 2,340 hours, each hour at $275.00. Plaintiffs' counsel claim that these hours should be attributed as follows:

| Phase of Litigation | Attorney Time in Hours |
|---|---|
| 1.    Pleadings | 34.0 |
| 2.    Motions | 274.0 |
| 3a.    Discovery | 261.7 |
| 3b.    Discovery Disputes | 127.8 |
| 4.    Trial Preparation | 473.4 |
| 5.    Trial | 261.8 |
| 6.    Defendants' Motion for JNOV | 40.2 |
| 7.    Enforcement Action v. Retaliation | 34.0 |
| 8.    Defendants' Appeal on Liability | 215.8 |
| 9.    Damages on Remand | 121.7 |
| 10.    Post Judgement Interest | 22.3 |
| 11.    Settlement | 197.8 |
| 12.    Attorney's Fees | 214.7 |
| **Total** | **2 ,340.0** |

In addition, the fee petition claims that the following *reductions* in hours were made:

| Firm | Hours Reduced | Amount of Fee |
|------|---------------|---------------|
| ACLU of Maryland | 573.5 | 135,901.00 |
| ACLU-WRP | 197.7 | 54,367.50 |
| Robin Cockey | 75.0 | 20,735.00 |
| Brown & Goldstein | 117.05 | 27,111.25 |
| **Totals** | **963.25** | **$238,114.75** |

Plaintiffs' counsel thus asserts that they expended an incredible number of 3,303.25 hours litigating this case, which at the $275.00 claimed for every single hour, would be an investment of $908,393.75. Even with the "gift" of 963.25 hours for which plaintiffs' counsel are not now seeking fees (in their first alternative), at the increased hourly rate of $275 hours, the amount requested is $643,500, plus $62,659.62 costs, or a total of $706,159.62. This is *more* than the Fourth Circuit already has already termed "enormous."

In addition to claiming an incredible number of hours expended, there are time records of three, four and five senior attorneys, each with different billing software or format, some of which changed over time; this garbled presentation leaves defendants, and presumably the Court, completely unable to make item-specific analysis. The plaintiff bears the burden, however, of presenting fee claims in a form that both the Court and the defendants can understand and analyze and to establish the reasonableness of the hours spent (*Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983), and "where it is necessary for the court to approximate because of counsel's inadequate record-keeping we consider it just to do so

in favor of the party contesting the fee award." *Spell v. McDaniel*, 852 F.2d 762, 768 (4th Cir. 1988) (citing *Hensley*). This Court has discretion when determining the appropriate amount of fees either to "attempt to identify specific hours that should be eliminated" or to "simply reduce the award" through an across-the-board reduction" to address the inadequacies in the time records. *See Hensley,* 461 U.S. at 436-37.

As to staffing and over-lawyering, plaintiffs'counsel staffed this case through the period of post-trial motions and the first appeal with three senior attorneys, each requesting premium rates. Their varied locations in Baltimore, the Eastern Shore, and New York City necessitated much long-distance communication by phone and mail, and much travel. The attorneys also spent an incredible number of hours communicating with each other, discussing each aspect of every phase of the case, and reviewing each other's work; billing records indicate that in many instances, they seek compensation for each attorney taking part in the discussion. After mid-2002, a fourth senior attorney was added, presumably to address the issue of attorney's fees. Each of these attorneys is now claiming the premium rate, for civil rights attorneys in Baltimore, of $275.00 per hour. *See, e.g., Shepard v. Riverview Nursing Centre*, 870 F.Supp. 1369, 1378 (D. Md. 1994) ("Given that highly paid partners performed all of the legal work on this case, including elementary legal research," court will strictly scrutinize billing records to ensure that ever hour charges was justified and efficient use of time.)

Regarding the inflated use of senior attorneys' time, the Court must first scrutinize the fee petition not from the perspective of a plaintiffs' law firm seeking to maximize income, but rather "from the point of view of a cost-conscious client." *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 765 (D. Md. 2001)(quoting *Vaughan v. Board of*

*Education of Prince George's County*, 598 F. Supp. 1262, 1277 (D. Md. 1984). "The analysis of the extraordinary number of hours put in by respondents' attorneys in this case must be made in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under §1988 means *a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." City of Riverside v. Rivera*, 477 U.S. 561,591 (1986) (Rehnquist, J. joined by Burger, White and O'Connor, JJ., dissenting) (emphasis added); *see also* S. Rep No. 94-1011, at 6, *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913 ("In computing the fee, counsel for prevailing parties should be paid, *as is traditional with attorneys compensated by a fee-paying client,* 'for all time *reasonably* expended on a matter.'"(emphasis added) (citation omitted)).

For example, in *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343 (4th Cir. 1995), the Fourth Circuit affirmed a trial court's decision to cut a fee petition in which there was "overbilling and excessive resources committed to the case by plaintiff's counsel." *Id.* at 1360. The trial court in *Martin,* affirmed by the Fourth Circuit, declined to award fees for three lead counsel, for an attorney who attended trial but did not actively participate, and for excessive paralegal billing. *Id.*

Similarly, in *Goodwin v. Metts,* 973 F. 2d 378, 385 (4th Cir. 1992), the Fourth Circuit affirmed a 50% reduction in a fee petition because of duplication of effort caused by new lawyers added to the case and "the use of three to four lawyers throughout the action when one or two reasonably competent lawyers would have sufficed." *Id.* at 381. And in *Spell v. McDaniel*, the Fourth Circuit criticized "duplication of effort,""overstaffing," and "overkill," ultimately reducing by 60% the allowable hours for the six lawyers representing the plaintiff.

27

This Court has specifically enforced the requirements in the Local Guidelines dictating that only one lawyer is to be compensated for attending depositions, client and third-party conferences, intro-office conferences, and hearings. *Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 766-67 (D. Md. 2001) ; *Greenspring Racquet Club v. Baltimore County,*, 77 F. Supp. 2d 699, 704 (D. Md. 1999) (applying Local Guideline limits on number of lawyers for particular tasks), *aff'd in part, vacated in part on other grounds, and remanded by unpublished opinion,* 232 F. 3d 887 (4th Cir. 2000).

### 2.    Billing Rates

As noted above, plaintiffs' counsel now request $275.00 per hour each, the maximum rate set forth in the local guidelines.  The defendants have already noted that this represents an unannounced increase in the rates that plaintiffs' counsel previously deemed reasonable and that it far exceeds what Mr. Cockey charges his paying clients.  The petition observes that Mr. Freeman has been awarded $275 per hour in prior fees litigation, and the defendants recognize that he is a very capable civil rights attorney.  However, the work for which he seeks compensation in this case relates almost entirely to fees litigation (not the merits of his client's civil rights claims), which, as some courts have observed, may require more of an attorney's time than it does of his or her skill.  *See, e.g., In re C & J Oil Co.,* 81 B.R. 398, 405 (W.D. Va. 1987) (fee preparation compensated at 75% of regular rate); *Shorter v. Valley Bank & Trust Co.,* 678 F. Supp. 714, 725 (N.D. Ill. 1988) ("[M]ost lawyers do not bill their fee-paying clients for hours spent preparing bills."); *accord Hutchinson v. Wells,* 719 F. Supp. 1435, 1445-46 (1989).  The petition seeks compensation for the 50% of the hours for preparing the petitions that led to the vacated awards and 100% of the hours expended on the present petition, resulting in a bill for more than 200 hours (or five attorney-weeks).  In light

of this failure to make a meaningful reduction in these hours, a reduction in the hourly rate would be appropriate.

More generally, with respect to each of plaintiffs' counsel and each of the categories for which compensation is sought, if the petitioners refuse to make significant reductions in the hours, they ought to do so with respect to the rates.

### B.    Unrelated Claims on Which Mr. Knussman Did Not Prevail.

As the Fourth Circuit found,

> Knussman's single successful claim for monetary relief against Mullineaux did not share a core of common facts with his claims against the other individual defendants. Knussman's attorneys could have developed the facts supporting his claims against Mullineaux without also developing the facts to support his unsuccessful claims against the remaining defendants.

*Knussman V* at 615 (citing *Goodwin v. Metts*, 973 F.2d 378, 383 (4th Cir. 1992)).

In all, Mr. Knussman initially made claims against the State of Maryland, the Maryland State Police, and four individual MSP employees, in both their official and their individual capacities. He later added a retaliation claim against another individual.[10]  Thus, ignoring the Declaration of Rights claims, and the claims brought by his wife and daughter, Mr. Knussman brought at least 21 monetary claims against seven entities. He prevailed on only one such claim, against one MSP employee, in her individual capacity. He was thus, as the Fourth Circuit concluded, "only marginally successful when [the case is] viewed in its entirety."

---

[8] Mr. Knussman also sought to make a second claim of retaliation after trial had concluded.

A partial list of unsuccessful results includes:

• dismissal of claims of wife and daughter

• dismissal of § 1983 claims against the State, the Maryland State Police and all four individuals in their official capacities

• qualified immunity for all defendants on the FMLA claims

• voluntary dismissal of Maryland Declaration of Rights claim

• dismissal by the Court of first retaliation claim against additional defendant

• dismissal of all damages claims under FMLA

• qualified immunity for three of four individual defendants on § 1983 claim

• voluntary withdrawal of the second retaliation claim

• remittitur by this court of his verdict award of $375,000 against four individual defendants and the State to a judgment against a single defendant in her individual capacity, and then reduced, on remand, to $40,000.

*See generally* Exhibit 1.

Thus, time spent on these unsuccessful claims must be eliminated. However, the records of Knussman's attorneys do not identify and allow calculation of the amount of time spent on these claims. Since the Fourth Circuit has already determined that the unsuccessful claims were unrelated to the successful one, "the burden of showing which hours are recoverable for work on the successful claims will of course rest with the fee applicant, and the court is entitled to expect that the applicant's time records will provide some guidance in identifying the recoverable hours." *Buffington v. Baltimore County, Maryland*, 913 F.2d 113 (4th Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. at 437 (plaintiff's counsel "should maintain billing time records in a manner that will enable a reviewing court to identify claims")).

### 3. Reduction Due To Overall Degree of Success.

Finally, once the time spent on unrelated, unsuccessful claims has been eliminated from consideration, *"some percentage* of the remaining amount" is awarded, depending most critically on the degree of success obtained. 73 Fed. Appx. at 613-614 (emphasis added).

As the Fourth Circuit notes, "Knussman was unable to cite a case in which an award of fees analogous to the one he seeks was approved." *Knussman V* at 616 n.5.

The State defendants admit that arriving at a fair compensation in this situation is difficult. The high end of the range might be calculated by looking to the 7.36 factor used in *City of Riverside*; this has been rejected by the Fourth Circuit, both as an unhelpful analogy and because the Court found that Mr. Knussman's lawsuit had achieved little significant social benefit beyond his own interests. Accordingly, the maximum award should be well below the $294,400 that factor would produce.[11]

Second, if one were to calculate a percentage based on the success of only one of 21 claims (ignoring the family claims and the Declaration of Rights claims, which if considered would reduce the fee even more), 1/21 of $643,500 is $30,642.86. The courts have cautioned against the rigid application of strict mathematical ratios between claims prevailed upon and claims lost. *See, e.g., Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998). Nevertheless, a comparison along these lines may be instructive as a way of conducting the required comparison between the overall degree of success and the amount of the award, *see McDonnell v. Miller Oil Co.,*134 F.3d 638, 641 (4th Cir. 1988), and the Fourth Circuit has

---

[11] Another source for comparison is *Evans v. Jeff D.*, 475 U.S. 717, 735 n.24 (1986); in a discussion of the significant potential liability for attorney' fees in civil rights litigation, the Court listed examples in which the fees exceeded the damages awarded. None of the examples, starting with *City of Riverside*, seem to approach the ratio requested in this case.

made clear that its decision in *Brodziak* did not alter the critical comparative inquiry mandated by *Hensley*.  *See Randall v. Prince George's County*, 302 F.3d 188, 211 (4th Cir. 2002; *id.* at 212 (approving district court's deduction for unrelated claims followed by across-the-board percentage reduction to reflect degree of success).

Alternatively, as the Court has already seen fit to reduce the damages award by 89.3% (from $375,000 to $40,000), the fee award might be reduced similarly, to $68,854.50. In that case, an additional minimal amount might be awarded to account for the equitable relief.

**D.    Costs.**

The State defendants also object to the enormous bill for expenses sought by the plaintiff, because it demonstrates unreasonable billing judgment, because it almost certainly request reimbursement for costs unrelated to issues upon which Knussman prevailed, and because these expenses too should be deemed unreasonable in light of the overall result obtained by Knussman.

> "The teachings of *Hensley* . . . .require recognition of the difficulty of tying each of plaintiffs' expenditures into specific claims for relief and consequently the almost virtual impossibility of precisely allocating each expenditure to an issue upon which plaintiffs have prevailed.  However, on a *rough justice* basis, just as this court has reduced the fee request by approximately 43-1/2% from plaintiffs' original fee request of $630,957.75 to $355,550.00, the court believes that a percentage reduction of 43-1/2% from $30,782.69 to $17,392.00 is appropriate.

*Vaughns v. Board of Educ. of Prince George's County*, 598 F. Supp. 1262, 1290 (D. Md. 1984).  Similarly, defendants believe that reducing the requested costs of $62,253.67 by 89.3%, to $6,661.14 achieves the same rough justice.

## V.    CONCLUSION

For the reasons stated above, the defendants believe that an award of $68,854.50 for fees, $6,661.14 for costs, and an additional small premium for plaintiff's equitable relief is reasonable in light of the meager results obtained in the litigation overall, and in light of the comparison between the fees and costs requested and the overall results.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General for Maryland

/s/
_____
MAUREEN M. DOVE
Deputy Attorney General

WILLIAM BROCKMAN
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, Maryland  21201
410-576-6330

BETTY S. SCONION
Assistant Attorney General
Maryland State Police
1201 Reisterstown Road
Pikesville, MD 21208
(410) 653-4224

Counsel for State Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of April 2004, a copy of the foregoing

Opposition to Fee Petition (On Remand) was served electronically on all counsel.


/s/
_____
William Brockman