

935 F.Supp. 659
133 Lab.Cas. P 33,518, 3 Wage & Hour Cas.2d (BNA) 1345
**(Cite as: 935 F.Supp. 659)**

United States District Court,
D. Maryland.

Howard Kevin KNUSSMAN and Kimberly Ann
Knussman, on behalf of themselves and
their infant daughter, Riley Paige Knussman
v.
STATE OF MARYLAND, Maryland State Police,
Colonel David B. Mitchell, Captain
David Czorapinski, First Sergeant Ronnie P. Creel,
Jill D. Mullineaux.

**Civil No. B-95-1255.**

Aug. 2, 1996.

State police officer and his wife brought, on behalf of themselves and their daughter, action against state, state police and state police officials, claiming state police officer was unlawfully deprived of his right to parental leave following birth of their daughter because of his gender. Defendants filed motion to dismiss. The District Court, Walter E. Black, Jr., Senior District Judge, held that: (1) as apparent matter of first impression, Eleventh Amendment did not bar claims against state for violations of Family and Medical Leave Act (FMLA); (2) § 1983 claims were barred by Eleventh Amendment to extent they sought money damages; (3) liability of individual defendants was not foreclosed under FMLA; (4) wife and daughter did not have standing to assert derivative § 1983 claims based on FMLA; (5) wife and daughter could not maintain derivative § 1983 claims based on alleged violations of equal protection clause and state law; and (6) injunctive relief requested by state police officer was available under FMLA.

Motion granted in part and denied in part.

West Headnotes

**[1]** Federal Courts 265
170Bk265 Most Cited Cases

Eleventh Amendment grants states immunity from suit by private citizens in federal court even where federal jurisdiction exists. U.S.C.A. Const.Amend. 11.

**[2]** Federal Courts 265
170Bk265 Most Cited Cases

**[2]** Federal Courts 266.1
170Bk266.1 Most Cited Cases

Absent waiver of Eleventh Amendment immunity by state, or abrogation of that immunity by Congress, federal court may not entertain citizen's suit against state. U.S.C.A. Const.Amend. 11.

**[3]** Federal Courts 265
170Bk265 Most Cited Cases

Congress may abrogate states' Eleventh Amendment immunity when it acts pursuant to power granted it under Fourteenth Amendment, but it must make its intent to do so unmistakably clear. U.S.C.A. Const.Amend. 11; Amend. 14, § 5.

**[4]** Federal Courts 265
170Bk265 Most Cited Cases

Evidence of congressional intent to abrogate states' Eleventh Amendment immunity must be both unequivocal and textual. U.S.C.A. Const.Amend. 11.

**[5]** Federal Courts 265
170Bk265 Most Cited Cases

**[5]** Federal Courts 270
170Bk270 Most Cited Cases

Congress intended to abrogate states' Eleventh Amendment immunity under Family and Medical Leave Act (FMLA), and therefore states and their political subdivisions are subject to suits by private citizens in federal court for violations of FMLA. U.S.C.A. Const.Amend. 11; Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.

**[6]** Federal Courts 265
170Bk265 Most Cited Cases

**[6]** Federal Courts 269
170Bk269 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Section 1983 claims of state police officer and his wife against state and state police officials in their official capacities were barred by Eleventh Amendment to extent they sought money damages. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

**[7] Federal Courts** 🗝265
170Bk265 Most Cited Cases

Any suit by private parties seeking to impose liability which must be paid from public funds in state treasury is barred by Eleventh Amendment. U.S.C.A. Const.Amend. 11.

**[8] Civil Rights** 🗝1231
78k1231 Most Cited Cases
(Formerly 78k204.1)

Liability of individual defendants in their individual capacities is not foreclosed under Family and Medical Leave Act (FMLA). Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.

**[9] Federal Civil Procedure** 🗝103.2
170Ak103.2 Most Cited Cases

Doctrine of standing is designed to limit class of persons entitled to seek judicial review of their grievances.

**[10] Federal Civil Procedure** 🗝103.2
170Ak103.2 Most Cited Cases

**[10] Federal Civil Procedure** 🗝103.3
170Ak103.3 Most Cited Cases

Standing doctrine requires that plaintiff allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief.

**[11] Federal Civil Procedure** 🗝103.2
170Ak103.2 Most Cited Cases

Interest asserted by plaintiff must be within zone of interests protected by statutory or constitutional provision he or she is seeking to invoke.

**[12] Federal Civil Procedure** 🗝103.2
170Ak103.2 Most Cited Cases

**[12] Federal Civil Procedure** 🗝103.4
170Ak103.4 Most Cited Cases

Standing doctrine prevents plaintiff from raising another person's legal rights and requires that injury alleged must be distinct and palpable.

**[13] Federal Civil Procedure** 🗝103.2
170Ak103.2 Most Cited Cases

When source of plaintiff's claim is statute which creates legal rights, standing question is whether constitutional or statutory provision on which claim rests properly can be understood as granting persons in plaintiff's position right to judicial relief.

**[14] Civil Rights** 🗝1126
78k1126 Most Cited Cases
(Formerly 78k173.1)

**[14] Civil Rights** 🗝1332(5)
78k1332(5) Most Cited Cases
(Formerly 78k201)

Wife and infant daughter of state police officer who was denied parental leave following birth of daughter did not have any enforceable right under Family and Medical Leave Act (FMLA) and, therefore, did not have standing to assert derivative § 1983 claims based on FMLA. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.; 42 U.S.C.A. § 1983.

**[15] Civil Rights** 🗝1027
78k1027 Most Cited Cases
(Formerly 78k108.1)

Section 1983 can provide cause of action for denial of rights created by federal statutes. 42 U.S.C.A. § 1983.

**[16] Civil Rights** 🗝1027
78k1027 Most Cited Cases
(Formerly 78k108.1)

Congressional intent is key to inquiry of whether statute creates enforceable rights within meaning of § 1983. 42 U.S.C.A. § 1983.

**[17] Civil Rights** 🗝1027
78k1027 Most Cited Cases
(Formerly 78k108.1)

To determine character of right created by federal statute, for purposes of ascertaining whether such right is enforceable within meaning of § 1983, courts consider whether provision in question was intended to benefit putative plaintiff; if so, enforceable right exists unless provision in question merely expresses congressional preference for certain kinds of treatment, rather than creating binding obligations on governmental unit, or unless interest asserted by plaintiff is too vague and amorphous such that it is beyond competence of judiciary to enforce. 42

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

U.S.C.A. § 1983.

**[18] Action** ⚷3
13k3 Most Cited Cases

**[18] Constitutional Law** ⚷70.1(11)
92k70.1(11) Most Cited Cases

It is elemental canon of statutory construction that where statute expressly provides particular remedy or remedies, court must be chary of reading others into it.

**[19] Civil Rights** ⚷1118
78k1118 Most Cited Cases
(Formerly 78k173.1, 78k108.1)

Family and Medical Leave Act (FMLA) does not create enforceable rights, within meaning of § 1983, on part of family members of affected employees for injuries suffered as result of employer's failure to comply with FMLA. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.; 42 U.S.C.A. § 1983.

**[20] Civil Rights** ⚷1332(5)
78k1332(5) Most Cited Cases
(Formerly 78k202)

Wife and infant daughter of state police officer who was denied parental leave following birth of daughter could not maintain derivative § 1983 claims against state, state police and state police officials based on alleged violation of equal protection clause of Fourteenth Amendment, where it was merely alleged that defendants had maintained employment policy of intentional gender discrimination with respect to employee leave from work after birth of child; there was no allegation that wife or infant daughter had been discriminated against, but rather all of their injuries resulted indirectly from alleged gender discrimination against state police officer. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[21] Civil Rights** ⚷1126
78k1126 Most Cited Cases
(Formerly 78k108.1)

Any rights conferred upon wife and daughter of state police officer by state law regarding state personnel did not constitute federally secured rights sufficient to give rise to § 1983 action. 42 U.S.C.A. § 1983; Md.Code, State Personnel and Pensions, § 7-508.

**[22] Civil Rights** ⚷1501
78k1501 Most Cited Cases
(Formerly 78k266)

Under Family and Medical Leave Act (FMLA), state police officer who was denied parental leave following birth of his daughter could seek injunction requiring state, state police and state police officials to promulgate and make known to all employees written policy stating that all leave policies applied equally to men and women, to recirculate and post information as to employee's legal rights under FMLA, to refrain from retaliating against state police officer, and to grant state police officer 12 weeks of parental leave and to allow him to substitute earned sick leave for such leave, despite contentions by state, state police and state police officials that they would be irreparably harmed by such injunctive relief; such injunctive relief was available under FMLA, court had jurisdiction under FMLA over state police officer's claims for such injunctive relief, and requested injunctive relief was consistent with mandates of FMLA. Family and Medical Leave Act of 1993, § 107(a)(1)(B), 29 U.S.C.A. § 2617(a)(1)(B).

**\*661** Robin R. Cockey, Salisbury, Maryland, and Deborah A. Jeon, Centreville, Maryland, for Plaintiffs.

Betty Stemley Sconion, Assistant Attorney General, Pikesville, Maryland, and Lucy A. Cardwell, Assistant Attorney General, Baltimore, Maryland, for Defendants.

WALTER E. BLACK, Jr., Senior District Judge.

Presently pending before the Court is a Motion to Dismiss plaintiffs' amended complaint filed on behalf of defendants, State of Maryland, Maryland State Police ("MSP"), Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux.

**\*662** On April 28, 1995, plaintiffs Howard K. Knussman and his wife, Kimberly Ann Knussman, filed this three-count complaint on behalf of themselves and their infant daughter, Riley Knussman, alleging violations of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count I), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and 42 U.S.C. § 1983 (Count II) and the Maryland Equal Rights Amendment (Count III). [FN1] Plaintiffs base these claims on allegations that Howard Knussman, an officer with the Maryland State Police, was unlawfully deprived of his right to parental leave immediately following the birth of his daughter expressly because of his gender. In addition to compensatory damages, costs and attorney's fees, plaintiffs seek declaratory and injunctive relief. On October 16, 1995, defendants filed their motion seeking dismissal of Counts I and II

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

on the grounds that the Eleventh Amendment bars suit against the State of Maryland, the MSP, and the individually named defendants in their official capacities. Defendants further assert that Kimberly and Riley Knussman lack standing to bring suit under § 1983 and the FMLA. Defendants also challenge the availability of injunctive relief to plaintiffs under the FMLA.

> FN1. In their opposition to defendants' motion to dismiss, plaintiffs moved to voluntarily dismiss their claim under Article 46 of the Maryland Declaration of Rights, as set forth in Count III.

In opposition, plaintiffs contend that the Eleventh Amendment does not bar plaintiffs' claims under the FMLA because Congressional intent to abrogate Eleventh Amendment immunity is unmistakably clear from the statute's language. With respect to plaintiffs' § 1983 claims against the individual defendants in their official capacities, plaintiffs contend that because they are seeking only prospective equitable relief, their claims do not constitute suits against the state for purposes of the Eleventh Amendment. As to plaintiffs' FMLA claims, plaintiffs assert that the individual defendants in their individual capacities are proper defendants. Further, plaintiffs assert that Kimberly and Riley Knussman have standing to bring claims under the Constitution and § 1983, but concede that they are not suing under the FMLA. As to defendants' challenge to the availability of injunctive relief, plaintiffs contend that equitable relief is available to all private plaintiffs under the FMLA.

*I. Eleventh Amendment*

First, the Court will address defendants' challenges to plaintiffs' claims based on the Eleventh Amendment. [FN2]

> FN2. Defendants have contended that the MSP is a department, not a "public agency" as defined in the FMLA, 29 U.S.C. § 2611(4)(A)(iii), and plaintiffs do not oppose dismissal of the MSP. Accordingly, defendants' motion to dismiss the amended complaint is granted as to defendant MSP.

[1][2][3][4] The Eleventh Amendment grants states immunity from suit by private citizens in a federal court even where federal jurisdiction exists. *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 505, 33 L.Ed. 842 (1890). "Absent a waiver of that immunity by the state, or an abrogation of that immunity by Congress, a federal court may not entertain a citizen's suit against a state." *Reich v. State of New York,* 3 F.3d 581, 590 (2d Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994). In order to determine whether Congress has abrogated the States' sovereign immunity, the Court must address two issues: "first, whether Congress has unequivocally expressed its intent to abrogate the immunity; and second, whether Congress has acted pursuant to a valid exercise of power." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, ----, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996) (internal quotations and citations omitted).

The Court addresses first the issue of congressional intent. In *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 8, 109 S.Ct. 2273, 2278, 105 L.Ed.2d 1 (1989), *overruled on other grounds by Seminole Tribe of Florida,* 517 U.S. at ----, 116 S.Ct. at 1128, the Supreme Court held that Congress intended that states be liable for the costs of cleaning up hazardous-waste sites pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), ***663** 42 U.S.C. § 9601 *et seq.,* as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. 99-499, 100 Stat. 1613. The Court analyzed CERCLA's language and found that Congress' explicit inclusion of states within the definition of two general terms describing who may be liable under the statute--"persons" and "owners or operators"--"convey a message of unmistakable clarity" that "Congress intended that States be liable along with everyone else for cleanup costs recoverable under CERCLA." 491 U.S. at 8, 109 S.Ct. at 2278.

Prior to *Union Gas Co.,* the Court, in *Employees v. Missouri Dept. of Public Health and Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), held that Congress did not intend to abrogate States' Eleventh Amendment immunity in the Fair Labor Standards Act (FLSA). [FN3] However, in 1974, Congress amended the very section of the FLSA the Court focused on in *Employees* to include public agencies within the scope of employers subject to suit under the statute. [FN4] Under the Act, a "public agency" includes "the government of a State or political subdivision thereof...." 29 U.S.C. § 203(x). In *Reich v. State of New York,* 3 F.3d at 590, relying on the 1974 amendment, the Second Circuit held that Congress intended to subject states and their political subdivisions to suit in federal court for FLSA violations.

FN3. Section 16(b) of the Act provided in relevant part:
Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. 29 U.S.C. § 216(b) (1970).

FN4. Congress amended section 16(b) to read: An action to recover the liability ... may be maintained against any employer (including a public agency) in any Federal or State court.... 29 U.S.C. § 216(b) (Supp.1976).

[5] In the instant case, while no court has expressly addressed the Eleventh Amendment's impact on suits against states under the FMLA, the language in the FMLA is identical to that found in the FLSA. The FMLA entitles any eligible employee to take leave "for medical reasons, the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). An employee who is denied his right to reasonable leave under the Act may maintain an action to recover damages or equitable relief "against any employer (including a public agency) in any Federal or State Court of competent jurisdiction." 29 U.S.C. § 2617(a)(2).

Under the FMLA, the term "employer" "includes any 'public agency,' as defined in section 203(x) of this title." 29 U.S.C. § 2611(4)(A)(iii). Section 203(x) refers to the definitions section of the FLSA which defines "public agency," in pertinent part, as: "the government of a State or political subdivision thereof; any agency of ... a State, or a political subdivision of a State." 29 U.S.C. § 203(x). This explicit inclusion of states and their political subdivisions in the statute's definition of "employer" constitutes "unequivocal and textual" evidence that Congress intended to subject states and their political subdivisions to suits by private citizens in federal court for violations of the FMLA.

Having so determined, the Court would ordinarily address whether Congress has acted pursuant to a valid exercise of power. However, the Court cannot do so here since the issue was raised neither in the briefs nor at oral argument. Accordingly, Count II as to the State of Maryland and the individual defendants in their official capacities for violations of the FMLA cannot be dismissed at this time as barred by the Eleventh Amendment.

[6][7] However, plaintiffs' claims under § 1983 against the State of Maryland and the individual defendants in their official capacities are barred by the Eleventh Amendment to the extent they seek money damages. Any "suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Accordingly, **\*664** Count I as to the State of Maryland and the individual defendants in their official capacities is dismissed insofar as it seeks anything other than prospective injunctive relief.

*II. Individual Capacity Suits Under the FMLA*

The Court will next address Howard Knussman's FMLA claims against the individual defendants in their individual capacities. [FN5] Under the FMLA, the definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). According to plaintiffs, this statutory language authorizes suit against the named individual defendants in their individual capacities because each acts in the interest of the MSP. Defendants contend that by definition it is an official act that subjects individuals to liability; therefore, suits against individuals in their individual capacities are inappropriate.

FN5. Defendants do not challenge plaintiffs' § 1983 claims against the individual defendants in their individual capacities.

The few courts that have addressed this issue have reached conflicting conclusions. In *Freemon v. Foley,* 911 F.Supp. 326, 330-331 (N.D.Ill.1995), the court looked to the FLSA for guidance and concluded that individual liability is permissible under the FMLA "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Id.* (quoting *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987)); *see also, McKiernan v. Smith-Edwards-Dunlap Co.,* 1995 WL 311393 (E.D.Pa.1995). However, in *Frizzell v. Southwest Motor Freight, Inc.,* 906 F.Supp. 441, 449 (E.D.Tenn.1995), the court looked to the line of authority involving individual capacity suits under Title VII, 42 U.S.C. § 2000e *et seq.,* and held that individual liability does not lie under the FMLA.

The Court finds the rationale of the *Freemon* court

persuasive. Liability under the FMLA is essentially the same as liability under the FLSA. Both statutes extend employer status to "any person who acts, directly or indirectly, in the interest of an employer." [FN6] 29 U.S.C. § 2611(4)(A)(ii)(I). In contrast, Title VII defines an employer as "a person engaged in an industry affecting commerce ... and any agent of such person." 42 U.S.C. § 2000e(b). [FN7] In any event, the FMLA's implementing regulations state that the FMLA is intended to parallel the FLSA. The regulations provide:

> FN6. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (FLSA).

> FN7. Liability under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., mirrors Title VII. In *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.1994), the Fourth Circuit held that an employee of the employer who had authority to make discharge decisions on behalf of the employer was not individually liable as the employer's "agent" under the ADEA. The Court reasoned that, because the ADEA only applies to employers who employ twenty or more workers, it would be illogical to apply it to an individual supervisory employee in a company even though it employs twenty or more workers. *Birkbeck,* 30 F.3d at 510. The Court read the provision "as an unremarkable expression of respondeat superior." *Id.*

As under the FLSA, individuals ... "acting in the interest of the employer" are individually liable for any violations of the requirements of the FMLA." 29 C.F.R. § 825.104(d). Thus, the Court will look to FLSA case law for guidance on this matter.

[8] In *Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir.1989), the Fourth Circuit held that an individual was properly sued as an "employer" responsible for complying with the FLSA because "he hired and directed the employees who worked for the enterprise." See also *Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 329 (5th Cir.1993); *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983). Accordingly, liability of individual defendants in their individual capacities is not foreclosed under the FMLA.

   III. Section 1983 *Claims of Kimberly and Riley Knussman*

In the instant motion, defendants also challenge the standing of plaintiffs Kimberly and **665** Riley Knussman to bring claims under § 1983. These plaintiffs are identified as parties in both Counts I and II of the amended complaint. Count I asserts a claim under the Fourteenth Amendment to the Constitution and § 1983, while Count II is grounded in the FMLA and § 1983. In plaintiffs' memorandum in opposition to the motion to dismiss, only the constitutional claims were addressed and no reference whatsoever was made to the FMLA. At the outset of oral argument, in response to an inquiry from the Court, counsel for plaintiffs clarified that Kimberly and Riley Knussman were not intended to be plaintiffs in Count II of the amended complaint. Nevertheless, during his substantive argument, counsel asserted that Kimberly and Riley Knussman were asserting derivative § 1983 claims based on the FMLA under Count II, but made no reference at all to their equal protection claim under Count I. In light of the ambiguous and murky posture of the record in regard to the position of the plaintiffs on this issue, the Court has no alternative but to address both counts, being unable to determine whether the plaintiffs really intended to concede on either one.

[9][10][11][12] The doctrine of standing is designed to limit the class of persons entitled to seek judicial review of their grievances. See *Allen v. Wright,* 468 U.S. 737, 750-51, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975). Standing doctrine requires that a plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758-59, 70 L.Ed.2d 700 (1982)). Also, the interest asserted by a plaintiff must be within the zone of interests protected by the statutory or constitutional provision he is seeking to invoke. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Standing doctrine further prevents a plaintiff from raising another person's legal rights and requires that the injury alleged must be "distinct and palpable." *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324.

[13] When the source of a plaintiff's claim is a statute which creates legal rights, "the standing question ... is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in plaintiff's position a right to judicial relief." *Warth,* 422 U.S. at 500, 95 S.Ct. at 2206.

*A*

[14] In the instant case, if Kimberly and Riley Knussman are asserting derivative § 1983 claims that have their basis in the FMLA under Count II, defendants argue that they cannot pursue derivative § 1983 claims when they have no rights under the FMLA and have alleged injuries which resulted indirectly from defendants' actions, not from violations of their individual statutory rights.

Plaintiffs concede that no rights are conferred upon Kimberly and Riley Knussman under the FMLA but, nevertheless, contend that Kimberly and Riley Knussman can sue under § 1983 for violations of the FMLA because, as members of Howard Knussman's family, they are intended beneficiaries of the statute. Plaintiffs submit that the FMLA's purpose would be thwarted if Kimberly and Riley Knussman are not entitled to bring suit for the injuries they suffered that are fairly traceable to the state's violation of the FMLA.

[15] It is well-established that 42 U.S.C. § 1983 can provide a cause of action for the denial of rights created by federal statutes. [FN8] *Maine* **666** *v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). While the Supreme Court has held repeatedly that the reach of § 1983 should be broadly construed, *Golden State Transit v. City of Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 447-48, 107 L.Ed.2d 420 (1989), the Court has recognized two exceptions to the application of § 1983 to statutory violations: (1) where the statute does not create enforceable rights within the meaning of § 1983; and (2) where Congress has foreclosed § 1983 enforcement in the language of the statute itself. *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448-49; *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625-26, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Smith v. Kirk,* 821 F.2d 980, 982 (4th Cir.1987).

---

FN8. Section 1983 provides:
Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

---

[16][17] The instant case turns on the first exception--whether the FMLA gives Kimberly and Riley Knussman enforceable rights within the meaning of § 1983. "Congressional intent is the 'key to the inquiry' of whether a statute creates enforceable rights." *Smith v. Kirk,* 821 F.2d at 982 (citing *Sea Clammers,* 453 U.S. at 13, 101 S.Ct. at 2622-23). To determine the character of the right created by a federal statute, courts consider whether "the provision in question 'was intend[ed] to benefit' the putative plaintiff." *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448 (citing *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 430, 107 S.Ct. 766, 773-74, 93 L.Ed.2d 781 (1987)). If so, an enforceable right exists unless the provision in question merely expresses a "congressional preference for certain kinds of treatment," rather than creating binding obligations on the governmental unit, *Pennhurst,* 451 U.S. at 19, 101 S.Ct. at 1540-41, or unless the interest asserted by the plaintiff is "too vague and amorphous" such that it is "beyond the competence of the judiciary to enforce." *Wright,* 479 U.S. at 432, 107 S.Ct. at 775.

Examining the language of the FMLA, clearly the statute was enacted to benefit families. According to the statute, Congress enacted the FMLA in response to several demographic trends, including the increased number of single-parent households and two-parent households where the parents work, as well as the lack of employment policies designed to accommodate working parents. 29 U.S.C. § 2601(a)(1) and (3). Congress found that "it is important for the development of children and the family unit that fathers and mothers be able to participate in early childrearing and the care of family members who have serious health conditions." 29 U.S.C. § 2601(a)(2). One of the express purposes of the FMLA is:

> to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity.

29 U.S.C. § 2601(b)(1). Thus, through the FMLA, Congress sought to establish a minimum labor standard for leave to "accommodate the important societal interest in assisting families." S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 6.

A review of the legislative history of the FMLA confirms that Congress enacted the statute to benefit families. In 1993, the Senate Labor and Human Resources Committee stated:

> With men and women alike as wage earners, the crucial unpaid caretaking services traditionally performed by wives--care of young children, ill family members, aging parents--has become

increasingly difficult for families to fulfill. When there is no one to provide such care, individuals can be permanently scarred as basic needs go unfulfilled. Families unable to perform their essential function are seriously undermined and weakened. Finally, when families fail, the community is left to grapple with the tragic consequences of emotionally and physically deprived children and adults.

S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 9. On January 22, 1993, the Subcommittee on Children, Family, Drugs and Alcoholism heard testimony relating personal accounts of the importance of family leave which was corroborated by experts in the fields of child development and pediatrics. *667 One child development specialist [FN9] "stressed the importance of infant-parent bonding during the first few months of a child's life ... and urged that at least one parent have the opportunity to care for a newborn in order to create a strong foundation for the child's later development." S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 11. [FN10]

   FN9. Dr. T. Berry Brazelton, Harvard University and Children's Hospital in Boston.

   FN10. The subcommittee was told that the "early nurturing and attachment enables the parent to instill in the infant a sense of confidence and of being an important person." S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 11.

In enacting the FMLA Congress intended wives and children of employees covered by the FMLA to benefit from the Act. However, Congress' main concern was protecting the integrity and stability of the family unit. Apparently, Congress determined that the best way to achieve its goal of balancing family and work obligations was to give an employee an enforceable right to leave. While Congress sought to assist the family unit, and in particular children, the statute is clear that only an employee has a civil right of action. 29 U.S.C. § 2617(a)(1). There is no mention of a right of action for family members of an aggrieved employee.

As previously discussed, the Findings and Purposes section of the statute is replete with references to the family. Thus if Congress intended for husbands, wives, children and parents to have a right of action, it could have expressly provided the same. An analogous case is *Trafficante v. Metropolitan Life Insurance Company, et al.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), wherein the Supreme Court permitted two tenants, one white and one black, to sue under the Civil Rights Act of 1968, 42 U.S.C. § 3610(a), for the lost benefits of living in an integrated community caused by the landlord's discrimination against non-whites. The Court based its holding on the fact that the statute defined "aggrieved persons" broadly, as "any person who claims to have been injured by a discriminatory housing practice." [FN11] 42 U.S.C. § 3602(i)(1).

   FN11. This decision reversed the lower court which had held that the tenants were not within the class of persons entitled to sue under the Act because they were not personally subjected to discriminatory housing practices.

The Court notes that it is addressing here a unique statute and a novel set of circumstances focusing on the possibility of a § 1983 suit. Previous cases that have addressed the availability of § 1983 actions to redress federal statutory violations by state actors have involved statutes that do not contain a private right of action. Here, however, because the FMLA gives an affected employee a private right of action against his employer, it is clear that while Congress sought to benefit the family unit, it did not intend to give other family members a right of private enforcement as well.

[18] "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Sea Clammers,* 453 U.S. at 14-15, 101 S.Ct. at 2623-24 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246-47, 62 L.Ed.2d 146 (1979)). The fact that such a civil remedy is arguably not inconsistent with a congressional scheme is not enough to justify creating a cause of action that Congress did not intend to provide. *Federal Savings & Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 138 (4th Cir.1987).

[19] Accordingly, the FMLA does not create enforceable rights on the part of family members of affected employees for injuries suffered as a result of an employer's failure to comply with the Act. Under these circumstances, the Court need not address the second exception--whether Congress intended to foreclose section 1983 enforcement of the FMLA. [FN12]

   FN12. Defendants have not challenged

plaintiff Howard Knussman's right to recover under § 1983.

***668** B*

[20][21] If, however, Kimberly and Riley Knussman are asserting derivative § 1983 claims that have their basis in the equal protection clause of the Fourteenth Amendment under Count I, then defendants assert that these plaintiffs have failed to identify any federally secured right which, if affected, would be sufficient to establish a § 1983 action. Count I alleges that "defendants acting under color of state law, have maintained and continue to maintain a state employment policy and practice of intentional gender discrimination with respect to employee leave from work after birth or adoption of a child." However, there is no allegation that Kimberly and Riley Knussman have been discriminated against, and all of their alleged injuries resulted indirectly from the alleged discrimination against Howard K. Knussman. If the federally secured rights in which Count I is grounded are those created by the FMLA, they are encompassed in Count II and have already been addressed above. If instead the rights arise from a recently enacted Maryland law, State Personnel and Pensions Article, Section 7-508 Md.Ann.Code, which figures prominently in the allegations of the amended complaint and is addressed at length by both parties in the briefing of the issues on the pending motion, these would not constitute federally secured rights sufficient to give rise to a § 1983 action.

In light of all of these circumstances, all claims of plaintiff Kimberly Knussman and all claims asserted on behalf of Riley Knussman must be dismissed.

*IV. Injunctive Relief Under the FMLA*

[22] Defendants contend that the broad-based injunctive relief sought by plaintiffs is not available under the FMLA and that this Court lacks jurisdiction to grant the injunctive relief sought. In opposition, plaintiffs maintain that equitable relief is in fact available under the FMLA and that they have standing to seek such relief.

The FMLA provides that an employer who violates the Act shall be liable to any eligible employee "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. 2617(a)(1)(B). According to defendants, the word "including" in this provision should be read as a word of limitation, such that the only forms of equitable relief available are employment, reinstatement, and promotion. In support of their contention, defendants point out that Congress did not use the words, "without limitation," as found in the Fair Labor Standards Act, 29 U.S.C. § 216(b). Further, defendants contend that because the FMLA specifically provides that district courts shall have jurisdiction over suits brought by the Secretary of Labor for injunctive relief, this Court does not have jurisdiction over plaintiffs' claims for injunctive relief. 29 U.S.C. § 2617(d). According to defendants, the injunctive relief sought by plaintiffs will irreparably harm the State of Maryland.

The Court is not persuaded by defendants' arguments and finds that the injunctive relief sought by plaintiffs is available under the FMLA. Plaintiffs request that defendants be required to: (1) promulgate and make known to all employees a written policy stating that all leave policies apply equally to men and women, (2) recirculate and post information as to employee's legal rights under the FMLA, (3) refrain from retaliating against Howard Knussman in any way, and (4) grant Howard Knussman 12 weeks of parental leave and to allow him to substitute earned sick leave for such leave.

A fair reading of § 2617(a)(1)(B) authorizes this Court to award appropriate equitable relief. There is nothing in the statute or its legislative history demonstrating that the word "including" is a word of limitation. In fact, the legislative history confirms the opposite interpretation:

> Relief available ... also includes equitable relief such as employment, reinstatement or promotion of the affected employee, *and any other equitable relief that may be appropriate.* This section is intended to provide employees with the right to pursue *all* varieties of equitable relief, *including preliminary relief.*

S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 38 (emphasis added). Moreover, ***669** the fact that the Secretary of Labor may bring an action for injunction does not preclude an individual employee from seeking the same relief; "a civil action for damages or equitable relief may be brought ... by the Secretary of Labor *or by an employee.*" *Id.* at 37 (emphasis added).

Likewise, the Court is not persuaded that the State of Maryland will be irreparably harmed if the relief sought is granted because the relief plaintiffs have requested is mandated by the FMLA. Specifically, under the FMLA, employers are required to "post and keep posted" summaries of and information on the FMLA. 29 U.S.C. § 2619(a). Failure to do this is punishable by a civil money penalty. 29 U.S.C. § 2619(b). Further, pursuant to § 2615(a), all forms of retaliation in response to an employee asserting his rights under

the FMLA are illegal. [FN13] "This 'opposition' clause is derived from title VII of the Civil Rights Act of 1964 ... and is intended to be construed in the same manner." S.Rep. No. 103-3, 103d Cong., 1st Sess., reprinted in 1993 U.S.Code Cong. & Admin.News 3, 36. Thus, the injunctive relief sought by plaintiffs cannot possibly harm the State of Maryland irreparably because such behavior is required under the FMLA.

> FN13. Section 2615(a) provides:
> (1) **Exercise of rights**
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (2) **Discrimination**
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

With respect to plaintiffs' request for the promulgation of a written gender- neutral leave policy, while the FMLA does not expressly require such a written policy, such a policy is consistent with the Act. According to the "Purposes" section of the Act, the purposes of the act are to be accomplished

> in a manner that, consistent with the Equal Protection Clause of the Fourteenth Amendment, minimizes the potential for employment discrimination on the basis of sex by ensuring generally that leave is available ... on a gender- neutral basis;

and "to promote the goal of equal opportunity for women and men." 29 U.S.C. § 2601(b)(4) and (5). Accordingly, the Court will not prevent plaintiffs from requesting relief in the form of a gender-neutral written policy.

For all of the foregoing reasons, the motion to dismiss will be denied in regard to the prayers for injunctive relief in the amended complaint.

In conclusion, the Court will grant in part and deny in part defendants' motion to dismiss. A formal Order will be entered in conformity with this Opinion.

*ORDER*

In accordance with the Opinion filed today in the above-captioned case, IT IS, this 2nd day of August, 1996, by the United States District Court for the District of Maryland,

ORDERED:

(1) That the Motion to Dismiss (Paper 12) filed on behalf of defendants State of Maryland, Maryland State Police, Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mullineaux BE, and the same hereby IS, GRANTED IN PART and DENIED IN PART as follows:
(a) That the motion is GRANTED as to defendant Maryland State Police;
(b) That the motion is GRANTED as to the claims of plaintiffs Kimberly Ann Knussman and Riley Paige Knussman;
(c) That the motion is GRANTED as to the claims in Count I against defendants State of Maryland, and Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mullineaux in their official capacities as to any relief other than declaratory and injunctive relief;
(d) That the motion is GRANTED WITHOUT PREJUDICE as to Count III; and
(e) That the motion is denied in all other respects;
(2) That the remaining claims as to Count I are the claims of plaintiff Howard *670 Kevin Knussman against defendants State of Maryland and Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mullineaux in their official capacities for declaratory and injunctive relief only and against defendants Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mullineaux in their individual capacities for all relief;
(3) That the remaining claims as to Count II are the claims of plaintiff Howard Kevin Knussman against defendants State of Maryland and Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Mullineaux in their official and individual capacities; and
(4) That the Clerk shall mail a copy of this Order and the accompanying Opinion forthwith to counsel of record.

935 F.Supp. 659, 133 Lab.Cas. P 33,518, 3 Wage & Hour Cas.2d (BNA) 1345

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works