

16 F.Supp.2d 601
4 Wage & Hour Cas.2d (BNA) 1516
**(Cite as: 16 F.Supp.2d 601)**

United States District Court,
D. Maryland.

Howard Kevin KNUSSMAN
v.
STATE OF MARYLAND, Colonel David B.
Mitchell, Captain David Czorapinski, First
Sergeant Ronnie P. Creel, Jill D. Mullineaux, Donald
G. Lewis.

**Civil No. B-95-1255.**

Aug. 13, 1998.

Employee of state police brought action against state and various state police officials, asserting § 1983 claim for violation of equal protection and claiming violations of Family and Medical Leave Act (FMLA). After their motion to dismiss was granted in part, 935 F.Supp. 659, defendants filed motion for summary judgment. Employee filed cross-motion for partial summary judgment. The District Court, Walter E. Black, Jr., Senior District Judge, held that: (1) genuine issues of material fact precluded summary judgment on FMLA claim; (2) § 1983 action was available for violations of FMLA; (3) officials were entitled to qualified immunity with regard to employee's FMLA claim for money damages; (4) genuine issue of material fact precluded summary judgment on employee's equal protection claim; (5) officials were not entitled to qualified immunity with regard to equal protection claim; and (6) transfer of employee was not adverse employment action for purposes of FMLA retaliation claim.

Motion granted in part and denied in part; cross-motion denied.

West Headnotes

**[1] Civil Rights** 🔑1231
78k1231 Most Cited Cases
(Formerly 78k173.1)

Failure of state and state police officials to post at workplace required notices regarding Family and Medical Leave Act (FMLA) estopped them, in state

police employee's FMLA lawsuit, from claiming that employee should have known of his FMLA rights and that employee was required to properly apply for FMLA leave. Family and Medical Leave Act of 1993, § 109(a), 29 U.S.C.A. § 2619(a); 29 C.F.R. § 825.300(b).

**[2] Civil Rights** 🔑1231
78k1231 Most Cited Cases
Protected.
(Formerly 78k173.1)

An employer which fails to adequately post notices regarding Family and Medical Leave Act (FMLA) is prevented from denying FMLA rights to an employee who fails to follow proper application procedures but otherwise meets the substantive requirements of the FMLA. Family and Medical Leave Act of 1993, § 109(a), 29 U.S.C.A. § 2619(a); 29 C.F.R. § 825.300(b).

**[3] Federal Civil Procedure** 🔑2497.1
170Ak2497.1 Most Cited Cases

Genuine issues of material fact as to whether state and state police officials met their burden under Family and Medical Leave Act (FMLA) to provide customized notice of FMLA rights and procedures to employee who requested leave, and whether employee was denied his FMLA rights, precluded summary judgment on employee's FMLA claim. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.; 29 C.F.R. §§ 825.301(c), 825.302(c).

**[4] Civil Rights** 🔑1312
78k1312 Most Cited Cases
(Formerly 78k194)

Family and Medical Leave Act (FMLA) does not foreclose § 1983 suits, and thus § 1983 action is available for violations of FMLA; FMLA's enforcement provisions are not so comprehensive as to imply exclusivity, and FMLA does not contain detailed administrative procedure. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.; 42 U.S.C.A. § 1983.

**[5] Civil Rights** 🔑1501
78k1501 Most Cited Cases

(Formerly 78k214(6))

State police employee's right to leave under Family and Medical Leave Act (FMLA) following birth of his child, and how such right related to his right to take paid leave under state's nurturing care law, was not clearly established at time state police officials denied employee's leave request, and therefore officials were entitled to qualified immunity with regard to employee's FMLA claim for money damages. Family and Medical Leave Act of 1993, § 2 et seq., 29 U.S.C.A. § 2601 et seq.; Md.Code, State Personnel and Pensions, § 7- 508.

**[6] Civil Rights** ⚖1376(2)
78k1376(2) Most Cited Cases
(Formerly 78k214(2))

To determine whether qualified immunity shields a public official, courts should: (1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and if so, (3) determine whether a reasonable person in the official's position would have known that his or her actions violated that right.

**[7] Civil Rights** ⚖1376(1)
78k1376(1) Most Cited Cases
(Formerly 78k214(1))

Defense of qualified immunity for public officials applies to both constitutional and statutory rights.

**[8] Officers and Public Employees** ⚖114
283k114 Most Cited Cases

Qualified immunity of public officials is not a defense to declaratory or injunctive relief.

**[9] Federal Civil Procedure** ⚖2497.1
170Ak2497.1 Most Cited Cases

Genuine issue of material fact as to whether state police officials acted with discriminatory intent or purpose when, in denying male employee's request under state's nurturing care leave statute to use accrued sick leave following birth of his child, it applied gender-based presumption that mothers, rather than fathers, were "primary care givers" entitled to take greater amount of leave under the statute precluded summary judgment on employee's § 1983 claim for violation of equal protection. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983; Md.Code, State Personnel and Pensions, § 7-508.

**[10] Constitutional Law** ⚖224(1)
92k224(1) Most Cited Cases

Where a statute is gender-neutral on its face, a plaintiff must show discriminatory purpose or intent in order to prevail on an equal protection claim. U.S.C.A. Const.Amend. 14.

**[11] Civil Rights** ⚖1376(10)
78k1376(10) Most Cited Cases
(Formerly 78k214(6))

State police officials who denied employee's request under state statute to use accrued sick leave following birth of his child were not entitled to qualified immunity with regard to employee's § 1983 claim for violation of equal protection, which was based on officials' use of gender-based presumption that mothers were "primary care givers" entitled to greater amount of leave under the statute, though statute was recently amended, and no guidelines had yet been issued regarding amended statute; law against gender discrimination in employment was clearly established. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983; Md.Code, State Personnel and Pensions, § 7-508.

**[12] Master and Servant** ⚖30(6.10)
255k30(6.10) Most Cited Cases

Section of Family and Medical Leave Act (FMLA) making it unlawful for employer to interfere with employee's exercise of FMLA rights and to discriminate against employee who opposes any violation of FMLA provides cause of action for retaliation. Family and Medical Leave Act of 1993, § 105(a), 29 U.S.C.A. § 2615(a).

**[13] Civil Rights** ⚖1541
78k1541 Most Cited Cases

**[13] Master and Servant** ⚖40(1)
255k40(1) Most Cited Cases

Burden-shifting analysis applicable to Title VII retaliation claims is appropriate for retaliation claims under Family and Medical Leave Act (FMLA). Family and Medical Leave Act of 1993, § 105(a), 29 U.S.C.A. § 2615(a); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[14] States** ⚖53
360k53 Most Cited Cases

Geographic transfer of state police employee without any change in job responsibilities, pay or benefits was not adverse employment action, for purposes of retaliation claim under Family and Medical Leave Act (FMLA). Family and Medical Leave Act of 1993, § 105(a), 29 U.S.C.A. § 2615(a).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**[15] Master and Servant** ⚖️**30(6.10)**
255k30(6.10) Most Cited Cases

To establish a prima facie case of retaliation under Family and Medical Leave Act (FMLA), the plaintiff must show: (1) the employee engaged in protected activity, (2) the employer took adverse employment action against the employee, and (3) a causal connection existed between the protected activity and the adverse action.  Family and Medical Leave Act of 1993, § 105(a), 29 U.S.C.A. § 2615(a).

**[16] Federal Civil Procedure** ⚖️**2497.1**
170Ak2497.1 Most Cited Cases

State police employee sufficiently established specific involvement of certain state police officials in the allegedly discriminatory decision to deny his request under state statute to use accrued sick leave following birth of his child so as to survive officials' summary judgment motion on his § 1983 claim for violation of equal protection.  U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[17] Officers and Public Employees** ⚖️**114**
283k114 Most Cited Cases

Qualified immunity is only a viable defense for government officials who are sued in their individual capacities.
 **\*603** Robin R. Cockey, Salisbury, MD, Deborah A. Jeon, Centreville, MD, Sara L. Mandelbaum, New York City, for Plaintiff.

 Betty Stemley Sconion, Assistant Attorney General, of Pikesville, MD, for Defendants.

**\*604** *OPINION*

WALTER E. BLACK, Senior District Judge.

 Presently pending before the Court are two motions: (1) Defendants' Motion for Summary Judgment filed on behalf of the State of Maryland, Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, Jill D. Mullineaux, and Captain Donald G. Lewis;  and (2) Plaintiff's Cross Motion for Partial Summary Judgment, filed on behalf of Trooper First Class ("TFC") H. Kevin Knussman.  On April 28, 1995, Knussman and his wife, Kimberly Ann Knussman, filed a three-count complaint on behalf of themselves and their infant daughter, Riley Paige Knussman, against defendants State of Maryland, Maryland State Police ("MSP"), Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant

Ronnie P. Creel, and Jill D. Mullineaux. Plaintiffs alleged violations of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count I), the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* and 42 U.S.C. § 1983 (Count II), and the Maryland Equal Rights Amendment (Count III).  Plaintiffs voluntarily dismissed Count III on November 8, 1995.  On August 2, 1996, the Court granted in part and denied in part a motion to dismiss filed on behalf of defendants.  The Court found that Kimberly Ann Knussman and Riley Knussman were not proper plaintiffs to the lawsuit and the Court dismissed MSP because it is not a "public agency" as defined in § 2611(4)(A)(iii) of the FMLA. *Knussman v. State of Maryland,* 935 F.Supp.659, 664-68 (D.Md.1996).  The Court further ordered that the claims for money damages in Count I against the State and the individual defendants in their official capacities be dismissed, leaving the State and the individuals in their official capacities subject to declaratory or injunctive relief and the individuals in their individual capacities subject to both money damages and declaratory or injunctive relief.  *Id.* at 669-70.  As to Count II, the Court ordered that the State and individual defendants in their official and individual capacities still be subject to money damages and declaratory or injunctive relief.  *Id.* at 670.  On January 31, 1997, the Court granted plaintiff's motion to add to his complaint (1) a claim of retaliation based on an involuntary transfer, and (2) a new defendant--Captain Donald G. Lewis--who ordered the allegedly retaliatory transfer.

 The present motion for summary judgment was filed on behalf of defendants on April 2, 1997, on the grounds that (1) plaintiff has not stated an equal protection violation under the Fourteenth Amendment because the leave policies at the MSP are gender-neutral and were not applied in an intentionally discriminatory manner, (2) plaintiff did not suffer any injuries as a result of any FMLA violation, (3) plaintiff was not retaliated against by defendants because the job transfer was not related to plaintiff's pursuit of his grievance or litigation, and (4) defendants are entitled to qualified immunity because they acted reasonably in applying the federal and state leave acts to plaintiff.

 Plaintiff responded by filing a cross motion for partial summary judgment.  Plaintiff based his motion on the grounds that (1) defendants' denial of plaintiff's parental leave request violated the FMLA;  (2) defendants discriminated against plaintiff by refusing to classify him as a "primary care giver" to his newborn child because he is a male, thereby depriving him of twenty (20) extra days of paid leave available to qualified individuals;  and (3) defendants are not entitled to qualified immunity under the FMLA because

government supervisors should not be treated differently from supervisors at private companies under the FMLA and defendants' violations of § 1983 involved clearly established civil rights. Furthermore, plaintiff contends that summary judgment on the retaliation claim is not appropriate given the factual and inferential disputes relating to the issue of motive behind plaintiff's location transfer.

I.

The FMLA became effective on August 5, 1993, as a measure to guarantee employees up to 12 weeks of unpaid leave within a 12-month period for special circumstances including care for a newborn child. 29 U.S.C. §§ 2601 et seq. The law provides for substitution of paid leave available to an employee **605 from the employer for any part of the 12-week period. Id. § 2612(d)(2)(A) In doing so, the FMLA expressly provides that "[n]othing in this Act ... shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act...." Id. § 2651(b). In sum, the FMLA adds to any employer's leave entitlement additional weeks of unpaid leave necessary to attain 12 weeks of leave per 12-month period. In order to apply paid leave to his benefit, an employee must have accrued independently paid vacation, personal, or family leave from the employer.

The State of Maryland's amended nurturing care leave provision, effective October 1, 1994, provides for an employee's use of accrued sick leave following the birth or adoption of a child. Md.Code Ann., State Pers. & Pens. § 7- 508 (1994). [FN1] The amount of leave depends on whether one is the "primary care giver" or the "secondary care giver." Id. Under the law, a primary care giver is permitted to use up to 30 days of accrued sick leave while a secondary care giver is only permitted to use up to 10 days to care for the child. Id. As this state law relates to the FMLA, an employee may apply the sick leave for which he or she qualifies under § 7-508 to the 12 weeks unpaid leave allowed under the FMLA. See 29 U.S.C. § 2612(d)(2)(A).

FN1. The nurturing care leave provision has since been amended in 1996 to add a subsection related to situations where two employees are responsible for care of the child and a subsection related to the FMLA. The nurturing care provision is now found at § 9-505.

II.

The facts relevant to the pending summary judgment motions are as follows. In the Spring of 1994, plaintiff TFC Knussman, a flight paramedic with MSP's Aviation Division, and his wife were expecting their first child. On or about October 22, 1994, Knussman submitted a written request to his immediate supervisor at the Salisbury Aviation Section, First Sergeant A.L. Fitzgerald, for 4 to 8 weeks of extended family sick leave for the birth of his child. Fitzgerald told Knussman he would forward the request to Aviation headquarters for review. Fitzgerald discussed Knussman's request with First Sergeant Ronnie P. Creel, MSP's Director of Flight Operations, and testified in his deposition that he intended to forward the written request to Creel. Creel, however, denies having received the written request. Upon hearing of Knussman's lengthy leave request, Creel informed Knussman that only two weeks leave would be permitted. Plaintiff also claims that Creel mentioned and then dismissed possible use of the FMLA, asserting that only unpaid leave was available under it, leaving Knussman believing that the FMLA would not help him get more paid leave. It is unclear from the conflicting statements of the facts whether Knussman clearly conveyed that he was interested only in paid leave or if he was interested in a combination of paid and unpaid leave to cover an extended time period to care for his child. Defendants state that Knussman made it clear that he wanted *paid* sick leave, not unpaid, which they understood to mean he was not concerned with the FMLA.

From as early as 1989, Knussman had sought to be transferred from the Salisbury Aviation Section to the Centreville Aviation Section to be closer to his home. On November 8, 1994, Knussman was granted his transfer request, at which time his wife was more than seven months pregnant.

In late November, Jill D. Mullineaux of the MSP's Personnel Management Division sent a teletype message to all MSP employees regarding a revision to § 7-508 of the Maryland Code. Knussman called Mullineaux to obtain more information about the new law and its application to his circumstances. Mullineaux consulted the office of the Director of Legislative Affairs and Policy Services in the Department of Personnel ("DOP") for further explanation about the amended law. Esther Danner, an assistant to Director John Irick of that office, told Mullineaux that the birth mother is presumed to be the primary care giver under the law and that anyone other than the birth mother would have to prove "primary care giver" status, which information she passed on to Knussman. She claims she suggested to Knussman to consider **606 personal

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

or unpaid leave, but that he would only consider paid sick leave. At the time he had more than 1200 hours of accrued paid sick leave and more than 250 hours of annual and personal leave from which to draw. Knussman further alleges that in this conversation, Mullineaux used sexist remarks to convey her message; however, Mullineaux denies that her remarks could be characterized as sexist.

Knussman's wife gave birth to their daughter on December 9, 1994, after enduring severe medical problems leading up to the delivery. Knussman took the 10 days of paid leave authorized for him as "secondary care giver" under § 7-508. He alleges that he was in fact the "primary care giver" because Mrs. Knussman continued to suffer from medical complications and was unable to care for the infant. On December 20, 1994, Knussman sought to have his status changed to "primary care giver" so he could continue to stay home with the baby for an additional 20 days. Captain David Czorapinski, the newly assigned Assistant Commander of the Aviation Division, told Knussman's supervisor that the "primary care giver" was presumed to be the mother. Knussman then submitted a letter from his wife's physician, Dr. Donald B. Spangler, in an effort to obtain more sick leave. The letter indicated that Mrs. Knussman's delivery followed a complicated pregnancy and that she "continues slowly recovering and has had continuing hypertension." Mullineaux found the letter insufficient to show a need for more nurturing leave and denied Knussman's request. As ordered, Knussman returned to work on December 29, 1994.

Shortly after returning to work, Knussman filed an internal grievance, challenging what he perceived as a "gender-based" leave denial and the primary care giver presumption. His grievance was denied at all steps of the administrative process.

Defendants state the MSP officials reached their conclusions based on their reasonable interpretation of § 7-508 because the DOP had not published any regulations or guidelines on the provision. Defendants also state that at the end of the second step of the grievance process, Czorapinski discussed the state leave provision with Irick who informed him that there is no gender presumption involved in determining "primary care giver" status. Czorapinski subsequently offered Knussman a hearing on the limited issue of whether he was the primary care giver and Knussman agreed to so proceed. Knussman submitted a letter from another of his wife's physicians, Dr. Harold T. Elberfeld. This letter stated that due to the complicated pregnancy, Mrs. Knussman would not be able to return to work until January 23, 1995. Czorapinski found that Knussman

did not present enough evidence to show he was the primary care giver to qualify for the leave request. The Superintendent, Colonel David B. Mitchell, affirmed this determination.

The parties present conflicting facts surrounding Knussman's exposure to the FMLA. Plaintiff states that he did not have the opportunity to apply for FMLA leave because MSP's actions prevented him from doing so. He claims that the MSP did not post the FMLA notice and did not inform him of his rights to FMLA leave when he made his initial leave request. Consequently, he did not know that he could apply paid leave to FMLA leave and was misled by MSP personnel. Defendants on the other hand strongly deny having misled Knussman into thinking the FMLA would not apply to his request and rather claim that they provided all personnel with adequate notice and information regarding their FMLA rights. They further claim that Knussman made no efforts to contact the DOP or Mullineaux about this option under the FMLA. Regardless, the fact remains that Knussman did not actually apply for FMLA leave pursuant to FMLA guidelines, and did not receive any FMLA benefit.

While this litigation was ongoing in April 1996, Knussman learned his wife was expecting their second child due in November so he requested 12 weeks leave under the FMLA and primary care giver status under § 7-508. [FN2] Both requests were granted by Captain **607 Frank D. Moran, Jr., Commander of MSP's Personnel Management Division.

> FN2. In August 1995, Colonel Mitchell issued General Order No. 01-9524 detailing all leave issues under Maryland state law and FMLA benefits.

On August 2, 1996, this Court ruled on defendants' motion to dismiss holding that the Eleventh Amendment did not bar the action. *Knussman v. State of Maryland,* 935 F.Supp. 659, 663 (D.Md.1996). Apparently there was some media coverage of the ruling and Knussman claims that Acting Aviation Commander Donald G. Lewis, at a training session, criticized troopers who publicly challenge agency policies as unethical. Subsequently, on October 1, 1996, Knussman was informed by his supervisor that he was being transferred back to the Salisbury Aviation Section. TFC J.C. Lewis who had been involuntarily transferred to Salisbury requested to be moved to the Centreville Aviation Section so the two troopers were being switched. Knussman preferred Centreville to Salisbury because the former is more convenient to his

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

home in Easton, Maryland, and thereby closer to his family. Knussman notes in his statement of the facts that TFC Lewis had recently taken only six (6) days of sick leave after the birth of his child and did not request primary care giver status. Consequently, plaintiff grieved the transfer as retaliation for pursuing his leave rights through an internal administrative appeal and amended the complaint in this litigation to add it as a substantive claim. On October 24, 1996, Major Lewis informed Knussman that he had agreed to temporarily suspend the transfer. Although Knussman currently remains at Centreville, this Court ruled that the retaliation claim is not moot because the suspension is only temporary and the transfer is still possible.

III.

A. *FMLA Claim*

Plaintiff moves for summary judgment claiming that defendants violated Knussman's FMLA rights by denying his leave request which defendants concede stated a purpose covered by the FMLA. Plaintiff contends that he was unable to formally request FMLA leave because he was both uninformed and misinformed about his rights as a result of defendants failing to post FMLA notices at the aviation stations, failing to provide customized notice to plaintiff in response to his leave request, and actively misleading plaintiff about his FMLA rights. Plaintiff further moves for summary judgment on the ground that in failing to meet the notice requirements under the FMLA, defendants are estopped from denying plaintiff's leave request for technical application inadequacies.

Defendants claim that there has been no FMLA violation by the MSP or its personnel because (1) there is no private cause of action for failure to post the FMLA notice, (2) the MSP notified all personnel about the FMLA shortly after it became effective by issuing special notices, and (3) Knussman expressed that he specifically wanted *paid* leave, thereby implying that unpaid FMLA would not be a satisfactory option. These arguments also form the basis of defendants' motion for summary judgment on this count, namely, that there was no FMLA violation because plaintiff did not request FMLA leave, nor was he denied FMLA leave. Additionally, defendants argue that summary judgment is warranted for the individual defendants because they are entitled to qualified immunity.

Defendants argue that they met the posting requirement in § 2619(a), but even if they fell short in their efforts, this cannot subject them to liability because there is no private cause of action for such a violation, only a civil money penalty of $100. Defendants also claim that the MSP notified all personnel about the FMLA shortly

after it became effective and that plaintiff in fact knew of the act but made no attempts to submit an FMLA leave request. Defendants point to Special Order No. 01-9328 issued in October 1993 which detailed the benefits and procedures for obtaining leave under the FMLA. Plaintiff signed MSP Form 42 acknowledging receipt and full knowledge of the contents of the Special Order. As to the individual notice requirements, defendants state that plaintiff's leave requests were submitted under state law only and he made no mention of seeking FMLA leave; therefore, defendants "did not knowingly deny Plaintiff FMLA leave." Finally, defendants state that plaintiff received another copy of Special Order No. 01-9328 in late December 1994 after **608 he returned from the 10 days of accrued sick leave he took as secondary care giver. Defendants therefore contend that plaintiff's lack of FMLA leave was caused by a failure to so request, not any deliberate denial by the MSP, and that the MSP adequately informed its employees of their FMLA rights.

In response, plaintiff argues that defendants' actions did not satisfy the FMLA's stiff notice burdens imposed on employers. Plaintiff cites several sections of the administrative regulations which require an employer to supply information about FMLA. Furthermore, plaintiff points out that defendants admitted in paragraph 15 of their answer to the supplemental complaint that they failed to post an FMLA notice at Salisbury.

The Court reads the FMLA and the accompanying administrative regulations to impose a heavy notice burden on employers. One of the purposes of the FMLA is to prevent gender discrimination by employers by providing leave on a gender-neutral basis for employees for compelling family reasons such as the birth of a child. 42 U.S.C. § 2601(b)(4). The regulations put the responsibility on the employer to ensure that employees apply for FMLA leave whenever appropriate even without the employee's initiative. 29 C.F.R. §§ 825.301(c) & 825.302(c).

In essence the FMLA and accompanying regulations require employers to issue two forms of notice to employees—a generalized notice posted at the employer's premises and a customized notice of FMLA rights and procedures issued to an employee who indicates a need to take leave for an FMLA-qualifying purpose. 29 U.S.C. § 2619(a) (Supp.1997) (posting requirement); 29 C.F.R. §§ 825.301(c) & 825.302(c) (customized notice requirements). With respect to the more generalized notice, defendants aver in their response memorandum that there are disputed issues of fact. Moreover, the lack of posting at Salisbury at the time of Knussman's leave request in October 1994, has

been admitted in paragraph 15 of defendants' answer to the supplemental complaint: "Defendants deny the allegations contained in paragraph 15 of the supplemental complaint, except admit that ... FMLA regulations were not posted at the Salisbury Section...." Though the facts are disputed as to whether defendants met the posting requirement, plaintiff states he is not asserting a private cause of action for the lack of posting. [FN3]

> FN3. Several courts have determined that the statutory scheme of the FMLA suggests Congress did not intend to grant a private cause of action for a § 2619(a) failure to post. *see, e.g., Blumenthal v. Murray,* 946 F.Supp. 623, 627 (N.D.Ill.1996) ("[A] private plaintiff who qualifies as an 'eligible employee' has no basis to seek relief by asserting a violation of § 2619's notice requirement." (citations omitted)); *Jessie v. Carter Health Care Center, Inc.,* 926 F.Supp. 613, 617 (E.D.Ky.1996) ("[A] private right of action does not exist for a violation of the notice requirement."); *Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 828 (N.D.Ind.1995) ("[T]he [FMLA] only provides for a civil money penalty for an employer's failure to comply with the posting requirement.").

 [1][2] The regulations provide a limited procedural estoppel that applies to an employer who fails to adequately post FMLA notices. *See* 29 C.F.R. § 825.300(b). Such an employer is prevented from denying FMLA rights to an employee who fails to follow proper application procedures but otherwise meets the substantive requirements of the FMLA. *Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 828 (N.D.Ind.1995). Defendants thus cannot claim that Knussman should have known of his FMLA rights and was required to properly apply for FMLA leave as a result of their admitted failure to post the required FMLA notice at Salisbury.

 [3] Defendants are also charged with meeting the customized notice requirements. The customized notice requirements are found in the administrative regulations. *See* 29 C.F.R. §§ 825.301(c) & 825.302(c). When viewing all the evidence presented in the record, it is unclear whether defendants' conduct meets these requirements and whether plaintiff was denied his FMLA rights. Although the MSP may have issued Special Orders detailing the FMLA to its employees and requiring them to acknowledge receipt and knowledge of these notices, the regulations require

more individualized counseling upon an employee's request for leave for an FMLA-qualifying purpose. § 825.302(c). ("The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is **\*609** needed for an expected birth or adoption, for example. The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought...."). It appears that the Special Orders alone may be insufficient to meet the FMLA regulations. Consequently, whether defendants met their customized notice burdens under the FMLA and whether plaintiff was denied his FMLA rights are disputed issues of fact appropriate for resolution by the jury.

 [4] The Court next addresses that plaintiff brings his FMLA claim under both the FMLA's own enforcement provision, § 2617(a), and under § 1983. Plaintiff asserts that the Congress did not foreclose § 1983 damages actions under the FMLA. Plaintiff points out that there is no explicit foreclosure in the FMLA itself.

 Plaintiff further asserts that there is no implied foreclosure because the remedial scheme of the FMLA is not so tailored and complicated to preclude additional private remedies.

 The Court notes that there has been no case law to date on the foreclosure issue as it relates to the FMLA. The Supreme Court has crafted a stringent rule for finding foreclosure of actions under § 1983. In its most recent decision in this regard, *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) the Supreme Court outlined the framework for analyzing whether § 1983 enforcement is available for statutory rights. *Id.* at 1359. The Court presented a preliminary three-step approach to determine if a statute confers a federal "right" giving rise to § 1983 redress:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right asserted protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States.

> *Id.* (citations omitted).

 Defendants have not disputed that the FMLA confers a federal right within the protection of § 1983 and it is clear that indeed the FMLA passes this three- part test. The second inquiry is whether Congress intended to foreclose § 1983 enforcement either expressly or impliedly in the statute. *Id.* at 1360. Looking at the FMLA itself, there is no express foreclosure by Congress. As to an implied foreclosure, the critical feature is the remedial scheme of the FMLA. The

*Blessing* Court stated that in order to establish an implied foreclosure one "must make the *difficult showing* that allowing § 1983 actions to go forward 'would be inconsistent with Congress' carefully tailored scheme." *Id. at 1362* (citation omitted) (emphasis added).

The Supreme Court has only found two statutory schemes sufficiently comprehensive to foreclose § 1983 actions. *Id. at 1362-63* (citing *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) and *Middlesex County Sewerage Auth. v. National Sea Clammers Assn.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)) (describing how the Federal Pollution Control Act and the Education of the Handicapped Act are the only statutes thus far found to have foreclosed § 1983 actions). Furthermore, the Supreme Court has found that several federal statutes do not foreclose § 1983 suits. *Id. at 1363* (finding Title IV-D of the Social Security Act does not foreclose § 1983 actions); *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 521, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (finding that despite oversight provisions in the Medicaid Act, § 1983 suits are still available); *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 109, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (finding that the NLRA does not foreclose § 1983 suits); *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (same); *Wright v. City of Roanoke Redev. & Housing Auth.,* 479 U.S. 418, 425, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (finding the Housing Act does not foreclose § 1983 actions).

The Courts of Appeals have also addressed the issue of § 1983 foreclosure. The Fourth Circuit in *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994), held that, in enacting the Civil Rights Act of 1991, Congress did not render Title VII and § 1981 the exclusive remedies for public sector employment discrimination, thereby foreclosing § 1983 **\*610** claims. *See also Johnson v. City of Fort Lauderdale,* 114 F.3d 1089, 1090-91 (11th Cir.1997), *but cf. Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1531 (11th Cir.1997) (holding that a § 1983 action is not available for violations of the Americans with Disabilities Act and the Rehabilitation Act because both acts set forth "detailed administrative avenues of redress" that would make suits under § 1983 "duplicative at best"). The rationale behind the majority of decisions finding a § 1983 action available is that the additional § 1983 avenue does not offend or conflict with any remedial scheme provided in the various federal statutes. Similarly, the FMLA includes enforcement provisions, but the Court finds they are not so comprehensive as to imply exclusivity. Moreover, the FMLA does not contain a detailed administrative procedure for pursuing violations so a § 1983 action

would not serve to circumvent required administrative grievance steps. The Court therefore concludes that Congress did not intend to foreclose FMLA enforcement by actions under § 1983, and plaintiff may assert his claims for consequential damages resulting from violations of the FMLA under § 1983. [FN4]

> FN4. The Western District of Virginia recently concluded the opposite, that the FMLA does foreclose § 1983 suits. *see Jolliffe v. Mitchell,* 971 F.Supp. 1039, 1044 (W.D.Va.1997).

[5] Defendants claim qualified immunity as to all of plaintiff's claims. The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *id. at 818, 102 S.Ct. 2727* (citations omitted). The *Harlow* Court modified the qualified immunity standard discarding the burdensome subjective analysis for a more objective test. *id. at 815-16, 102 S.Ct. 2727. See Smith v. Reddy,* 101 F.3d 351, 355 (4th Cir.1996) (applying the objective test set forth in *Harlow*). In doing so, the *Harlow* Court sought to make resolution of qualified immunity issues easier at the summary judgment stage. *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727. "On summary judgment," trial judges are now permitted to "determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *id. at 818, 102 S.Ct. 2727.*

[6][7][8] Adhering to the *Harlow* standard, the Fourth Circuit formulated a three-step approach. *Smith,* 101 F.3d at 355. To determine whether qualified immunity shields a public official courts should: "(1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and if so, (3) determine whether a reasonable person in the officer's position would have known that his or her actions violated that right." *id.* (citing *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992)). The critical issue in this case is whether plaintiff's FMLA and equal protection rights are "clearly established" rights of which defendants should have known that their actions so violated. As applied to the FMLA claim, the Court finds qualified immunity available to all of the individual defendants. Although the statute and its regulations seem clear on their face, this claim really relates to the relationship of the FMLA

leave to paid leave under state law. The record is replete with mention of plaintiff's desire for paid leave only and defendants' resulting conclusion that he did not want FMLA leave. It is apparent that the relationship between paid leave and the FMLA is confusing. At the motions hearing, even counsel could not agree on how paid leave under state law would be applied to FMLA leave. Under these circumstances, the law can hardly be deemed "clearly established" and, accordingly, qualified immunity is available to all of the individual defendants. [FN5] Moreover, contrary to plaintiff's assertion **611** that qualified immunity "pertains only to constitutional claims," the United States Supreme Court has held that the defense applies to both constitutional and statutory rights. *see Behrens v. Pelletier,* 516 U.S. 299, 116 S.Ct. 834, 838, 133 L.Ed.2d 773 (1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

> FN5. As plaintiff notes in his cross motion for summary judgment, however, qualified immunity as established in *Harlow* is not a defense to declaratory or injunctive relief. 457 U.S. at 818, 102 S.Ct. 2727 (holding that qualified immunity shields government officers from "liability for civil damages"); *see also Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.") (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Therefore, to the extent plaintiff is suing the individual defendants in their individual capacities for declaratory or injunctive relief under the FMLA, such claims survive this motion for summary judgment.

For all the foregoing reasons, the Court will grant defendants' motion for summary judgment as to all individual defendants in their individual capacities on the FMLA claim for money damages and deny the motion in regard to the FMLA claim for money damages as to the State and the individual defendants in their official capacities as well as all claims for declaratory and injunctive relief under the FMLA against all defendants. The Court will also deny plaintiff's motion for partial summary judgment on the FMLA claim.

B. *Fourteenth Amendment Equal Protection Claim*

[9] Plaintiff brings a Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 alleging gender discrimination in the application of Md.Code Ann., State Pers. & Pens. § 7-508. Defendants argue that plaintiff has failed to establish an equal protection claim because the state leave law is gender-neutral on its face and there is no evidence that defendants applied the law unequally on the basis of gender. Defendants contend that plaintiff has not shown any evidence of discriminatory purpose or intent on behalf of the MSP or its employees in the application of § 7-508. They assert there are no unwritten policies that discriminate against males regarding application of § 7-508. They admit that Mullineaux's statement that mothers are presumed to be the primary care givers was incorrect but did not amount to intentional or purposeful discrimination. In support of their assertion that they did not intentionally discriminate based on gender, defendants provide evidence that 24 males requested and were granted leave as primary care givers from October 1, 1994 to April 1997.

In response, plaintiff argues that the MSP application of 7-508 was discriminatory because it was based on an explicit gender-based presumption at the time of Knussman's initial leave request, which defendants acknowledge. Despite the MSP's later abandonment of the presumption, it never reversed or reconsidered plaintiff's request for primary care giver status. Plaintiff also provides other examples where the gender-based presumption was used at the MSP including at an Aviation Command staff meeting on January 4, 1995, where Commander Johnny L. Hughes announced: "A recent ruling from DOP states that the mother is to be considered as primary care provider and the father secondary...." Finally, plaintiff presents evidence of another male trooper, TFC Stephen Elliott, who was initially denied primary care giver status. Although this decision was subsequently reversed, plaintiff claims the MSP did so for strategic reasons with respect to the present litigation.

[10] Where a statute is gender-neutral on its face, a plaintiff must show discriminatory purpose or intent in order to prevail on an equal protection claim. *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The Fourth Circuit, in *Sylvia Development Corp. v. Calvert County, Md.,* 48 F.3d 810 (4th Cir.1995) declared that "[a] violation is established only if the plaintiff can prove that the state *intended* to discriminate." *id. at 819* (emphasis in original) (citing *Snowden,* 321 U.S. at 8, 64 S.Ct. 397) (It "is not a denial of equal protection unless there is shown to be present in it *an element of intentional or purposeful discrimination.*" (emphasis added)). Finally, the *sylvia* court listed factors which are probative of a

discriminatory intent:

(1) evidence of a 'consistent pattern' of actions by the decision making body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account **612** any history of discrimination by the decision making body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decision makers on the record or in minutes of their meetings.

*id.* (citations omitted).

defendants assert that no woman even applied for paid state leave to nurture a newborn baby through the end of 1994 when Knussman had requested nurturing leave and, accordingly, there is no evidence that Knussman was treated differently from females. [FN6] Nevertheless, the facts indicate that defendants applied a presumption against plaintiff which would constitute an equal protection violation. Whether this stems from discriminatory intent or purpose under *sylvia* involves disputed issues of fact to be resolved at trial.

FN6. Presumably, women were satisfied with their right to maternity leave after the birth of a child and did not find a need for nurturing leave.

[11] defendants also seek qualified immunity with respect to this claim. Defendants argue that at issue are plaintiff's leave rights under the state leave law which were not "clearly established" at the time Knussman requested leave. Section 7-508 had recently been amended, effective October 1, 1994, when plaintiff had initially inquired about leave under this provision. Moreover, the DOP had not issued any guidelines or regulations related to the application of the amended provision. Therefore, defendants contend they acted reasonably in their interpretation of the law and in their conclusion that Knussman was not the primary care giver to qualify for the 30-day accrued sick leave provision of § 7-508. Plaintiff responds with the contention that the law against gender discrimination in employment is "clearly established," and, therefore, defendants are not entitled to qualified immunity with respect to the Fourteenth Amendment claim brought under 42 U.S.C. § 1983.

Although the Maryland leave law had been amended effective less than one month before plaintiff requested leave and the DOP had not issued any guidelines regarding application of the amended law, the right to

equal protection is a well-established principle. It is also clear that gender discrimination violates the equal protection clause. Discriminatory application of a gender neutral state law is patently illegal and defendants should have known at least this much. Thus, the Court finds that the officers are not entitled to qualified immunity on plaintiff's constitutional claim. The substantive issues are in dispute and, accordingly, in regard to this claim, defendants' motion for summary judgment is denied and plaintiff's motion for partial summary judgment is also denied.

C. *Retaliation Claim*

Plaintiff brings his retaliation claim alleging defendants violated § 2615(a)(1) and (2) of the FMLA. [FN7] Plaintiff alleges that the transfer to the Salisbury Section from the Centreville Section was made in retaliation to his enforcement of his rights to parental leave.

FN7. 29 U.S.C. § 2615(a) provides:
§ 2615. Prohibited acts
(a) Interference with rights
(1) Exercise of rights It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by his

Defendants argue that Knussman's transfer was not related to his pursuit of federal rights, but was based on legitimate business reasons. The Division Commander decided to switch TFC Knussman to Salisbury and TFC Lewis to Centreville to cut down on excessive transportation costs. Moreover, TFC Lewis, who defendants allege was senior to Knussman in assignment at Centreville and had endured an involuntary transfer previously, preferred the Centreville Section. Defendants state that the transfer was not retaliatory because the decision to transfer Knussman was made by Captain James Spicer **613** who was not involved with the Aviation Division until February 1995-four months after plaintiff's request for leave. Captain Lewis then approved the transfer based on his understanding of staffing needs.

In response, plaintiff argues that he has made out a *prima facie* case of retaliation and submitted proof sufficient to present a dispute as to material facts.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Plaintiff therefore proffers that summary judgment is not appropriate on this issue. Plaintiff presents facts to demonstrate a causal connection between his protected activity and the involuntary transfer, including the timing of the transfer in relation to the litigation and the fact that TFC Lewis did not apply for FMLA or primary care giver leave after the birth of his child and was then granted a favorable transfer request.

[12][13] Section 2615(a) of the FMLA provides a cause of action for retaliation. *Dodgens v. Kent Mfg. Co.,* 955 F.Supp. 560, 565 (D.S.C.1997). In retaliation cases in the employment area, the Fourth Circuit has applied the burden-shifting analysis of *McDonnell Douglas v. Green,* 411 U.S. 792, 802- 04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Egbuna v. Time-Life Libraries, Inc.,* 95 F.3d 353 (4th Cir.1996) (applying the *McDonnell Douglas* analysis to a Title VII claim). The Fourth Circuit has yet to address the analysis to be used for an FMLA retaliation claim; however, a recent case in the District of South Carolina has adopted the analysis used in Title VII retaliation actions. *Dodgens,* 955 F.Supp. at 565-66; *accord Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir.1997) (applying Title VII analysis to FMLA claim of retaliation); *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 259 (N.D.Miss.1995) (same), *aff'd* 74 F.3d 91 (5th Cir.1996). This Court therefore concludes that the *McDonnell Douglas* analysis is appropriate for FMLA claims.

[14][15] To establish a *prima facie* case, the plaintiff must show: "(1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Egbuna,* 95 F.3d at 355. Plaintiff here was enforcing his leave rights through an internal grievance and through litigation in this Court which constitutes a protected activity. Plaintiff fails at the second prong, however. The geographic transfer, although undesirable to Knussman, does not constitute adverse employment action.

The Fourth Circuit, in an unpublished opinion, accepted the proposition that a transfer without a decrease in pay or rank but with a longer commute is insufficiently "adverse" for purposes of a retaliation claim. *Devine v. Thalhimers,* 977 F.2d 572, 573 n. 1 (4th Cir.1992) (citing *Darnell v. Campbell County Fiscal Court,* 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd,* 924 F.2d 1057 (6th Cir.1991)); *accord DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995) (reassignment of job responsibilities without decrease in job responsibilities, pay, or benefits is not clearly adverse in First Amendment retaliation action);

*Goodman v. State of Maryland Dept. of Social Servs.,* 64 F.3d 657, 1995 WL 501355 *3 (4th Cir.1995) (unpublished) (transfer to a new field assignment not materially adverse employment action).

Moreover, Judge Andre M. Davis of this Court in *Caussade v. Brown,* 924 F.Supp. 693 (D.Md.1996), found that a nurse who was reassigned to a lower number of wards without any decrease in pay, duties, or benefits did not suffer a materially adverse employment action. *Id. at 701.* Judge Davis noted that "[i]n cases involving transfers ... courts have held that absent a change in title, compensation, responsibility or working conditions, a mere transfer does not amount to adverse employment action." *Id. at 700* (citations omitted.)

Thus, the trend in the majority of courts has been to find transfers alone insufficient to rise to the level of a materially adverse employment action. [FN8] Plaintiff proffers that, under the FMLA, geographic transfers are **\*614** adverse for the purposes of a retaliation claim. The FMLA regulations prohibit geographic transfers upon an employee's return to duty after having taken FMLA leave. 29 C.F.R. § 825.215(e)(1) ("The employee must be *reinstated* to the same or a geographically proximate worksite where the employee had previously been employed." (emphasis added)). Clearly this regulation regarding geographic transfers is directed to an employee returning from FMLA leave, not alleged retaliation. Moreover, there is no regulation directed to what is "adverse" to trigger a retaliation claim under the FMLA; however, plaintiff asks the Court to infer a lower threshold of adversity in retaliation claims under the FMLA based on § 825.215(e)(1). In light of the case law providing a high threshold of adversity with respect to retaliation under other civil rights statutes and the fact that § 825.215(e)(1) seems clearly limited to reinstatement under the FMLA, the Court rejects plaintiff's argument to declare a lower threshold for FMLA cases.

FN8. *See Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987) (transfer to different position in the company without any reduction in salary or benefits does not amount to a materially adverse employment action); *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996) (lateral transfer resulting in minor reduction in commission earnings does not constitute a materially adverse employment action); *Ledergerber v. Stangler,* 122 F.3d 1142, 1144-45 (8th Cir.1997) ("The clear trend of authority is to hold a '*purely* lateral transfer ... cannot rise to the level of a materially adverse employment

action.' " (quoting *Williams,* 85 F.3d at 274 (emphasis in original))); *Montandon v. Farmland Industries, Inc.,* 116 F.3d 355, 359 (8th Cir.1997) (requirement that plaintiff move to another city "did not entail change in position, title, salary, or any other aspect of his employment" and thus "did not rise to the level of an adverse employment action"). The Second Circuit, however, has found to the contrary that transfers are actionable. *See de la Cruz v. New York City Human Resources Admin. Dept. of Social Servs.,* 82 F.3d 16, 21 (2d Cir.1996) (holding lateral transfer which "arguably altered the terms and conditions" of employment to be adverse action).

Therefore, the geographic transfer from Centreville to Salisbury without any change in job responsibilities, pay, or benefits is not an adverse employment action to satisfy the *prima facie* case for retaliation under the FMLA and, accordingly, summary judgment in favor of defendants on this claim is appropriate.

IV.

[16] Finally, the involvement of the individual defendants varies greatly and the plaintiff acknowledges that not all of the claims are being asserted against each defendant. Plaintiff is pressing the FMLA and Fourteenth Amendment claims against defendants Czorapinski, Creel, and Mullineaux for their role in denying Knussman his FMLA leave and discriminating against him in the application of the state nurturing leave law. As discussed *supra,* the individual defendants are granted qualified immunity with respect to the FMLA claim. However, the Court has determined that the specific involvement of each of these defendants with respect to the application of the state nurturing leave law under the Fourteenth Amendment claim should be submitted to the jury. Plaintiff has produced sufficient evidence for his claims against each of these defendants to survive a motion for summary judgment. [FN9]

FN9. For example, plaintiff states that Czorapinski was involved with the Fourteenth Amendment claim because he told Corporal Carl Lee that only a woman was eligible to be a child's "primary care giver." Czorapinski also acted as the fact finder at Step 2 of Knussman's grievance of his classification as secondary care giver and found that Knussman failed to establish that he was the primary care giver, asserting gender-biased presumptions in his decision.

Plaintiff alleges that Creel advised him that only a woman was eligible to be a primary care giver, and that the most leave he would receive upon the birth of his child was two weeks.

Plaintiff alleges Mullineaux made gender-biased remarks about his incapacity to breast feed making him ineligible for primary care giver status under the state nurturing law; and that he was ineligible unless his wife was in a coma or dead.

The only claim being pressed against defendant Mitchell by the plaintiff is the constitutional claim. Mitchell approved the Step 4 decision to deny Knussman's request for primary care giver status under the state nurturing leave law, applying gender-biased factors in his decision. Under these circumstances, Mitchell is a proper party defendant.

Plaintiff presses the retaliation claim solely against defendant Lewis. Due to plaintiff's failure to meet the *prima facie* case of retaliation under the FMLA, the claim falls and Lewis is no longer a party defendant in this case.

*615 [17] The State of Maryland and the individual defendants in their official capacities are still defendants on both the FMLA and Fourteenth Amendment claims. These defendants are subject to the FMLA claims, despite the Court's ruling that all of the individual defendants in their individual capacities are protected by qualified immunity, because qualified immunity is only a viable defense for government officials who are sued in their individual capacities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity is available for "government officials performing discretionary functions ... insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The State and the individual defendants in their official capacities are defendants on the Fourteenth Amendment claim as to declaratory and injunctive relief only.

For all the foregoing reasons the Court will grant in part and deny in part defendants' Motion for Summary Judgment and deny plaintiff's Motion for Partial Summary Judgment.

A formal Order will be entered in conformity with this Opinion.

*ORDER*

In accordance with the Opinion filed today in the above-captioned case, IT IS, this 13th day of August, 1998, by the United States District Court for the District of Maryland,

ORDERED:

(1) That Defendants' Motion for Summary Judgment (Paper 82) is GRANTED IN PART and DENIED IN PART as follows:

(a) That the motion IS GRANTED as to the claims in Count II against defendant Colonel David B. Mitchell;

(b) That the motion IS GRANTED as to the claims in Count II relating to defendants' retaliation against plaintiff for having pursued this law suit and for seeking parental leave;

(c) That the motion IS GRANTED as to the claims in Count II against defendants Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux in their individual capacities, the Court finding that these defendants are entitled to qualified immunity for any money damages;

(d) That the motion is DENIED in all other respects;

(2) That Plaintiff H. Kevin Knussman's Cross Motion for Partial Summary Judgment (Paper 84) is DENIED;

(3) That the remaining claims as to Count I are the claims of plaintiff Howard Kevin Knussman against defendants State of Maryland and Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux in their official capacities for declaratory and injunctive relief only and against defendants Colonel David B. Mitchell, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux in their individual capacities for all relief;

(4) That the remaining claims as to Count II are the claims of plaintiff Howard Kevin Knussman against defendants Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux in their individual capacities for declaratory and injunctive relief only and against defendants State of Maryland, Captain David Czorapinski, First Sergeant Ronnie P. Creel, and Jill D. Millineaux in their official capacities for all relief;

(5) That the Clerk shall mail a copy of this Order together with the foregoing Opinion forthwith to counsel of record.

16 F.Supp.2d 601, 4 Wage & Hour Cas.2d (BNA) 1516

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works