Westlaw.

73 Fed.Appx. 608
26 NDLR P 198
**(Cite as: 73 Fed.Appx. 608, 2003 WL 22023194 (4th Cir.(Md.)))**

H
This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

Howard Kevin KNUSSMAN, Plaintiff-Appellee,
and
Kimberly Ann Knussman, on behalf of themselves
and their infant daughter, aka,
Riley Page Knussman, Plaintiff,
v.
State of MARYLAND; David B. Mitchell, Colonel,
individually and in his
official capacity as Superintendent; David
Czorapinski, Captain, individually
and in his official capacity as Assistant Commander
of Aviation; Ronnie P.
Creel, First Sergeant, individually and in his official
capacity as Director of
Flight Operations; Jill D. Mullineaux,
Defendants-Appellants,
and
Maryland State Police; Donald G. Lewis,
individually and in his official
capacity as Acting Commander of Aviation,
Defendants.
Howard Kevin Knussman, Plaintiff-Appellee,
and
Kimberly Ann Knussman, on behalf of themselves
and their infant daughter, aka,
Riley Page Knussman, Plaintiff,
v.
State of Maryland; David B. Mitchell, Colonel,
individually and in his
official capacity as Superintendent; David
Czorapinski, Captain, individually
and in his official capacity as Assistant Commander
of Aviation; Ronnie P.
Creel, First Sergeant, individually and in his official
capacity as Director of
Flight Operations; Jill D. Mullineaux,
Defendants-Appellants,
and
Maryland State Police; Donald G. Lewis,
individually and in his official
capacity as Acting Commander of Aviation,
Defendants.

**Nos. 02-2130, 03-1608.**

Argued May 8, 2003.
Submitted July 21, 2003.
Decided Aug. 27, 2003.

Male state police employee brought § 1983 sex discrimination action against state and various officials, alleging that state police violated the Family Medical Leave Act (FMLA) and equal protection by denying the employee's request for a 30-day statutory "nurturing leave" to care for a newborn. The United States District Court for the District of Maryland, Walter E. Black, Jr., J., 65 F.Supp.2d 353, vacated a jury verdict in the employee's favor on the FMLA claim, but entered judgment on verdict in employee's favor against state police personnel officer on equal protection claim and approved a $375,000 damages award. On the personnel officer's appeal, the Court of Appeals, 272 F.3d 625, affirmed in part, vacated in part, and remanded. On remand, the District Court, Black, Jr., J., reduced the amount of damages due to $40,000, but then awarded the employee attorney's fees and costs in the amount of $626,049.29. Multiple defendants appealed the award of fees and costs. The Court of Appeals held that a reduction in the fee and cost award was warranted.

Vacated and remanded.

West Headnotes

**Civil Rights** 🗝1487
78k1487 Most Cited Cases

**Civil Rights** 🗝1501
78k1501 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Police employee's § 1983 suit, alleging that state police violated the Family Medical Leave Act (FMLA) and equal protection by denying the employee's request for a 30-day statutory "nurturing leave" to care for a newborn, was only marginally successful when viewed in its entirety, and thus, a significant reduction in a $626,049.29 award of attorney's fees and costs was warranted; attorneys could have developed the facts supporting employee's successful claim against one defendant without also developing the facts to support his unsuccessful claims against the remaining defendants, and the equitable relief awarded required nothing more than what the police had already done. Family and Medical Leave Act of 1993, § 2 et seq.; 29 U.S.C.A. § 2601 et seq.; 42 U.S.C.A. §§ 1983, 1988.

**\*609** Appeals from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Jr., Senior District Judge. (CA-95-1255-WEB).

**ARGUED:** Maureen Mullen Dove, Assistant Attorney General, Baltimore, Maryland, for Appellants. Andrew David Freeman, Brown, Goldstein & Levy, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland; Betty Stemley Sconion, Assistant Attorney General, Maryland State Police, Pikesville, Maryland, for Appellants. Robin R. Cockey, Cockey, Brennan & Maloney, Salisbury, Maryland; Deborah A. Jeon, American Civil Liberties Union Foundation of Maryland, Centreville, Maryland, for Appellee.

Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.

Vacated and remanded by unpublished PER CURIAM opinion.

## OPINION

PER CURIAM.

**\*\*1** Following our remand on the issue of damages, *see* Knussman v. Maryland, 272 F.3d 625 (4th Cir.2001) (*Knussman IV*), the district court reduced the amount of damages due appellee Howard Kevin Knussman to $40,000. The court then awarded him attorney's fees and costs in the amount of $626,049.29. The State of Maryland, the Maryland State Police (the "MSP"), Jill Mullineaux, a civilian employee of the MSP, and several other MSP employees appeal the award of attorney's fees and costs. For the reasons set forth below, we conclude that the district court abused its discretion in entering this award. Accordingly, we vacate the award of attorney's fees and costs and remand for further proceedings.

I.

A previous decision of this court details the relevant background facts. *See* Knussman IV, 272 F.3d at 628-32. [FN1] **\*610** Therefore, our discussion of the facts giving rise to the underlying lawsuit will be abridged, except to the extent necessary to provide context for the issue of attorney's fees.

> FN1. The procedural history preceding *Knussman IV* is contained in three published orders of the district court. *See* Knussman v. Maryland, 935 F.Supp. 659 (D.Md.1996) ("*Knussman I*"); Knussman v. Maryland, 16 F.Supp.2d 601 (D.Md.1998) ("*Knussman II*"); Knussman v. Maryland, 65 F.Supp.2d 353 (D.Md.1999) ("*Knussman III*").

Knussman served as a Maryland state trooper. Because his wife was suffering through a difficult pregnancy and was due to deliver in December 1994, Knussman requested that he be permitted to take leave, starting when the baby was born, pursuant to a new Maryland statutory provision that permitted state employees to use paid sick leave to care for a newborn ("nurturing leave"). *See* Md.Code Ann., State Pers. & Pens. §§ 7-502(b)(3), 7-508 (1994) [FN2]; Knussman IV, 272 F.3d at 628. Under this provision, a "[p]rimary care giver [ ]" could "use, without certification of illness or disability, up to 30 days of accrued sick leave to care for [a] child ... immediately following ... the birth of the employee's child." Md.Code Ann., State Pers. & Pens. § 7-508(a)(1) (1994). The statute defined a "primary care giver" as one "primarily responsible for the care and nurturing of a child." *Id.* A "[s]econdary care giver," defined as one who was "secondarily responsible" for the care of the child, was entitled to only 10 days of accrued sick leave. Md.Code Ann., State Pers. & Pens. § 7-508(b)(1) (1994). The statute was silent regarding the kinds of duties or activities that would differentiate a primary from a secondary caregiver.

> FN2. The statute has since been amended and recodified. *See* Md.Code Ann., State Pers. & Pens. § 9-505 (1997).

Prior to the 1994 statute, the circumstances under which a Maryland state employee could use paid sick

leave to attend to family members, *i.e.,* "family sick leave," did not include the birth of a child unless the employee could document "death, illness, or disability in the employee's immediate family." Md.Code Ann., *State Pers. & Pens. § 7-502(b)(2) (1994)*; *see Knussman IV,* 272 F.3d at 628 n. 1. By contrast, the new provision "permitted an employee to use paid sick leave without providing any medical documentation, since this type of leave was not actually related to the illness or disability of the employee or the employee's family." *Knussman IV,* 272 F.3d at 628.

**\*\*2** In October 1994, Knussman applied for four to eight weeks of "family sick leave" to attend to his wife, who was confined to bed rest, but he was informed that he would be permitted no more than two weeks. In early December 1994, immediately prior to the delivery date, Jill Mullineaux, who managed medical leave benefits, notified MSP employees of the new "nurturing leave" provision. Knussman contacted Mullineaux in hopes of qualifying for 30 days paid sick leave as a primary care giver under § 7-508(a)(1). According to Knussman, Mullineaux told him that only birth mothers could qualify as primary care givers. Knussman was allowed 10 days of paid sick leave under § 7-508 as a secondary care giver.

Knussman subsequently filed an administrative grievance on the basis that he was improperly denied primary care giver status under § 7-508(a). Knussman's grievance was denied at each of the four levels during the administrative grievance procedure. At step two of the grievance procedure, the Assistant Commanding Officer of Knussman's unit issued a written denial of Knussman's complaint in which he made clear that the MSP did *not* interpret the statute as categorically excluding fathers **\*611** from primary care giver status. However, the MSP took the position that Knussman failed to present sufficient evidence to support his claim that he was the primary care giver. The ruling concluded that Mrs. Knussman, who was also a Maryland state employee, would be considered the primary care giver because she took sick leave from December 9, 1994, the delivery date, until January 23, 1995, when she was certified to return to full time work--a period equivalent to the 30 days afforded a primary caregiver pursuant to § 7-508(a). *See Knussman IV,* 272 F.3d at 630-31. There was evidence in the record, however, that Mrs. Knussman was using the sick leave for her own condition in the wake of a difficult pregnancy. *See id.* at 631.

Knussman filed a civil rights action, *see* 42 U.S.C.A. § 1983 (West Supp.2003), against the State of Maryland, the MSP, and several individual employees of the MSP, including Mullineaux. Knussman alleged that he was denied his requested leave under § 7-508(a) because of gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Knussman also asserted claims under the Family and Medical Leave Act ("FMLA"), *see* 29 U.S.C.A. §§ 2601-2654 (West 1999 & Supp.2003), and the Maryland Equal Rights Amendment. Mullineaux, along with the other individual defendants, unsuccessfully sought summary judgment on the basis of qualified immunity. The case proceeded to trial, and, at the close of the evidence, the district court submitted to the jury the question of qualified immunity as well as the ultimate question of liability. The jury determined that each individual defendant denied Knussman's leave request because of Knussman's gender; however, the jury determined that only Mullineaux was not protected by qualified immunity. The jury awarded Knussman $375,000 in damages. Following the verdict, Mullineaux moved unsuccessfully for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, renewing her argument that she was entitled to qualified immunity. Additionally, under Rule 59, Mullineaux asked the district court to set aside the jury's verdict as excessive. Although the district court rejected the argument that the damages awarded by the jury were excessive and that Mullineaux was protected by qualified immunity, the court granted the defendants' motion to the extent that it asserted that the State of Maryland and the individual defendants in their official capacities were not liable for money damages under the FMLA and vacated that portion of the verdict. *See Knussman v. Maryland,* 65 F.Supp.2d 353, 356-60 (D.Md.1999) (*Knussman III*).

**\*\*3** On appeal, Mullineaux raised numerous issues. Most significantly, she argued that the district court improperly denied her Rule 50(b) motion for judgment as a matter of law based on qualified immunity for Knussman's equal protection claim under section 1983, and that the jury's verdict was excessive. This court affirmed the denial of qualified immunity to Mullineaux as well the verdict establishing Mullineaux's liability. *See Knussman IV,* 272 F.3d at 639. However, we concluded that the jury's verdict of $375,000 was excessive in light of the evidence. Knussman's damages claim was based "solely [on the] emotional distress that he claimed to have suffered because of Mullineaux's actions." *Id.* at 639. Although he "presented sufficient evidence for the jury to conclude that the emotional distress and mental anxiety he experienced was a genuine injury," *id.* at 640, "[t]he nexus ... between Mullineaux's unconstitutional conduct and Knussman's emotional injuries [was] attenuated," *id.* at 641. Significantly, "the evidence linked a large portion of Knussman's emotional difficulties to the litigation of this action and, to some extent, the general MSP

'grievance process' rather than Mullineaux's *612 unconstitutional conduct." *Id.* We observed that "[a]part from this litigation-related stress, Knussman's evidence of emotional distress is insufficient to support an award of $375,000," and that it was "not possible to determine what portion of the verdict was intended to compensate Knussman for the emotional damages attendant only to the litigation process." *Id.* at 642. Thus, we vacated the award of damages and remanded for a new damages trial, directing that "Knussman is entitled to be compensated for emotional distress caused by Mullineaux's constitutional violation but not for any emotional distress associated with the litigation of this action or his employer's general internal grievance process." *Id.*

On remand, the parties agreed to a bench trial on damages based on the original trial record. After reconsidering the issue, the district court reduced Knussman's award of damages to $40,000 for emotional distress stemming from Mullineaux's actions. That determination is not an issue on appeal.

## II.

In March 1999, while the defendants' post-verdict motions were still pending, Knussman filed a petition in district court seeking to recover attorney's fees as the "prevailing party" in an "action or proceeding to enforce a provision of section[ ] ... 1983." 42 U.S.C.A. § 1988(b) (West Supp.2003). At the time, Knussman sought $453,275.50 in attorney's fees and $40,366.86 in expenses. Before the district court ruled on the issue of attorney's fees, however, the defendants filed their appeal of the verdict, and the district court administratively closed the proceedings pending the appeal. In March 2002, shortly after this court rendered its decision in *Knussman IV* and remanded for a new trial on damages, Knussman filed a supplemental petition for attorney's fees and expenses, asserting that he was entitled to use 2002 rates to calculate the fees requested prior to the appeal. Additionally, Knussman claimed that he was entitled to attorney's fees for legal services rendered after March 1999, including work done in response to defendants' post-trial motions and appeal, as well as related expenses. All told, Knussman sought $688,227.30 in attorney's fees and $59,251.99 in expenses.

**\*\*4** Although the defendants conceded that Knussman qualified as a "prevailing party" for purposes of section 1988, they contended that the district court was required to reduce substantially Knussman's request for attorney's fees because Knussman did not prevail on the majority of his claims. Specifically, defendants argued that the requested fees should be disallowed to the extent they were associated with a claim alleging violations of the Maryland Equal Rights Amendment, which Knussman voluntarily dismissed; all claims against defendant Colonel David Mitchell, who was awarded qualified immunity on the single claim against him that went to trial; the retaliation claim against Major Lewis set forth in the supplemental complaint, which was dismissed on summary judgment; and all claims asserted by Knussman's wife and daughter, which were dismissed for lack of standing. Defendants also argued that Knussman's request included excessive and duplicative services, including those of out-of-state counsel, and urged the court to reduce the request accordingly. Finally, defendants contended that the district court should reduce Knussman's request for attorney's fees because he achieved only minimal overall success.

The district court reopened the issue of attorney's fees and awarded Knussman $566,879.20 in fees as well as the full amount of expenses requested, less $100. The court refused to reduce the award of fees because two of the three plaintiffs were dismissed for lack of standing as *613 "standing was a minor, related legal issue in this case and the expenditure of time by the plaintiff's attorneys on this issue was minimal and reasonable." J.A. 160-61. The court refused to make a reduction for the time spent by Knussman's attorneys on his claims against defendant Mitchell because, "[w]hile the jury did grant Mitchell qualified immunity, it also found that he had discriminated against Knussman on the basis of his gender" and Knussman's "claims against Mitchell were intertwined with his successful claims against the other defendants." J.A. 161. The district court also disagreed that Knussman was "only minimally successful" since the lawsuit resulted in a determination that "multiple defendants violated the law," the imposition of injunctive relief against some of the defendants, and an award of $40,000 in damages against one of the defendants. J.A. 160.

The district court, however, made some of the reductions requested by defendants. The court reduced the requested amount for the time Knussman's attorneys spent pursuing the retaliation claim that was ultimately dismissed as well as for excessive amounts of time spent on Knussman's motion to enforce the judgment. The court also concluded that the involvement of out-of-state counsel for Knussman was excessive, given the competence of Knussman's local counsel.

## III.

In a civil rights action brought pursuant to section 1983, a district court, "in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee." 42 U.S.C.A. § 1988(b). The starting point in deciding what constitutes a "reasonable attorney's fee" in a given case is the lodestar figure, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Factors relevant to this determination include the "novelty and complexity of the issues" and "counsel's experience and special skill in the litigated area." Spell v. McDaniel, 852 F.2d 762, 765 (4th Cir.1988) (per curiam) (internal quotation marks omitted). [FN3]

> FN3. From time to time, other factors may affect the court's decision regarding the number of hours expended and the rate used. See Hensley, 461 U.S. at 434 n. 9 (approving twelve factors mentioned in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974), overruled on other grounds, Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)); Spell v. McDaniel, 824 F.2d 1380, 1402 n. 18 (4th Cir.1987) (listing the twelve *Johnson* factors). But the district court need not apply these additional factors with mathematical precision to every request for fees presented under section 1988. The only mandatory consideration is that a fee award must reflect the plaintiff's "degree of success." See Hensley, 461 U.S. at 436; see also Randall v. Prince George's County, Maryland, 302 F.3d 188, 211-12 (4th Cir.2002).

**\*\*5** When a civil rights plaintiff has prevailed on only some of the claims-- as is the case here--the court must determine whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." Hensley, 461 U.S. at 434; see Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir.2002) (after calculating the lodestar figure, "[t]he court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones"). Because "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved, ... no fee may be awarded for services on the unsuccessful claim." Hensley, 461 U.S. at 435 (internal quotation marks omitted). Once the time spent on unrelated, unsuccessful claims has been eliminated from consideration, the court "then awards some percentage of the remaining **\*614** amount, depending on the degree of success enjoyed by the plaintiff." Johnson, 278 F.3d at 337. Indeed, "the most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436.

It is often quite difficult, however, to separate the hours worked "on a claim-by-claim basis" when "plaintiff's claims for relief ... involve a common core of facts or ... [are] based on related legal theories." *Id.* at 435. When this is the case, the chief consideration becomes "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435-36. When the results have been "excellent," the award should encompass "all hours reasonably expended on the litigation." *Id.* at 436. However, when the plaintiff "has achieved only partial or limited success," then the court may well be required to reduce the award:

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.... [T]he most critical factor is the degree of success obtained.

*Id.* at 436.

We review an award of attorney's fees under section 1988 for abuse of discretion. See Randall, 302 F.3d at 211. Under this standard, we will reverse an award of fees when the district court is "clearly wrong" or commits an "error of law." Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir.1998) (internal quotation marks omitted). And although the district court is vested with discretion in considering a petition for fees, it is "important ... for the district court to provide a concise but clear explanation of its reasons for the fee award" and to "make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." Hensley, 461 U.S. at 437.

IV.
A.

**\*\*6** Defendants contend that the district court failed to consider adequately whether Knussman "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434. First, defendants argue that the district court did not give sufficient consideration to Knussman's degree of success--"the most critical factor" for a court to consider when a plaintiff has achieved only partial success. *Id.* at 436. The district court indicated that it "reject[ed] the notion that [Knussman] was only minimally successful in this case" because "the jury

found that multiple defendants violated the law, the Court imposed injunctive relief, and the Court determined that Knussman [was] entitled to substantial monetary damages of $40,000.00." J.A. 160.

Defendants, however, contend that Knussman's lawsuit was only marginally successful when viewed in its entirety. We agree. First, defendants point out that Knussman asserted multiple claims against multiple parties, but ended up securing monetary relief against only one defendant. The fact that the jury found that defendants other than Mullineaux had violated the law does not mean that Knussman was successful for purposes of determining an appropriate fee. Indeed, "where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize *615 a fee award against that defendant." *Farrar v. Hobby,* 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (internal quotation marks omitted). On Knussman's section 1983 claim, he sought damages from the MSP and the State of Maryland, as well as four MSP employees in both their individual and official capacities. Prior to trial, the district court dismissed Knussman's claims for monetary relief against the MSP, the State of Maryland, and all of the state employees in their official capacities. *See Knussman IV,* 272 F.3d at 631-32. Thus, Knussman proceeded to trial with the opportunity for monetary relief against the four employees in their individual capacities, but ultimately failed as to the three defendants who were awarded qualified immunity. *See id.* at 632. In our view, Knussman's single successful claim for monetary relief against Mullineaux did not share a core of common facts with his claims against the other individual defendants. Knussman's attorneys could have developed the facts supporting his claim against Mullineaux without also developing the facts to support his unsuccessful claims against the remaining defendants. *See Goodwin v. Metts,* 973 F.2d 378, 383 (4th Cir.1992).

Defendants also argue that the equitable relief awarded to Knussman was not especially significant because it did not materially alter the relationship between the litigants and afforded no direct benefit to Knussman. In summary, the injunctive relief imposed by the district court required the following: (1) that the State of Maryland and individual defendants Mullineaux, Mitchell, and Czorpiniski notify all MSP employees that the leave provisions "apply equally to men and women"; (2) that the State of Maryland and Mullineaux and Czorpiniski comply with the notice requirements of the FMLA; (3) that the State of Maryland and Mullineaux and Czorpiniski establish a leave request procedure, in conformity with the FMLA and Maryland state law; (4) that Knussman be granted nine and one half weeks FMLA leave, 20 days of which would be paid sick leave (the remainder of the nurturing leave Knussman sought); (5) that those same defendants not retaliate against Knussman because he exercised his rights under the FMLA; and (6) that the defendants otherwise act consistently with the Equal Protection Clause and the FMLA. J.A. 77-80.

**\*\*7** Knussman, by contrast, argues that the equitable relief was significant because it established important social benefits beyond his own interests. *See City of Riverside v. Rivera,* 477 U.S. 561, 574-76, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion) (suggesting that equitable relief obtained in civil rights litigation may justify attorney's fees even in the absence of a large monetary award). Specifically, Knussman claims that the precedential value of the injunctive relief awarded to him benefitted all MSP employees and, in particular, fathers who wished to take family or medical leave. He also points out that the case received a fair amount of media coverage.

We disagree with Knussman. In considering the success generated by a given award of equitable relief, our focus is upon changes that are mandated by some form of court-ordered relief. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources,* 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change."); *id.* at 606 ("We cannot agree that the term prevailing party authorizes federal courts to award attorney's fees to a plaintiff who ... has reached the sought-after destination without obtaining any judicial relief." (internal quotation marks omitted)). The heart of Knussman's claim was that, initially *616 at least, he had been *categorically* excluded on the basis of his gender from 20 additional days of paid sick leave. And, as we observed, the conduct that violated clearly established law was Mullineaux's application of "an irrebuttable presumption that the mother is the primary care giver, and therefore entitled to greater employment benefits." *Knussman IV,* 272 F.3d at 635. Of course, we also observed that during Knussman's internal grievance proceedings, the MSP "notified Knussman that the DOP had recanted [its] policy [that] mother's primary, father's secondary, and that Knussman was indeed eligible for primary care giver status and could qualify by providing some information" proving that he was the primary caregiver. *Knussman IV,* 272 F.3d at 630 (internal quotation marks and citations omitted). Thus, the equitable relief that was awarded Knussman, which directed that MSP apply the leave provision equally to both genders, required nothing more than what the MSP

had already done. Moreover, the extent of the precedential value as suggested by Knussman is dubious, given that *Knussman IV* merely confirmed that the categorical denial of employment benefits based on gender stereotypes runs afoul of *clearly established* law. *See Knussman IV,* 272 F.3d at 635-39. In sum, we conclude that the equitable and declaratory relief won by Knussman was not so significant that the result he obtained could be described in any respect as "excellent." *See Hensley,* 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). [FN4]

> FN4. We hasten to note that our conclusion does not reflect on the good *quality* of Knussman's legal representation.

B.

**8** Second, defendants argue that the district court also failed to compare the amount of the award of attorney's fees to Knussman's overall level of success. The Supreme Court has cautioned that "[w]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley,* 461 U.S. at 437. Although the district court referred generally to the importance of "the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," J.A. 158, the court did not make clear in its order that it had compared the amount of the fee award to Knussman's overall results.

In our view, the end result of Knussman's litigation simply cannot justify such an enormous award of attorney's fees. [FN5] For the reasons stated previously, we view Knussman's success as limited and not overly significant as a legal matter. Knussman's limited success, then, calls for a significant reduction in his award of attorney's fees. Accordingly, we remand for the district court to determine the appropriate amount of fees and costs in light of our opinion. [FN6]

> FN5. Knussman was unable to cite a case in which an award of fees analogous to the one he seeks was approved. He suggested *City of Riverside* might provide such an analogy where the Supreme Court approved an award of $245,456.25 in attorney's fees in an excessive use of force case involving $33,350 in damages against several individual officers. In our view, *City of Riverside,* which does not involve core claims under equal protection principles, is not particularly helpful for comparison.

> FN6. On April 9, 2003, the district court entered an order granting Knussman's Second Supplemental Fee Petition in the amount of $67,482.18. Defendants filed a notice of appeal on April 28, 2003, shortly before we entertained oral argument in this appeal. We consolidated the new appeal, No. 03-1608, with this one. Upon remand, the district court should consider the entire amount awarded in light of this opinion.

**\*617** V.

For the foregoing reasons, we vacate and remand for further proceedings.

*VACATED AND REMANDED.*

73 Fed.Appx. 608, 2003 WL 22023194 (4th Cir.(Md.)), 26 NDLR P 198

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works