IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| H. KEVIN KNUSSMAN, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. AMD-95-1255 |
| STATE OF MARYLAND, *et al.*, | : | |
| Defendants. | : | |

\* \* \* \* ooo0ooo \* \* \* \*

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF FEE PETITION (ON REMAND)

Deborah A. Jeon
American Civil Liberties Union
Foundation of Maryland
100 North Liberty Street
Centreville, Maryland 21617
(410) 758-1975

Andrew D. Freeman, Bar No. 03867
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street
Baltimore, Maryland 21201
(410) 962-1030

Robin R. Cockey
Cockey, Brennan & Maloney
Suite 305, Plaza Gateway Building
116 West Main Street
Salisbury, Maryland 21801
(410) 546-1750

Counsel for Plaintiff

May 20, 2004

# TABLE OF CONTENTS

I.   Mr. Knussman Obtained Most of the Relief He Sought – Substantial
     Damages Together with Meaningful Injunctive And Declaratory Relief
     Against Five Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Defendants' Chart of Unsuccessful Claims Ignores Injunctive
          and Declaratory Relief and Exaggerates the Extent to Which
          Mr. Knussman Pursued Some Other Claims. . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   Attorneys' Fees Need Not Be Proportionate to Damages. . . . . . . . . . . . . . . 10

     C.   Plaintiff's Staffing of this Case was Appropriate and Comparable to
          Defendants' Staffing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     D.   Defendants' Sole Example of Plaintiff's Alleged "Intransigence" is in
          Fact Yet Another Example of Defendants' Unreasonable Tenacity. . . . . . . . . . 14

     E.   Defendants Do Not Dispute that at Least 500 Hours of Plaintiff's
          Attorneys' Time was Spent on Tangential Matters Necessitated
          by Defendants' Tenacity, on Which Plaintiff Prevailed . . . . . . . . . . . . . . . . . . 15

     F.   The Relevant Issue is Mr. Knussman's Degree of Success, Not the Ratio
          Between the Jury's Award of Damages and Judge Black's Award. . . . . . . . . . 16

II.  Plaintiff's Requested Billing Rate is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III. The Costs and Expenses Requested were Necessary to Aspects of the
     Case on which Plaintiff Prevailed and Should be Reimbursed in Full. . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

As held by the Fourth Circuit, the relief obtained by Mr. Knussman ($40,000 in compensatory damages, $7,600 in post-judgment interest, and injunctive relief that required defendants to provide him with nine-and-a-half weeks of leave they had previously refused and forbade them from retaliating against him, as well as requiring them to adopt a written nondiscriminatory leave policy and FMLA notification policy), was "limited" and not "excellent," and so does not entitle Mr. Knussman to a fully compensatory fee.  73 Fed. Appx. 608, 616 (4th Cir. 2003).  Instead, the Court must first determine what fees were reasonably expended for the portions of the case on which Mr. Knussman prevailed, then take into account his degree of success and reduce those fees accordingly.  *Id.*, *citing Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Pursuant to this mandate, in a comprehensive fee petition supported by detailed declarations and records of time and expenses, Mr. Knussman has carefully allocated the time for which he seeks fees into 12 categories of work and has written off over 1,000 hours of his attorneys' time.[1]  Mr. Knussman documented that his attorneys had necessarily and reasonably spent 2,340 hours (plus an additional 90 hours documented in Mr. Cockey's supplemental declaration, for a total of 2,430 hours) and $62,659 in expenses on aspects of this case on which he prevailed.

Mr. Knussman demonstrated that over 500 hours of this time was necessitated entirely by defendants' tenacious tactics.  Pl. Mem. at 22.  For example, Mr. Knussman was required to file seven separate motions to compel and one motion for sanctions (Docket Nos. 22, 25, 26, 45, 60,

---

[1]  Plaintiff's fee petition documents over 960 hours of time for which he does not seek compensation.  Mr. Freeman and Ms. Jeon have spent over 40 hours of time on this reply brief, for which they do not seek compensation, bringing the time written off to over 1,000 hours.

65, 79, and 140) that were granted by the Court (Docket Nos. 56, 58, 71, 78, 80, 151). Plaintiff

was even required to file a motion to obtain the post-judgment interest he was owed. (Mot. to

Enforce Judgment, Docket No. 198, granted by Mem. and Order of April 3, 2003, Docket No.

208, Pl. Ex. 9.) As courts have held repeatedly, "[t]he government cannot litigate tenaciously and

then be heard to complain about the time necessarily spent by the plaintiff in response." *City of

Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986), quoting *Copeland v. Marshall*, 641 F.2d 880,

904 (D.C. Cir. 1980)(en banc). *See also Gay Officers Action League v. Puerto Rico*, 247 F.3d

288, 299-300 (1ˢᵗ Cir. 2001) ("[a]lthough the fee award . . . seems quite generous, its size is

dictated in large part by the tenacity [of the defense]. Cf. Galicians 6:7 (observing that

'whatsoever a man soweth, that shall he also reap')"). A leading treatise summarizes the

caselaw as holding that "the vehemence or tenacity of the opposition will justify an increase in

the amount of time an attorney must necessarily – and therefore reasonably – spend in countering

the opposition and winning the suit." 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded

Attorney Fees* ¶ 16.02[8][b] (2003). Plaintiff submits that, as to the work on the case that was

necessitated by defendants' tenacity and on which he prevailed, he should receive a fully

compensatory fee – *i.e.* reasonable fees for the full 500 hours.

    As for the remaining 1,930 hours of attorneys' time (2,430 minus 500), Mr. Knussman

suggests that he has been at least 60 percent successful in his efforts, obtaining $40,000 in

damages, $7,600 in interest, nine-and-a-half weeks of paid leave, and protection against

retaliation, none of which the defendants were willing to concede without a battle. Accordingly,

Mr. Knussman suggests that he should receive reasonable fees for 60 percent of 1,930 hours, *i.e.*

for 1,158 hours, in addition to full fees for the 500 "tenacity" hours.

In their 34-page opposition, defendants do not cite a single time entry by plaintiff's

attorneys that defendants claim to be excessive, unclear, duplicative, or otherwise inappropriate.

For example, they have an entire section captioned "Petitioners Double- and Triple-Count Their

Hours Reductions," Opp'n at 21, without pointing to a single such time entry.  In taking this

approach, defendants would leave it to the Court to do their work for them.

As Judge Grimm wrote in reviewing a similar opposition (in which the defendants had at

least cited a few allegedly improper time entries but claimed that they were "examples"),

> This will not do.  It is not the Court's burden to sift through literally hundreds of
> pages of billing records to look for similar instances of allegedly improper billing entries
> when the challenging parties have not thought the effort sufficiently important to
> undertake themselves. . . .  [T]he Court will not review any challenged entry in the bill
> unless the challenging party has identified it specifically and given an adequate
> explanation for the basis of the challenge.

*Thompson v. HUD*, 2001 U.S. Dist. LEXIS 20557 at *41-42 (D. Md. Dec. 12, 2001).  *See also*

*Stacy v. Stroud*, 845 F. Supp 1135, 1145 (S.D. W. Va. 1993) (bare assertions by defendants that

certain requests seemed excessive are insufficient grounds to disallow time properly spent).

Instead of identifying any non-compensable time, defendants lob stones that amount to

little more than reiteration of the point that, because the Fourth Circuit said Mr. Knussman was

not wholly successful, he should not be fully compensated.  Mr. Knussman agrees with that

point, which is why he seeks compensation for only 1,658 of the 3,390 hours spent on his behalf.

But while the degree of success is "the most critical factor" under *Hensley,* it is not the only

factor.   Logically, a plaintiff who is only partly successful should still receive higher fees if the

defendants mounted a vigorous defense than if the defendants conceded the point.  While the

"shortcut" to full compensation to which plaintiffs who achieve excellent results can avail

4

themselves is not available to Mr. Knussman, his attorneys' fees should still reflect the work

necessitated by defendants' tenacious defense as well as the degree of success he obtained.

> ### I.    Mr. Knussman Obtained Most of the Relief He Sought – Substantial Damages Together with Meaningful Injunctive And Declaratory Relief Against Five Defendants.

### A.    Defendants' Chart of Unsuccessful Claims Ignores Injunctive and Declaratory Relief and Exaggerates the Extent to Which Mr. Knussman Pursued Some Other Claims.

Defendants place great weight on a misleading chart, Exhibits 1 through 1E to their

opposition, that purports to show that Mr. Knussman was successful on only one out of more

than 50 claims.  This chart wrongly implies that Mr. Knussman sought monetary damages on

each count from each defendant and ignores the injunctive and declaratory relief he obtained.  As

demonstrated in the more accurate chart at the top the next page (a larger copy of which is

attached as Exhibit 12) and as explained below, Mr. Knussman seriously pursued monetary

damages for emotional distress against just five defendants (each in his or her personal capacity).

He also pursued equitable relief against the same five defendants in both their official and

personal capacities.  He successfully obtained most of what he sought – full injunctive and

declaratory relief against all five defendants and substantial monetary damages (in an amount

that would have been the same no matter how many defendants they were awarded against).  The

monetary damages obtained were $40,000 against Ms. Mullineaux (an amount that Judge Black

characterized as "substantial"), which is one of the higher awards for purely emotional distress

damages ever sustained in an employment discrimination case in the Fourth Circuit, plus $7,600

in post-judgment interest.

## KNUSSMAN'S OVERALL SUCCESS ON CLAIMS



| | Mitchell Official | Mitchell Personal | Czorapinski Official | Czorapinski Personal | Creel Official | Creel Personal | Mullineaux Official | Mullineaux Personal | MSP | State of MD | Lewis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ct I – Equal Prot. §1983 | I&D | I&D / $ | I&D | I&D / $ | I&D | I&D / $ | I&D | I&D & $ | (Dismissed by Consent) | I&D | (Not Sought) |
| Ct II – FMLA/Statute | (Dismissed by Consent) | (Dismissed by Consent) | I&D | I&D | I&D | I&D | I&D | I&D | (Dismissed by Consent) | I&D | (Not Sought) |
| Ct II – FMLA §1983 | (Not Sought) | (Dismissed by Consent) | | $ | | $ | | $ | (Dismissed by Consent) | $ | (Not Sought) |
| Ct. II – Retaliation | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (Not Sought) | (No Relief Granted) |
| Ct III – MD Dec. of Rights | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Dismissed by Consent) | (Not Sought) |

Legend: Not Sought | No Relief Granted | Prevailed | Dismissed by Consent

I&D – Injunctive & Declaratory Relief
$ - Monetary Damages

The original Complaint (Docket No.1) was filed on April 28, 1995, alleging violations of the Equal Protection Clause (Count I), the Family and Medical Leave Act ("FMLA") (Count II), and the Maryland Declaration of Rights (Count III) against six defendants: David Mitchell, David Czorapinski, Ronnie Creel, Jill Mullineaux, the Maryland State Police, and the State of Maryland. Damages were sought against the individual defendants only in their individual capacities, and not against the State itself, whereas injunctive and declaratory relief was sought against all defendants.

A First Amended Complaint (Docket No. 9) was filed on September 25, 1995, adding to Count II a demand for emotional distress damages by enforcement of the FMLA under 42 U.S.C. § 1983 and deleting a claim for damages directly under the FMLA statute. This change was made because the law had become clear that emotional distress damages are unavailable under

6

the FMLA. Trooper Knussman had suffered a loss of leave, but no significant economic damages, meaning there were no damages available to him directly under the FMLA statute. The Amended Complaint made claims for injunctive and declaratory relief for violation of the Equal Protection Clause (Count I) against defendants Mitchell, Czorapinski, Creel, and Mullineaux in both their official and individual capacities, as well as against the Maryland State Police ("MSP") and State of Maryland. Count I damages claims were made only against Mitchell, Czorapinski, Creel, and Mullineaux in their individual capacities. *See* First Am. Compl. at 18, Prayer for Relief part (e). Count II claims were made against all defendants, again with §1983 damages sought only against the individuals in their individual capacities. *Id.*

The defendants filed both an Answer (Docket No. 13) and a Motion for Partial Dismissal of the Amended Complaint (Docket No. 12) on October 16, 1995. Plaintiffs responded on November 8, 1995 (Docket No. 17), voluntarily dismissing Count III of the Amended Complaint against all defendants, but otherwise opposing the Motion. The Court heard oral argument on defendants' Motion on January 26, 1996. During the hearing, Judge Black said he thought it was duplicative to have both MSP and the State named as defendants, and plaintiff consented orally to dismissal of the MSP at that time. (Plaintiff's consent to dismissal of both Count III and the MSP was noted by the Court in its August 2, 1996, decision resolving defendants' motion for partial dismissal. 935 F. Supp. 659, 662 nn. 1 & 2 (D. Md. 1996).) In rejecting defendants' effort to dismiss Mr. Knussman's FMLA claims against the individual defendants, the Court became one of just a handful nationally to hold, at that time, that FMLA claims could be brought both against employers and against individual supervisors. That principle has since been well established by numerous subsequent cases following the same reasoning.

Plaintiff filed a Supplemental Complaint (Docket No. 68) on February 3, 1997, adding a retaliation claim (regarding the transfer of Trooper Knussman from Centreville to Salisbury) as an aspect of the Count II FMLA claim and adding Donald Lewis as a defendant on that one claim. These were the only additions the Supplemental Complaint made to the First Amended Complaint. The only other differences were deletion of Count III and the MSP, as well as omission of Kimberly and Paige Knussman as plaintiffs. Defendants filed an Answer (Docket No. 73) to the Supplemental Complaint on February 18, 1997.[2]

On April 2, 1997, defendants filed a Motion for Summary Judgment (Docket No. 82). Mr. Knussman opposed defendants' Motion and filed a Cross Motion for Partial Summary Judgment (Docket No. 84) on April 21, 1997. The Court addressed the summary judgment motions by decision entered August 13, 1998 (Docket No. 97, published at 16 F. Supp. 2d 601, 614 (D. Md. 1998)). Plaintiff's FMLA claim against David Mitchell was dismissed with his consent. 16 F. Supp.2d at 614 ("The only claim being pressed against defendant Mitchell by the plaintiff is the constitutional claim.") Defendants Czorapinski, Creel, and Mullineaux were granted qualified immunity from damages liability on plaintiff's FMLA/§1983 claim, but the Court permitted Mr. Knussman to pursue his FMLA claim for injunctive and declaratory relief against these three defendants, both in their official and individual capacities, as well as against the State of Maryland. *Id.*[3] The Court denied summary judgment to all defendants on plaintiff's

---

[2] In rejecting defendants' opposition to the filing of the Supplemental Complaint at a January 31, 1997, hearing, Judge Black specifically instructed the defendants that they must file an Answer, and that he would not entertain another Motion to Dismiss.

[3] Significantly, in permitting plaintiff to pursue his FMLA/§1983 claim, the Court became the first in the nation to rule that, through enforcement of the FMLA under §1983, a plaintiff can seek emotional distress damages against a public employer and individual government supervisors who violate that law. This ruling was reaffirmed by Judge Black following trial (on defendants' post-trial motion), and defendants never appealed it.

equal protection claims, and denied the individual defendants qualified immunity on that claim. *Id.* at 615.  Finally, the Court rejected plaintiff's retaliation claim, which he had pressed only against defendant Donald Lewis, and dismissed Lewis from the case (as none of the other claims were being pursued against him).[4]  *Id.* at 614.

The case went to trial on plaintiff's remaining claims, and on February 2, 1999, following an 11-day trial, the jury rendered a verdict finding defendants Mitchell, Czorapinski, Creel, Mullineaux, and State of Maryland liable for violation of plaintiff's rights under the Fourteenth Amendment, and all but Mitchell (against whom liability was not sought) liable under the FMLA (Docket No. 116).  Defendants Mitchell, Czorapinski, and Creel were granted qualified immunity from damages liability by the jury, and Mullineaux was denied immunity.  *Id.*  The jury awarded damages in the amount of $375,000 resulting from defendants' violation of Mr. Knussman's rights.  *Id.*

By Order entered March 12, 1999 (Docket No. 126), pursuant to the jury's liability findings, the Court granted all the injunctive and declaratory relief Mr. Knussman requested against defendants Mitchell (on Count I), Czorapinski (Counts I & II), Creel (Counts I & II), Mullineaux (Counts I & II), and the State of Maryland (Counts I & II).  The injunctive relief consisted of five separate elements requiring defendants (1)  to inform MSP employees about the gender-neutral application of its parental and nurturing leave policies, (2 and 3) to notify MSP employees collectively and individually about their rights under the FMLA, (4)  to grant Mr. Knussman nine-and-a-half weeks of paid leave (which they had never previously agreed to give him for the birth of his first daughter), and (5) to refrain from retaliating against him.  *Id.*

---

[4]  Thus, Mr. Knussman's Count II retaliation claim, which defendants portray with 11 gray squares on their Exhibit 1E, actually required little effort, and plaintiff seeks no fees for it.

Damages were initially awarded against Mullineaux (Count I) and State of Maryland (Count II).

The ruling on damages was amended following defendants' post-trial motion to grant the State

sovereign immunity from damages liability, thus leaving Mullineaux as the sole defendant liable

for damages.  Amended Order of Judgment, Sept. 3, 1999 (Docket No.158).  In all other

respects, defendants' post-trial motion was rejected.[5]

Defendants appealed only two discrete aspects of the decision:  (1) the denial of qualified

immunity to Mullineaux; and (2) the amount of the verdict.  They failed with respect to the first

issue, and succeeded on the second.  272 F.3d 625 (4th Cir. 2001).  On remand, the Court

awarded plaintiff $40,000 in compensatory damages (Docket Nos. 191, 192), an amount

increased to $47,600 through accrual of interest (Docket Nos. 207, 208).

**B.    Attorneys' Fees Need Not Be Proportionate to Damages.**

The Supreme Court has "reject[ed] the proposition that fee awards under § 1988 should

necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."

*City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *id.* at 486 (Powell, J., concurring).  In *City*

*of Riverside*, an award of $13,300 in emotional distress damages formed the basis for a $245,456

---

[5]  As explained at pages 14-15 of plaintiff's initial memorandum, defendants refused to reinstate
Trooper Knussman to his position as a paramedic on the Medevac helicopter following the trial.
This refusal necessitated substantial work to enforce the injunction against retaliation.
Defendants assert that this work is non-compensable because no further order was entered.
Opp'n at 16.  But they forget that an order had already been entered.  Plaintiff's counsel are
entitled to compensation for work to enforce an existing order.  *See Pennsylvania v. Del. Valley
Citizens' Council*, 478 U.S. 546, 558-59 (1986); *see also Thompson v. HUD*, 2001 U.S. LEXIS
20557 at * 17 (D. Md. Dec. 12, 2001).  As Judge Black found, this work was necessitated by
defendants' resistance to the initial order.  Mem. Op. at 11 (Aug. 26, 2002), Docket No. 193.
Judge Black carefully reviewed and substantially reduced the time he found to have been
reasonably spent on this issue.  *Id.*  Mr. Knussman seeks only the fees and expenses that Judge
Black found were reasonably expended enforcing the judgment.  Pl's Initial Mem. at 15-16.

fee award for 1,946 hours of attorneys' time. *Id.* at 564-65. (Plaintiffs' federal claims – for which they recovered $13,300 and received no injunctive relief – were the only claims for which they were entitled to attorneys' fees. They also obtained $20,050 for their state-law claims. *Id.*) Thus, even if defendants' misguided use of the ratios between damages and fee awards were relevant, the ratio of fees to damages in *City of Riverside* was $245,456 to $13,300, or 18.5 to 1.[6]

There are numerous other cases in which courts have awarded hundreds of thousands of dollars in fees that were necessarily incurred by civil rights plaintiffs to obtain just tens of thousands of dollars in damages. In *Fair Housing of Marin v. Combs*, the Ninth Circuit affirmed an award of $508,606 in fees and costs expended to obtain an award of $98,777. 285 F.3d 899 (9th Cir. 2002). The First Circuit awarded $163,100 in fees and $13,787 in expenses to plaintiffs who were <u>unsuccessful</u> in the vast majority of their claims, including all damages claims, but won an injunction as to one claim. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 299-300 (1st Cir. 2001). In *Craig v. Christ*, the plaintiff received $168,990 in fees and $13,845 in costs expended to obtain a settlement of $30,000. 1999 U.S. Dist. LEXIS 17548 (S.D. Ind. 1999). In *Pressley v. Haeger*, the plaintiff obtained a verdict of $40,000 but was unsuccessful on several theories and against some defendants. The district court awarded $177,000 in attorneys' fees for 1,102 hours of work, which the Seventh Circuit held should be increased on remand because the district judge had reduced the attorneys' hourly rates without justification. 977 F.2d 295, 299 (7th Cir. 1992). In *Copeland v. Marshall*, the D.C. Circuit affirmed an award of $160,000 in fees (approximately 2,800 hours) to recover back pay of $33,000. 641 F.2d 880 (D.C. Cir. 1980)(en banc).

---

[6] If defendants' suggested approach were followed here, plaintiff would be awarded $880,600 in attorneys' fees ($47,600 x 18.5).

Last fall, Judge Nickerson awarded attorneys' fees of $750,000 and costs of $258,457 against the State of Maryland in *Project Life, Inc. v. Ehrlich*, No. WMN-98-2163 (D. Md. filed Aug. 6, 2003) (attached as Ex. 15). In *Project Life*, a jury found that the State of Maryland and related defendants had discriminated against plaintiff because of the disabilities of its potential clients but awarded just $12 in damages (which plaintiff voluntarily abandoned on appeal), together with an injunction from the court that required the defendants to enter into a five-year lease with the plaintiff. In that opinion, Judge Nickerson observed that "Defendants have vigorously fought this litigation at each and every step of the way, and it is Defendants' litigation posture, more than any other single cause, that drove up the litigation costs in this action." *Id.* at 12. The State did not appeal, and paid the fees and costs in full, together with supplemental fees of $150,000. *See* Board of Public Works - After Meeting Agenda for 12/17/03 at 18, Ex. 16 (approving payment of $1,158,457.11 for *Project Life* attorneys' fees).

## C. Plaintiff's Staffing of this Case was Appropriate and Comparable to Defendants' Staffing.

Without identifying a single instance of alleged overstaffing, defendants complain generally about "over-lawyering." Opp'n at 26. As with defendants' other complaints, this is unjustified. Multiple attorneys may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contributions of each lawyer.[7] Plaintiff's

---

[7] Defendants complain about time spent by plaintiff's counsel in telephone conferences and strategy sessions. *Id.* at 26. As a general rule, however, time spent by a prevailing plaintiff's attorneys in conference and strategy sessions is compensable. *See, e.g., City of Riverside v. Rivera*, 477 U.S. at 573 n.6; *Blum v. Witco Chemical Corp.*, 829 F.2d 367 (3d Cir. 1987); *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337 (D.C.Cir. 1982); *Stacy v. Stroud*, 845 F. Supp. at 1144; *McKenzie v. Kennickel*, 645 F. Supp. 437 (D.D.C. 1986). As a practical matter, it would be impossible for counsel to litigate a complex case such as this effectively without consulting frequently with one another. Furthermore, the local

attorneys aver, and their time records confirm, that the work was divided among Mr.

Knussman's three attorneys in a manner that kept duplication to a bare minimum. Jeon Decl'n

of 5/22/02 ¶ 4, attached as Ex. 17. Moreover, where duplication of efforts was evident,

plaintiff's counsel exercised billing judgment by eliminating charges for the second chair

attorney. *Id.*

The general policy for fee recovery follows the adage "what's good for the goose is good

for the gander." *Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987). In this vein, the Court's

Rules and Guidelines on attorneys' fees provide that a party who is represented by more than one

attorney will not be heard to complain because his opponent is as well. Local Rules Appx. B.2

nn.3 & 4. Such is the case here. Defendants generally have been represented by multiple

counsel at court hearings and discovery proceedings throughout the course of this litigation.

Indeed, Mr. Knussman frequently billed for fewer attorneys than defendants employed to

perform the same function. Jeon Decl'n of 5/22/02) ¶ 3 and accompanying Chart of Attendance

of Multiple Attorneys, Ex. 17. In some instances where plaintiff was represented by two

attorneys at a court hearing, defendants themselves were represented by three or even four

attorneys. *Id.* (*see, e.g.*, court hearings of Nov. 7 and 20, 1997, and May 4, 1999). In

appearances and telephone calls with this Court since the current remand, defendants have

continued to use two attorneys to plaintiff's one. Defendants have produced no evidence at all of

any instances in which they were represented by one attorney while plaintiff employed more

---

guideline cited by defendants in support of their objection (Appx. B.2.e) explicitly pertains only
to *intra-office* strategy sessions. Mr. Knussman's counsel work in different offices in different
cities, and so are not covered by this provision.

than one attorney.  Accordingly, plaintiff is entitled to attorneys' fees for the work of two

counsel in the limited number of proceedings where he seeks such compensation.[8]

**D.    Defendants' Sole Example of Plaintiff's Alleged "Intransigence" is in Fact
       Yet Another Example of Defendants' Unreasonable Tenacity.**

Amazingly, for their sole example of plaintiff's counsel's alleged "intransigence,"

defendants point to plaintiff's refusal to stay enforcement of the monetary judgment against Ms.

Mullineaux pending the appeal of that judgment.  Opp'n at 18.  In fact, plaintiff made clear to

defendants, and later to the Court, that he would readily agree to a stay if the State agreed to

indemnify Mullineaux if the judgment was upheld on appeal.  Defendants refused.  Instead, Ms.

Sconion suggested – both in comments to the media and in discussions with plaintiff's counsel –

that because the State was not required to stand behind its employee and Ms. Mullineaux might

file for personal bankruptcy, the judgment could well be uncollectable.  *See* letter from Cockey

to Sconion of 10/1/99, Ex. 18.

Defendants then filed a Motion to Stay Enforcement (Docket No. 164), which plaintiff

opposed (Docket No. 165, attached as Ex. 19) on grounds of the State's refusal to commit to

indemnification of Mullineaux.  Judge Black heard the motion on November 2, 1999, and

strongly urged Ms. Sconion to agree to plaintiff's indemnification request.  When defense

counsel remained steadfast in her refusal, the Court denied defendants' stay request (Docket No.

166) for the very reasons cited by plaintiff in his opposition.

---

[8]  Although plaintiff has had three attorneys representing him in this case, plus one additional
counsel for fees, all three attorneys billed time only for three hearings and one settlement
conference in seven years. *Id.*

Plaintiff then worked with defendants' counsel – granting numerous extension requests on discovery responses and repeatedly delaying any movement toward execution upon the judgment – while defense counsel took the matter up with the Board of Public Works, to secure the State's agreement to pay the judgment on Mullineaux's behalf.  Once the Board committed to indemnify Mullineaux, in late February of 2000, plaintiff promptly agreed to discontinue his execution efforts pending outcome of the appeal – just as he would have agreed at the outset, had defendants agreed to indemnify Ms. Mullineaux five months before.  Thus, far from demonstrating the "intransigence" of plaintiff's counsel, this example provides yet another reminder of the unnecessary work caused by the defendants' tenacious litigation tactics.[9]

**E.    Defendants Do Not Dispute that at Least 500 Hours of Plaintiff's Attorneys' Time was Spent on Tangential Matters Necessitated by Defendants' Tenacity, on Which Plaintiff Prevailed.**

Defendants do not and cannot dispute that plaintiff was forced to file and win eight separate motions to gain the discovery to which he was entitled in the case.  They do not and cannot defend the position they took in opposing post-judgment interest on the damage award (a position for which they fought even after plaintiff had cited cases supporting his position).  They do not and cannot defend their appeal of Ms. Mullineaux's liability, which the Fourth Circuit held violated clearly established law.  272 F.3d 625, 634-39 (4th Cir. 2001).  As explained at

_____

[9] In their discussion of plaintiff's alleged "tenacity," defendants also claim that Mr. Knussman has declined allegedly reasonable settlement offers.  Opp'n at 18-19.  The simplest answer to this is that, having chosen not to make an Offer of Judgment under Rule 68, defendants cannot obtain a reduction of plaintiff's fees based on allegedly reasonable offers.  Substantively, plaintiff did not and does not believe that any such offer is reasonable.  On the other hand (and equally irrelevant), defendants would have been substantially better off if they had accepted Mr. Knussman's modest settlement demands at the beginning of this case.  Defendants' lack of seriousness about settlement was most recently evidenced by their refusal even to participate in a settlement conference regarding fees following remand from the Fourth Circuit.

page 22 of plaintiff's initial memorandum, this work on unnecessary, tangential matters exceeded 500 hours. These and other aspects of the tenacious defense justify an increase in the amount of time that Mr. Knussman's counsel necessarily – and therefore reasonably – spent in countering the opposition and winning the suit.

**F.    The Relevant Issue is Mr. Knussman's Degree of Success, Not the Ratio Between the Jury's Award of Damages and Judge Black's Award.**

The "89.3% reduction" in damages to which defendants point, and which they urge be applied to fees as well (Opp'n at 32), is irrelevant to any issue before the Court. The fact that plaintiff's damages award was reduced following appeal from $375,000 to $40,000 does not mean that he was only "10.7% successful." Rather, as explained above, Mr. Knussman obtained almost all of what he set out for. Judge Black made a point of stating that he believed that the $40,000 damages he awarded was "substantial" (as indeed it was). He further emphasized that "[t]he fact that the jury awarded damages of $375,000.00, which was found by the Court of Appeals to be excessive . . . has no bearing on the determination of who was the prevailing party in this case." *Knussman v. Maryland*, Mem. Op. at 9 n. 2 (D. Md. Aug. 26, 2002) (Docket No. 193).

Defendants' suggestion that, because Mr. Knussman was (according to them) successful on just one of 21 claims, the Court should consider awarding just 1/21 of his fees, or $30,642 (Opp'n at 31), is even more inappropriate and highlights the fallacy of defendants' approach. As they themselves acknowledge, the Fourth Circuit has cautioned against such a rigid application of mathematical ratios. *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998). But the defendants fail to provide any rationale for why a $30,000 fee would be remotely adequate to compensate a civil rights plaintiff for fees required to navigate the pleadings, discovery, motions,

11-day trial, post-trial motions, appeal, and fee petition necessary to obtain the relief Mr. Knussman won in this case.

Rather, the relevant question is simply the extent to which Mr. Knussman's attorneys' fees are justified by the success he achieved in obtaining $47,600, over two-month's leave, and the other injunctive relief ordered by the Court.

## II.     Plaintiff's Requested Billing Rate is Reasonable.

Although defendants complain about the $275 hourly rate that plaintiffs seek for their four lead attorneys, (all of whom have extensive civil rights experience and all of whom have been members of the bar for at least 17 years), they offer no countervailing evidence that $275 is excessive for such attorneys and propose no alternative rate. *See* Opp'n at 19-20, 28. Plaintiff offered both Mr. Freeman's declaration regarding Baltimore market rates (Ex. 4 ¶ 9) and the Baltimore Business Journal's 2003 survey of Baltimore law firms (Ex. 4C) to support the reasonableness of a $275 fee, which is presumptively reasonable under this court's guidelines for attorneys' fees.. The reasonableness of this rate is confirmed by additional declarations from Jefferson Wright (the head of the Commercial and Business Litigation group at Miles & Stockbridge) and Stephen Lebau (the managing partner of Lebau & Neuworth), attached as Exhibits 13 and 14. Contrary to defendants' unsupported assertions (Opp'n at 20), $275 an hour for attorneys with 17 or more years of experience is not a "premium" rate. It is within the range that is presumptively reasonable under the guidelines established by this court approximately five years ago (Appendix B to the Local Rules), and rates have increased substantially since then. Mr. Freeman's regular hourly rate, which he charges to fee-paying clients, is $300 an hour. Freeman Decl'n ¶ 8.

Defendants claim that plaintiff should have had some work (they do not specify what) done by lower-paid attorneys. Opp'n at 20. In fact, plaintiff did so. But, as part of plaintiff's exercise of billing discretion, he does not seek fees for the 200-plus hours spent by other attorneys, paralegals, and law clerks who played "assisting" roles in the case. *See* Jeon Decl'n, Ex. 1, ¶ 24 (126.6 hours of time by other ACLU of Maryland attorney, paralegals, and law clerk excluded from request); Ex. 1B (ACLU time not charged); Mandelbaum Decl'n, Ex. 3, ¶ 16 (ACLU Women's Rights Project not seeking compensation for over 40 hours of time by other attorneys); Freeman Decl'n, Ex. 4, ¶ 7 (Brown, Goldstein & Levy not seeking compensation for 33.25 hours of time by other attorneys, paralegals, and law clerks); Ex. 4B (Brown, Goldstein & Levy time not charged).

Defendants also assert that work on the fee petition itself should be at a reduced rate. Opp'n at 28. The Court can judge for itself the complexity of the briefing on fees – for which defense counsel requested six weeks just to prepare their opposition. *See* Defs.' Mot. for Order Setting Briefing Schedule ¶ 6 (Doc. No. 228, filed 3/29/04). The work is both complex and time-consuming. *Bethishou v. Levy*, 1989 U.S. Dist. LEXIS 12112 at *11 (N.D. Ill. 1989). Other courts have readily and fully compensated for counsel's work in obtaining attorneys' fees. *See, e.g., Ganey v. Garrison*, 813 F.2d 650, 651 (4th Cir. 1987) ("time spent defending entitlement to attorneys' fees is properly compensable"); *Thompson v. HUD*, 2001 U.S. LEXIS 20557 at *7-8 (D. Md. 2001)(Grimm, M.J.) (awarding $51,967 in fees and expenses for preparation of fee petition); *Communications Workers of Am. v. Ill. Bell Tel. Co.*, 553 F. Supp. 144, 147 (N.D. Ill. 1982) (awarding fees for 83.9 hours spent on fee petition where total time was 445 hours).

### III.    The Costs and Expenses Requested were Necessary to Aspects of the Case on which Plaintiff Prevailed and Should be Reimbursed in Full.

As with attorneys' fees, defendants fail to identify a single expense for which plaintiff seeks reimbursement that was not necessary to aspects of the case on which he prevailed. *See* Opp'n at 32. As detailed in Exhibits 1C and D, 2B, 3C, and 4A, the bulk of these expenses were for deposition transcripts, expert witnesses, and copying of evidence and successful pleadings, as well as travel and lodging related to depositions, hearings, and trial necessitated by the fact that Mr. Knussman and Mr. Cockey live and work on the Eastern Shore, where the relevant events happened, but the federal courthouse is located in Baltimore. Judge Black reviewed plaintiff's requested expenses in his opinion of August 26, 2002, at 13 and his opinion of April 9, 2003, at 1 and 9, which awarded expenses of $59,151.99 and $3,101.68, respectively. At page 23 of Plaintiff's Fee Petition (on Remand), this is the amount that plaintiff again seeks, together with an additional $405.95 in expenses incurred by Brown, Goldstein & Levy, primarily in copying the exhibits to the fee petition, for a total of $62,659.62 in expenses.

In an additional exercise of billing discretion, counsel has re-reviewed plaintiff's expenses and voluntarily deducts an additional 10 percent as a generous estimate of the portion of the expenses attributable to aspects of the case on which he did not prevail. Plaintiff also voluntarily writes off the additional expenses involved in researching and copying this reply brief. Accordingly, plaintiff reduces his request for expenses to $56,393.66.

### Conclusion

Thus, as reasonable fees in light of Mr. Knussman's degree of success and the other "Johnson" factors, plaintiff requests that he be awarded fees for 1,658 hours of attorneys' time at

$275 an hour, for a total of $455,950 in fees, together with $56,393.66 in expenses, for a total award of $512,343.66.

Respectfully submitted,

_____/s/_____
Andrew D. Freeman, Bar No. 03867

Deborah A. Jeon
American Civil Liberties Union
Foundation of Maryland
100 North Liberty Street
Centreville, Maryland 21617
(410) 758-1975

Brown, Goldstein & Levy, LLP
120 E. Baltimore Street
Baltimore, Maryland 21201
(410) 962-1030

Robin R. Cockey
Cockey, Brennan & Maloney
Suite 305, Plaza Gateway Building
116 West Main Street
Salisbury, Maryland 21801
(410) 546-1750

Counsel for Plaintiff

May 20, 2004