# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PROJECT LIFE, INC.,                    :
et al.

                                       :

v.                                              Civil Action WMN-98-2163

ROBERT EHRLICH, et al.                 :

                                       :

## MEMORANDUM

Before the Court is a petition for the award of attorneys' fee and expenses in which Plaintiff Project Life, Inc. seeks an award of over $2.2 million. Paper No. 238. As with every other phase of this litigation, the filing of this petition prompted a spate of related motions, including: Defendants' motion to dismiss the petition, Paper Nos. 245 and 246; Plaintiff's motion for leave to file a surreply in opposition to that motion to dismiss, Paper No. 251; Plaintiff's motion for leave to file a reply in support of its petition in excess of the page limit allowed under the Local Rules, Paper No. 252; and Plaintiff's motion to strike the surreply memorandum filed by Defendants in opposition to the petition, Paper No. 259. Plaintiff's two motions for leave are unopposed and will be granted for good cause shown. Plaintiff's motion to strike and Defendants' motion to dismiss will be denied, for the reasons explained below. The petition itself will be granted insofar as the Court will award

$750,000 in attorneys' fees, and $258,457.11 in expenses.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the efforts of Plaintiff Project Life, Inc., a non-profit organization, to find a permanent berth for the U.S.S. Sanctuary, a decommissioned United States Navy hospital ship. For the last ten years, Plaintiff has held on to the hope that it would be able to use the ship as a residential education facility for women recovering from substance abuse. Plaintiff has argued throughout what is now five years of litigation that Defendants, various agencies and officials of the State of Maryland, have denied it a permanent berth because of pressure brought against them by other tenants of the Maryland Port Authority and members of the communities near the potential berthing sites.

On November 30, 2000, after close to four weeks of trial, a jury found that Defendants had unlawfully discriminated against Plaintiff because of the disabilities of Plaintiff's potential clients. During a separate damage phase, that same jury awarded just twelve dollars in damages. The Court then held a hearing to determine what form of injunctive relief would be appropriate. At the conclusion of that hearing, the Court indicated that Defendants should enter into a five year lease with Plaintiff, but optimistically left it to the

2

parties to negotiate the terms of that lease. When the parties were unable to come together on any of the significant terms of that lease, the Court issued a Memorandum and Order on May 2, 2001, resolving those issues. The Court also entered judgment on Plaintiff's claims under the Americans with Disabilities Act and the Fair Housing Act, and entered judgment in the amount of twelve dollars against Defendants.

Defendants appealed this Court's decision to the Court of Appeals for the Fourth Circuit. On September 4, 2002, the Fourth Circuit issued a per curium opinion unanimously affirming the decision of this Court.[1] Defendants filed motions for rehearing, and for rehearing en banc, both of which were denied.

## II. MOTION TO DISMISS[2]

Defendants move to dismiss Plaintiff's fee petition on the ground that Plaintiff forfeited its charter and right to

---

[1] Rather than continuing to litigate on appeal issues related to damages and immunities, Plaintiff voluntarily abandoned the monetary award.

[2] In addition to the ground discussed below, Defendants argue in their opposition that Plaintiff's petition is barred by the Tenth Amendment, by the Eleventh Amendment, and by principles of federalism and sovereign immunity. See Opp. at 33-34. Defendants acknowledge, however, that the Supreme Court rejected this very argument in Hutto v. Finey, 437 U.S. 678, 695 (1978), and appear to have included this argument solely to preserve the issue for appeal.

3

do business in Maryland on November 15, 2002.  It is
Defendants' contention that Plaintiff is a Maryland
corporation and that once its charter lapsed, it ceased to
exist as a legal entity, and that any action that it may have
taken while in this lapsed condition, including the filing of
its fee petition on December 12, 2002, was a "nullity."
Defendants' rely on § 3-503(d) of the Maryland Corporations
and Associations Article which provides that, once a
corporation has forfeited its charter, its powers as a
corporation are "inoperative, null and void."

Plaintiff counters that it is not, and has never been, a
Maryland corporation.  Although the Complaint erroneously
identifies it as such, Plaintiff was actually organized and
incorporated under the laws of the District of Columbia where
it has remained in good standing.  Plaintiff had registered as
a foreign corporation to do business in Maryland, and it is
that registration that lapsed in November 2002.  On March 28,
2003, after the filing of Defendants' motion to dismiss,
Plaintiff paid the appropriate penalty for the lapsed
registration and filed re-qualification papers.

Thus, as a corporation organized outside of Maryland,
Plaintiff contends that it is subject to the provisions of
Title 7 of the Corporations and Associations Article relating

4

to "Foreign Corporations," and not the provisions of Title 3 which relate to domestic corporations.  Under Title 7, a foreign corporation whose registration has lapsed can pay the appropriate fine, re-qualify, and continue to pursue a claim initiated during the period of lapsed registration.  Md. Code Ann., Corp. & Assoc. § 7-301; Strasbaugh v. Steward Sanitary Can Co., 127 Md. 632 (1916)(holding that foreign corporations compliance with registration requirement during the progress of the suit allowed that corporation to continue to maintain the suit under prior version of § 7-301); Kendrick & Roberts, Inc. v. Warren Bros. Co., 110 Md. 47 (1909) (same).

Defendants raise two arguments in reply.  First, Defendants contend that the Complaint's identification of Plaintiff as a Maryland corporation is a judicial admission to which Plaintiff is now bound.  The Court finds no merit in this contention.  Plaintiff informed Defendants of the true place of its incorporation more than three and one half years ago as part of its discovery responses.  Furthermore, the parties have since entered into a lease which clearly identifies Plaintiff as a District of Columbia corporation. While there may be a general rule that a party is bound by the admissions of its pleadings, "a court, unquestionably, has the right to relieve a party of his judicial admission if it

5

appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963); Coral v. Gonse, 330 F.2d 997, 999 n.1 (4th Cir. 1964)("If the District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in its discretion, relieve the party of its otherwise binding consequence."). Here, such relief is clearly appropriate as Defendants were apprized of the mistake early in the litigation and were in no sense prejudiced by the error.

Second, Defendants argue that Strasbaugh and Kendrick are no longer good law, as the "foreign registration statute (now Md. Code Corps & Assns. § 7-301) has been amended over the past century since those cases were decided." Defs.' Response to Surreply at 2. Defendants do not identify, however, what those amendments might be, nor explain how they would lead to a different result. While there is no recent decision interpreting the current Maryland statute, courts interpreting similarly worded foreign registration or "door closing" statutes in other jurisdictions have generally held that a foreign corporation not in compliance with the statute can qualify during the course of litigation and continue to pursue

6

its claim.[3]

Defendants' motion to dismiss Plaintiff's fee petition will be denied.

## III. DETERMINATION OF APPROPRIATE FEES AND COSTS

### A. Attorneys' Fees

Under 42 U.S.C. §§ 1988, a district court, in its discretion, may allow the "prevailing party" in a civil rights action a reasonable attorney's fee as part of the costs."   A

---

[3] See Jaisan, Inc. v. Sullivan, 178 F.R.D. 412, 414 (S.D.N.Y. 1998) ("[I]f the plaintiff corporation is in breach of the statute when it begins an action but complies while the action is pending the action is validated ab initio and may proceed unhindered."); Bob Blake Builders, Inc. v. Gramling, 18 P.3d 859 (Colo. App. 2001) (holding that, although foreign corporation did not have certificate to do business in state at time it filed breach of contract action, and therefore was not entitled to maintain court proceeding, its subsequent application for certificate cured any deficiency); Transportation Ins. Co. v. El Chico Restaurants, Inc., 524 S.E.2d 486 (Ga. 1999) (concluding that "maintain a proceeding," as used foreign registration statute does not encompass commencement of such proceeding; thus, uncertified foreign corporation may initiate action but cannot continue it without obtaining certificate of authority); J.W. Hartlein Const. Co., Inc. v. Seacrest Associates, L.L.C., 749 So.2d 459 (Ala. Civ. App. 1999) (holding formerly nonqualified corporation may maintain an action in state once it obtains a certificate of authority as foreign registration statute is penal in nature and in derogation of the common law, and thus must be strictly construed); CPB Management, Inc. v. Everly, 939 S.W.2d 78 (Tenn. App. 1996) (holding that corporation that is in noncompliance with foreign registration statute may file its lawsuit, cure its noncompliance, and continue its litigation); Dieter Engineering Services, Inc. v. Parkland Development, Inc., 483 S.E.2d 48 (W. Va. 1996) (same); Hudson Farms, Inc. v. McGrellis, 620 A.2d 215 (Del. Supr. 1993) (same).

plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Farrar v. Hobby 506 U.S. 103 (1992). "[T]he underlying purpose of section 1988, which must always guide the awarding of fees, is to ensure effective access to the judicial process for persons with civil rights grievances without simultaneously producing windfalls to the attorneys." Trimper v. City of Norfolk, Va. 58 F.3d 68, 73 (4th Cir. 1995) (citing Daly v. Hill, 790 F.2d 1071 (4th Cir. 1986)).

There is no question, in this Court's view, that Plaintiff is a prevailing party and thus entitled to at least some award of attorneys' fees. Both the jury and the Court found that Defendants were unlawfully discriminating. The Court granted the injunctive relief that Plaintiff sought and ordered Defendants to enter into a five year lease for a berth, an action that Defendants doggedly refused for almost a decade to take voluntarily. Defendants' counsel, in her closing arguments, acknowledged that Plaintiff's goal in bringing this action was to obtain such a berth. See 12/5/2000 Transcript of Defs.' closing argument at 18. Defendants' behavior undeniably has been modified as a result

8

of this litigation.

Defendants seek to minimize the significance of the declaratory judgment, concluding that it "consists only of a statement that defendants may not discriminate in violation of the ADA, which is no more than what they are required by law to do." Surreply at 4. The same, of course, could be said of most injunctions issued on behalf of prevailing plaintiffs in civil rights actions. Where defendants have been engaged in discrimination against a plaintiff, an injunction that requires it to cease that unlawful behavior represents an alteration in the legal relationship between the parties.

Defendants also argue that the judgment that Plaintiff obtained in this action is "pyrrhic" and "trivial." Opp. at 10 (quoting Sheppard v. Riverside Nursing Ctr., 88 F.23d 1332, 1339 (4th Cir. 1996) and Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92 (4th Cir. 1993)). Noting Plaintiff's lack of progress in implementing its treatment program in the two years since the entry of judgment and the signing of the lease, Defendants opine that "[Plaintiff's] inaction over the past two years demonstrates that it very likely will never be able to operate the Sanctuary as an educational program for former substance abusers. . . ." Opp. at 10. This argument strikes the Court as particularly

9

disingenuous under the circumstances presented here. Without commenting on the overall merits or practicalities of a ship-based drug rehabilitation program, it is clear that Plaintiff's ability to become a functioning program has been greatly diminished by the uncertainties attending ten years of delay and litigation. Even with the signing of the lease, the pendency of Defendants' appeal would make it difficult, if not impossible, to secure the funding sources necessary to begin such a program. Where it is the Defendants' long history of discrimination that prevented Plaintiff from even attempting to implement its program, it rings hollow to hear Defendants now complain that Plaintiff has been unable to demonstrate the effectiveness of its programs.

Once it is determined that fees should be awarded, the first step in computing the appropriate amount of those fees in most situations is to calculate a "lodestar" figure by multiplying the number of reasonable hours expended times a reasonable rate. McDonnell v. Miller Oil Co., 134 F.3d 638 (4th Cir. 1998). In deciding what constitutes a "reasonable" number of hours and rate, the district court generally is guided by the following particular factors:

(1) the time and labor expended;

(2) the novelty and difficulty of the

10

questions raised;

(3) the skill required to properly perform
the legal services rendered;

(4) the attorney's opportunity costs in
pressing the instant litigation;

(5) the customary fee for like work;

(6) the attorney's expectations at the
outset of the litigation;

(7) the time limitations imposed by the
client or circumstances;

(8) the amount in controversy and the
results obtained;

(9) the experience, reputation and ability
of the attorney;

(10) the undesirability of the case within
the legal community in which the suit
arose;

(11) the nature and length of the
professional relationship between attorney
and client; and

(12) attorneys' fees awards in similar
cases.

Id. at 640-641.

In its initial petition, Plaintiff maintains that it is
entitled to $2,203,349.11 in attorneys' fees, representing
about 8,500 hours of attorney and legal assistant time at
rates ranging from $75 an hour for several of the legal
assistants to $370 per hour for the three most senior

11

attorneys.[4]   After reviewing each of these twelve factors, the Court concludes that a more appropriate attorneys' fee award in this action would be $750,000, for the reasons that follow.

1. <u>Time and Labor Required</u>

Given the relatively straightforward nature of this action, 8,500 hours seems like a vastly inordinate amount of time to have spent in litigating this matter.  The Court notes, however, that Defendants have vigorously fought this litigation at each and every step of the way, and it is Defendants' litigation posture, more than any other single cause, that drove up the litigation costs in this action. Defendants fought legitimate discovery requests on what this Court determined to be a meritless claim of executive privilege and, after months of briefing, were ordered to turn over documents that proved crucial to Plaintiff's success at trial.  Defendants filed at least three unsuccessful motions to dismiss or for summary judgment prior to the trial; filed another motion to dismiss and a motion for judgment after the trial; filed an appeal, as well as applications for rehearing and rehearing <u>en banc</u> as well as a motion to stay enforcement

---

[4] Plaintiff represents that its attorneys actually spent in excess of 12,500 hours working on this action, but voluntarily trimmed its fee request by 33%.

of this Court's judgment pending appeal.  Defendants met even Plaintiff's fee petition with yet another motion to dismiss.

For each of these actions taken by Defendants, Plaintiff had little choice but to respond, and each response drove up the cost of this litigation.    While Defendants eschew having the label of "scorched earth strategy" attached to their conduct, deeming it instead simply a "vigorous defense," Defs.' Opp. to Mot. to Strike Surreply, from the Court's perspective, the difference is a difference in name only.[5] As the Supreme Court has noted, "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." City of Riverside v. Rivera, 477 U.S. 561, 581 n.11.

While recognizing that much of the responsibility for the litigation costs rests at the feet of Defendants, Plaintiff's petition also reveals some signs of over-lawyering on the part of its own counsel.  The original petition included the time for 25 separate timekeepers, 18 lawyers and 7 paralegals. Plaintiff has since narrowed its request to seeking

---

[5] Nothing in this memorandum should be construed, in any way, as a criticism of counsel for the Defendants.  Counsel performed with the utmost competence and professionalism and, it is the Court's clear impression, would have been able to speedily, efficiently, and equitably resolve this matter had their clients staked more reasonable positions.

13

compensation for just 13 attorneys, one law clerk, and three
paralegals.  See Reply at 8 n.4.  This many attorneys on one
case invariably leads to inefficiencies, duplication of
effort, and the tendency to over-litigate.  While Plaintiff
has voluntarily reduced its petition to account for some of
these effects, the Court questions if it has cut quite far
enough.

For example, as Defendants note, Plaintiff is requesting
compensation for 688 hours of work preparing 628 possible
trial exhibits.  Of those exhibits, only 147 were ever marked
for identification, and only 131 admitted.  Notwithstanding
Plaintiff's defense of this expenditure of time, the Court
finds this somewhat excessive and questions whether a client
would approve an expenditure for this amount of preparation.
See Xiao-Yue Gu v. Hughes STX Corp., 127 F.Supp.2d 751, 765
(D.Md. 2001) ("In evaluating the reasonableness of the number
of hours devoted to a particular task, the Court should
consider factors [that] relate to duplication of effort,
overuse of discovery, and conduct of the litigation as a whole
from the point of view of a cost-conscious client.").

The Court concludes, based upon just this factor, that
the amount of time that should be compensated should be
reduced by  10% to 20% beyond that already suggested by

14

Plaintiff.

## 2. Novelty and Difficulty of the Issues

While the legal principles implicated in Plaintiff's ADA
and FHA claims were well-established and straightforward, both
sides agree that the application of those principles in this
context, i.e., leasing a berth to a ship for use as a
residential treatment facility, is highly unique.  It was, in
fact, Defendants' primary argument that these facts present a
situation so unique as to take the case outside of the reach
of these statutes.  The Court finds that the amount of time
briefing these issues was reasonable.

## 3. Skill Required

The Court finds that, for the most part, the tasks
involved in this litigation were assigned to attorneys with
the appropriate level of experience.  This is not a factor
that leads to a reduction or increase in recoverable fees.

## 4. Preclusion of Other Employment

Plaintiff does not claim that Steptoe & Johnson, the firm
that took over the litigation from original counsel, was
precluded from pursuing other employment opportunities because
of this litigation.  Brown, Goldstein, and Levy, the firm that
represented Plaintiff in the earliest stages, indicates that
it was.  This factor does not lead to a significant

15

adjustment.

### 5. Customary Fee for Such Services

Plaintiff contends that the Steptoe & Johnson attorneys and paralegals should be compensated consistent with the "Laffey Matrix,"[6] while Defendants argue that all of Plaintiff's attorneys should be compensated, if at all, in the middle of the range recommended in the Local Guidelines. This is not a trivial adjustment; applying the Local Guideline rate results in a reduction of Plaintiff's initial request by nearly $663,000. This is also an adjustment that this Court find appropriate.

Plaintiff notes that this Court awarded fees pursuant to the Laffey Matrix to a D.C. law firm in Thomas v. HUD, 2001 WL 1636517 (D. Md. 2001). In that case, however, the plaintiffs persuasively demonstrated to the Court that they made reasonable efforts to retain a Maryland firm but were unsuccessful. Id. at *12. Here, Plaintiff has made no similar showing; one of Plaintiff's officers apparently contacted Steptoe & Johnson because he had a relation with that firm through his previous employment. While Plaintiff is

---

[6] The Laffey Matrix was established, and is updated, by the Department of Justice, to reflect the prevailing market rate for attorneys by years of practice in the District of Columbia pursuant to Laffey v. Northwest Airlines, inc., 746 F.2d 4 (D.C. Cir. 1984).

16

correct that the Local Guidelines are not binding on the Court, the Court sees no reason in this instance to depart from the prevailing rate in this market.  See Xiao-Yue v. Hughes Stx Corp., 127 F.Supp.2d at 767 (applying prevailing rate in local community in absence of "exceptional circumstances where the litigation was complex or the plaintiff was unable to obtain local counsel").

Defendants also raise a second argument regarding appropriate fee rates that the Court finds lacks any merit. Defendants contend that Plaintiff's attorneys should be compensated at historical versus current rates.  While the Supreme Court has held that historic rates should be applied when fees are awarded against the federal government, see Library of Congress v. Shaw, 478 U.S. 310 (1986), the Court has also held that this rule is inapplicable where the fees are assessed against a state defendant.  Missouri v. Jenkins, 491 U.S. 274 (1989).  To adequately compensate for the delay in payment, current rates should be awarded.  See Thomas v. HUD, 2001 WL 1636517 at *11.

6. Fixed or Contingent Fee

There was no contingent fee arrangement in this action. Plaintiff initially retained Brown, Goldstein & Levy on a fee paying basis.  Steptoe & Johnson agreed to represent Plaintiff

17

pro bono, agreeing to seek fees only through the fee shifting provisions of § 1988.  This factor is not pertinent to the fee petition.

### 7. Time Limitations

The parties agree that there is nothing unusual about the time limitations in this action.

### 8. Results Obtained

As the Supreme Court has recognized, "the most critical factor" in calculating a reasonable fee award "is the degree of success obtained," and when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).  And while district courts are cautioned not to attempt to employ any mechanical mathematical formula to determine fees, Brodziak v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998), the degree of success, including consideration of the amount of damages ultimately awarded, "is certainly relevant to the amount of attorneys' fees to be awarded."  City of Riverside v. Rivera, 477 U.S. at 574.

Although the Court has concluded that Plaintiff was the prevailing party, it is also cognizant that Plaintiff obtained much less than what it sought in this litigation.  Plaintiff

18

sought a preliminary injunction on which it did not prevail.
The Court rejected Plaintiff's argument that it should be
permitted to berth the Sanctuary on the Child Street Pier,
which appeared to be Plaintiff's first choice for a berthing
location.  The jury returned a verdict against the individual
plaintiffs.  Most significant of all, while Plaintiff sought
over $15.8 million in damages, it was awarded just $12.

The Supreme Court has instructed that, "'[w]here recovery
of private damages is the purpose of . . . civil rights
litigation, a district court, in fixing fees, is obligated to
give primary consideration to the amount of damages awarded as
compared to the amount sought.'" Farrar v. Hobby, 506 U.S.
103, 114 (1992) (quoting City of Riverside v. Rivera, 477 U.S.
at 585).  While the recovery of damages was not the purpose of
Plaintiff in pursuing this litigation, it undeniably was a
significant purpose.  For whatever reasons, the jury concluded
that Plaintiff was not entitled to any meaningful damages, and
the Court must significantly weigh that aspect of the jury
decision as well in its fee determination.  It is this factor
that leads the Court to make the most significant reduction in
the lodestar.[7]

---

[7] In their Surreply, Defendants offer for the first time a
theory that Plaintiff's fees should be capped at $120,000, the
amount that Plaintiff will pay under the term of the lease

19

9. <u>Experience and Reputation</u>

There is no dispute that Plaintiff's attorneys are well qualified and of excellent reputation.

10. <u>Undesirability of Case</u>

There is a slight element of undesirability in taking this action, in that counsel was required to oppose the State of Maryland and high level State officials. This is not,

_____

into which it entered with the State. In proposing this theory, Defendants rely on a dissenting opinion in a Supreme Court case issued in 1986, <u>City of Riverside v. Rivera</u>, 477 U.S. at 593 (Rehnquist, C.J., dissenting). Responding to Plaintiff's motion to strike, Defendants justify their filing of a surreply by invoking their duty to bring relevant Supreme Court cases "to the attention of the Court at any time they are discovered by counsel." Defs.' Opp. to Mot. to Strike Surreply at 3.

The Court questions what ethical obligation Defendants' counsel had to bring to the Court's attention a dissenting opinion from a 16 year old case. Defendants' application of Chief Justice Rehnquist's dissent is just as questionable. The Chief Justice suggests that in a suit for damages, fees should not exceed the value of the expected potential recovery. In this action, Plaintiff sued for the damages caused to its enterprise because of the lengthy delay in obtaining a berth, for which Plaintiff's lease payments are not a surrogate.

Despite the lack of any real justification for Defendants presenting this theory by means of a surreply, the Court will deny Plaintiff's motion to strike. The surreply, and the back and forth pleading that it generated, clearly has more to do with the litigants' desire to have the last word than with any substantive issues that the Court needed to consider. With the filing of the Motion to Strike Surreply, and the Reply in Support of the Motion to Strike, the last word now rests where it ought to have stayed, with the Plaintiff. The net effect of Defendants' decision to file a surreply is that, in all likelihood, it has further increased the attorneys' fees for which Defendants will be assessed.

20

however, a major factor in the Court's view.

11. Nature and Length of Professional Relationship

One of the Steptoe & Johnson attorneys apparently had a longstanding personal and professional relationship with Steve Hammer, Plaintiff's founder and president. Accordingly, that attorney may have had an independent incentive to provide services to an existing client. As with the preceding factor, however, this plays no significant role in the Court's calculus.

12. Awards in Similar Cases

The Court is not aware of any suit in this jurisdiction that resulted in fees of the magnitude requested by Plaintiff. Defendants' surreply, however, did provide the Court with some examples of cases where the award was within the range contemplated by the Court after considering the remaining factors. Defendants represent that in a 1990 employment discrimination suit, Daniel Podberesky v. Kirwan, which involved "lengthy discovery, summary judgment motions, a public hearings process similar to a trial, and two appeals," the parties settled for $425,000 in attorneys' fees. In a more recent First Amendment case, Columbia Union v. Oliver, this Court awarded $412,040 in attorneys' fee. While that case, like the instant action, stretched over five years, it

21

never went to trial and involved only 15 depositions.  This case included 35 depositions and four weeks of trial.

### B. Litigation Costs

Plaintiff is seeking $258,457.11 in litigation expenses. The Court finds that Plaintiff has submitted adequate support for these expenses, and that these expenses are reasonable. Accordingly, they will be awarded without reduction.

## IV. CONCLUSION

It is with no sense of satisfaction that this Court saddles the citizens of the State of Maryland with an attorneys' fee award of this magnitude, even as reduced by the Court.[8]  Had more reasonable minds prevailed amongst the State decision makers, this dispute could have been resolved long ago and at a fraction of the cost.  As it is, this became one of those situations that highlights the limitations of litigation.  Both sides have now expended tremendous time and resources in this litigation battle, while the worthy battle -- Plaintiff's innovative plan to combat the scourge of drug addiction -- remains untried and untested.  Unfortunately,

---

[8] It is well established that this Court cannot consider the fact that the burden of these fees and costs will ultimately be borne by the Maryland taxpayers as a factor in determining whether to reduce or deny a petition for attorneys' fees, see Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994), and the Court has not considered this as a factor.

22

these costs now fall in double measure on the citizens of Maryland, and not on the state officials whose intransigence was responsible for this colossal waste of resources.

A separate order consistent with this memorandum will issue.

William M. Nickerson
Senior United States District Judge

Dated: August 6, 2003

23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PROJECT LIFE, INC.,
et al.                              :

                                    :

v.                                          Civil Action WMN-98-2163

ROBERT EHRLICH, et al.              :

                                    :

ORDER

In accordance with the foregoing Memorandum and for the

reasons stated therein, IT IS this __6th__ day of August, 2003, by

the United States District Court for the District of Maryland,

ORDERED:

1. That Defendants' Motion to Dismiss Petition for Fees,

Paper Nos. 245 and 246, is DENIED;

2. That Plaintiff's Motion for Leave to File Surreply in

Opposition to Motion to Dismiss, Paper No. 251, is GRANTED;

3. That Plaintiff's Motion for Leave to File Reply in Excess

of Page Limitation, Paper No. 252, is GRANTED;

4. That Plaintiff's Motion to Strike Surreply, Paper No.

259, is DENIED;

5. That Plaintiff's Motion for Attorneys' Fees and Cost,

Paper No. 238, is GRANTED in part and DENIED in part in that:

a) Attorneys' fees are awarded Plaintiff in the amount of

$750,000; and

b) Costs are awarded Plaintiff in the amount of $258,457.11;

and

6.    That the Clerk of the Court shall mail copies of the foregoing Memorandum and this Order to all counsel of record.


William M. Nickerson
Senior United States District Judge

24